**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PARKERVISION, INC.,

                        *Plaintiff*,

            v.

QUALCOMM INCORPORATED,
QUALCOMM ATHEROS, INC.,
HTC CORPORATION,  AND HTC AMERICA, INC.,

                        *Defendants*.

Case No. 6:14-cv-687-Orl-PGB-LRH

**Oral Argument Requested**

**QUALCOMM'S OPPOSITION TO PARKERVISION'S MOTION TO COMPEL
RESPONSES TO REQUESTS FOR PRODUCTION**

**Redacted/Public Version of Document Sought to be Filed Under Seal**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND.................................................................................................. 2

      A.    ParkerVision Was Required to Disclose How Each Element of Each Asserted Claim is Found in Each Accused Device Back in 2015. .................. 2

      B.    The Actual Accused Products in the Case. ....................................................... 5

III.  ARGUMENT ..................................................................................................... 7

      A.    ParkerVision's Requests for Production Are Vastly Overbroad, Unduly Burdensome, and Seek Irrelevant Documents and Information. ........ 7

      B.    Qualcomm Produced (and Does Not Object to Producing) Technical and Financial Documents Sufficient to Show the Design and Operation, and the Sales, Revenue, Costs, of the Actual Accused Products. ............................................................................... 10

      C.    ParkerVision Had Documents and Information to Assess Whether Non-"WAN/Cellular Transceiver, GPS Receiver" Products Met the Elements of the Asserted '940, '372, '907, and '177 Patent Claims, and Chose Not to Chart Those Products. ....................................................... 10

      D.    The Court Should Deny ParkerVision's Extraordinary Motion to Compel RFP Nos. 1-7, 10-16, and 21. ........................................................... 12

            1.    ParkerVision is not entitled to discovery of irrelevant or non-accused products. ........................................................................... 12

            2.    ParkerVision is not entitled to "all" documents, which is disproportionate to the needs of this case, and unduly burdensome. ........................................................................ 15

            3.    ParkerVision is not entitled to privileged and work product materials. ........................................................................ 16

      E.    The Court Should Deny ParkerVision's "Representative Product Proposal." ...................................................................... 17

      F.    The Court Should Deny ParkerVision's Motion for Failing to Comply With The Rules. ................................................................................ 19

IV.  CONCLUSION................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software v. Green Shades Software*,
  No. 15-cv-164, Dkt. 159 (M.D. Fla. Dec. 10, 2019) (Brigham Ex. 28) ...........................15

*Aavid Thermalloy v. Cooler Master Co.*,
  No. 17-cv-5363, 2018 U.S. Dist. LEXIS 80275 (N.D. Cal. May 10, 2018).....................15

*Bascom Global Internet Servs. v. AT&T*,
  No. 14-cv-3942, slip. op. (N.D. Tex. Jul. 31, 2017) (Brigham Ex. 27) ...........................15

*Bender v. Infineon Techs. N. Am.*,
  No. 09-2112, 2010 WL 964207 (N.D. Cal. Mar. 16, 2010) ..............................................17

*Bender v. Maxim Integrated Prods.*,
  No. 09-1152, 2010 WL 1135762 (N.D. Cal. Mar. 22, 2010) ...........................................15

*Card-Monroe v. Tufto*,
  No. 14-CV-292, slip. op. (E.D. Tenn. Jan. 17, 2017) (Brigham Ex. 25) ....................14, 16

*Costa v. Metro. Life Ins.*,
  No. 17-cv-714, 2018 WL 1635642 (M.D. Fla. Apr. 5, 2018)...........................................12

*Digital Reg of Tex. v. Adobe Sys.*,
  No. 12-1971, 2013 WL 633406 (N.D. Cal. Feb. 20, 2013) ..............................................17

*Drone Techs. v. Parrot S.A.*,
  838 F.3d 1283 (Fed. Cir. 2016)........................................................................................14

*Gilead Scis. v. Merck & Co*,
  No. 13-cv-4057, 2016 WL 146574 (N.D. Cal. Jan. 13, 2016)....................................14, 15

*Harris v. Ruckus Wireless*,
  No. 11-cv-618, Dkt. 56 (M.D. Fla. May 17, 2012).....................................................15, 16

*Mediatek v. Freescale Semiconductor*,
  No. 11-5341, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) ..............................................14

*Micro Motion v. Kane Steel Co.*,
  894 F.2d 1318 (Fed. Cir. 1990)......................................................................................4, 14

*Paylor v. Hartford Fire Ins. Co.*,
  748 F.3d 1117 (11th Cir. 2014) ........................................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*RTC Indus. v. Fasteners for Retail*,
   No. 17-cv-3595, Dkt. 313 (N.D. Ill. Nov. 26, 2019) (Brigham Ex. 26 ) ..........................15

*Sensor Elec. Tech. v. Bolb*,
   No. 18-cv-5194, 2019 WL 570758 (N.D. Cal. Feb. 12, 2019) ..........................................14

*Spansion v. Int'l Trade Comm'n*,
   629 F.3d 1331 (Fed. Cir. 2010)...................................................................................18, 19

*Straight Path IP Grp. v. Blackberry*,
   No. 14-80150, 2014 WL 3401723 (N.D. Cal. July 8, 2014) ............................................16

*Tech. Properties Ltd. v. Samsung Elecs.*,
   114 F. Supp. 3d 842 (N.D. Cal. 2015) .............................................................................17

*TiVo v. EchoStar Commc'ns*,
   516 F.3d 1290 (Fed. Cir. 2008)........................................................................................18

*Uniloc USA v. Apple*,
   No. 18-360, 2018 WL 3219486 (N.D. Cal. July 2, 2018) ..........................................12, 17

*Waymo v. Uber*,
   No. 17-cv-939, slip op. (N.D. Cal. Oct. 16, 2017) (Brigham Ex. 29)...............................16

**Other Authorities**

Fed. R. Civ. P.
   26(a)(1) .................................................................................................................7, 12, 16
   26(b)(1) .......................................................................................................................12, 13
   26(b)(C)(iii)................................................................................................................12, 13
   37(a)(1) ............................................................................................................................19

Local Rule
   3.01(g)........................................................................................................................16, 19
   3.01(j)..............................................................................................................................20

## I.   INTRODUCTION

The Court should deny ParkerVision's dual motions to compel (Dkts. 345, 346).[1] To date, Qualcomm has shouldered the burden and expense of collecting and producing nearly one million documents at over fifteen million pages.  Qualcomm has produced documents more than sufficient to show ParkerVision the design and operation, as well as the sales, revenue, and costs, of the Actual Accused Products.

Now, ParkerVision seeks a seemingly unprecedented breadth and volume of documents completely disproportionate to the needs of this case:  demanding "[a]ll" technical documents, schematics, source code, sales information, business plans, forecasts, marketing materials, manufacturing information, "[a]ll" documents" provided to "customers, developers, or OEMs," press releases, academic publications, revenues, profits, costs, and expenses, and other information, for an enormous list of over **300 products**, the lion's share of which are not actually accused and not even relevant to this case.  (Dkt. 345-1 at 3, 11-12, 13-14, 15.)

ParkerVision has the information it needs to fully investigate its claims. Qualcomm produced documents on each of the Actual Accused Products.  But ParkerVision doesn't want to do its homework.  ParkerVision doesn't actually want "[a]ll" the documents for "Requests for Production Nos. 1-7, 10-16, and 21," as framed in its motion and defined in its requests and definitions.  (PV Mot. at 1, Dkt. 345; RFPs, Dkt. 345-1 at 3, 11-12, 13-14, 15.). The true purpose of ParkerVision's motion is revealed on page 24 of its brief.  (PV Mot. at 24, Dkt. 345.)  ParkerVision is looking for a short-cut to circumvent the amount of work it needs

---

[1] Qualcomm notes that ParkerVision's 25-page motion does not comply with the Court's Standing Order on Discovery Motions.  Due to the length and complexity of the issues discussed in ParkerVision's brief, Qualcomm respectfully submits the following response.

to do in this case.   ParkerVision wants the Court to "adopt" ParkerVision's "Representative Product Proposal."  Without doing the work to show that any products other than the accused "WAN/Cellular Transceiver, GPS Receiver" products are alleged to infringe the asserted receiver and transmitter patent claims, ParkerVision wishes to claim damages for hundreds of unrelated products and product categories.

The Court should deny ParkerVision's motion to compel and reject ParkerVision's "Representative Product Proposal," which Qualcomm strenuously objects to as improper.

## II.   BACKGROUND

### A.   ParkerVision Was Required to Disclose How Each Element of Each Asserted Claim is Found in Each Accused Device Back in 2015.

This case began by ParkerVision asserting eleven patents and 186 patent claims. (FAC ¶ 2, Dkt. 26; PV Ex. J at 2-3, Dkt. 345-10 at 2-3.)   The Court set a deadline for ParkerVision to disclose "how each element of each claim is found in each accused device" in its infringement contentions.   (Dkt. 92 at 3.)   Defendant Qualcomm was entitled to fair notice of why ParkerVision contends each accused Qualcomm product infringes the asserted patent claims.

In January 2015, ParkerVision served infringement contentions – one chart for each of the eleven asserted patents.  For example, one of the asserted patents – the '012 patent (at U.S. Patent No. 7,966,012) – ParkerVision dubbed the "Protocol Converter Patent". (Brigham Ex. 31 at 1.)  ParkerVision subsequently dismissed with prejudice all claims arising out of the '012 patent.  (Dkts. 246, 248.)

For the '940, '372, '907, and '177 patents (*i.e.*, the only remaining asserted patents, Dkt. 297 at 7), ParkerVision mapped the claims to only two product designs:

█████████████████████████████████████.  (Brigham Ex. 7 at 3 ('940), Ex. 8 at 1 ('372), Ex. 9 at 1 ('907), and Ex. 10 at 1 ('177).)

ParkerVision then attached to its general infringement contentions cover document an "Exhibit A" that listed 500 products.  (Brigham Ex. 5.)  ParkerVision did not explain "how each element of each claim [was] found" in each of the 500 products.  (Dkt. 92 at 3.) In Exhibit A, rather than articulate on a patent-by-patent basis its contentions across different product categories, ParkerVision merely nicknamed certain products the "Qualcomm Transmitter Patents Accused Products," the "Qualcomm Receiver Patents Accused Products," and the "Qualcomm Protocol Converter Patent Accused Products."  (Brigham Ex. 5.)  To be clear – ParkerVision *did not chart* all of the listed products or even a category of products beyond WAN/Cellular Transceivers.  For the '940 and '372 transmitter patents, ParkerVision charted ███████████████████████████.  (Brigham Ex. 7 at 3 ('940), Ex. 8 at 1 ('372).)  For the '907 and '177 receiver patents, ParkerVision charted the same products: ████████████████.  (Brigham Ex. 9 at 1 ('907), and Ex. 10 at 1 ('177).)

During discovery, Qualcomm produced volumes and volumes of documents to ParkerVision so that ParkerVision could investigate its claims.  (Brigham Decl. ¶ 14.) Qualcomm did not limit discovery to ████████████████, or the Actual Accused Products, as defined below.  But Qualcomm did object to ParkerVision's document demands for "[a]ll documents and things" for the "Accused Product(s)" and the "Qualcomm Accused Products" (as defined in ParkerVision's requests for production, Dkt. 345-1, PV Ex. A at 3), as "overbroad, unduly burdensome," "vague," and objected to ParkerVision's infringement

contentions as "fail[ing] to comply" with the Court's Order (Dkt. 92), and "fail[ing] to adequately put Qualcomm on notice of which products allegedly infringe," among other objections. (PV Ex. B at 4-5 (¶¶ 6-7), 7-13, 15-21, 24-25.)

In June 2015, ParkerVision "supplemented" its infringement contentions. Using the same ███████████████████-based contention, ParkerVision added mere string cites to Bates ranges and Bates numbers for the "schematics produced by Qualcomm for the ██████████████████████████████████████". (*E.g.*, PV Ex. O; Ex. L at 45-46 (Bates numbers).) ParkerVision *did not cite* any new non-schematic documents from Qualcomm's document production. (*See* Brigham Exs. 3, 4.) In other words, ParkerVision did not use the documents Qualcomm had been diligently collecting and producing. By June 2015, Qualcomm had produced over eleven (11) million pages of documents. (Brigham Decl. ¶ 14.) Moreover, like ███████████████████ ████████████████████ designs are all for WAN/cellular Transceivers. ParkerVision still did not chart any other categories of products.

During an August 2015 hearing, in the context of ParkerVision trying to compel Qualcomm to respond to an interrogatory about product differences, the Magistrate Judge stated: "[t]he burden is on ParkerVision before they file a case to have evidence that what they are accusing is true." (Aug. 13, 2015 Hr'g. Tr. 66:17-67:4, 67:18, Brigham Ex. 20; *Micro Motion v. Kane Steel Co.*, 894 F.2d 1318, 1327, 1328 (Fed. Cir. 1990) ("An unfounded suspicion regarding [defendant's] infringement does not support discovery into that subject matter.").)

4

In November 2015, faced with this statement from the Magistrate Judge, ParkerVision "supplemented" its contentions for four transmitter patents ('549, '940, '372, and '508), "add[ing] citations to the schematics produced for the accused chips—including ███ ████████████████████████████████████████████████████". (PV Ex. P; Brigham Exs. 1, 2.) Like the previous charts, each of these designs are for WAN/Cellular Transceiver products. But ParkerVision again attached as "Exhibit A" a list with over 300 products under two nicknames. (Brigham Ex. 6.) ParkerVision did not explain "how each element of each claim [was] found" in each of the 300 products. (*Compare* Brigham Ex. 6 *with* Dkt. 92 at 3.) Similar to the contentions in June, ParkerVision's November 2015 infringement contention charts added string cites to Bates ranges and Bates numbers for "███████████████████████ ██████████████████," but did not cite any new documents from Qualcomm's document production. (Brigham Exs. 1, 2.)

**B.     The Actual Accused Products in the Case.**

Before the stay, based on ParkerVision's infringement contention charts, the accused products were ████████████████████████████████████████████████ ████████████████████████. (Brigham Exs. 1-4.)

After the stay lifted, ParkerVision informed the Court that it wished to proceed on: (1) two *transmitter* patents ('940 and '372 patents); (2) two *receiver* patents ('940 and '372 patents); and (3) additional products released during the stay, such as ██████. (*E.g.*, Dkt. 297 at 7; Dkt. 285 at 2.) Qualcomm did not object to including products released during the stay, such as ██████. (Dkt. 285 at 11; Dkt. 297 at 6-7 (allowing such "new products," but stating "ParkerVision may not serve infringement contentions raising new theories").)

In order to account for the expanded scope of accused products, since December 2018, Qualcomm has produced nearly 1.5 million pages of documents.   (Brigham Decl. ¶ 35.) Qualcomm has produced technical and financial discovery for ██████████████ ██████ (*i.e.*, new products released during the stay), as well as further documents, including for ████████████████████████, and others.   (Brigham Decl. ¶¶ 35-36.)   To date, Qualcomm has produced nearly one million documents at over fifteen million pages. (Brigham Decl. ¶ 36.)

In the end, Qualcomm does not object to using the following definition for "**Actual Accused Products**": ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████.[2]   These products are all "WAN/Cellular Transceiver, GPS Receiver" products, consistent with ParkerVision's infringement contentions.   (Dkt. 92 at 3; Brigham Ex. 19 at Exs. AA-AAAA; Dkt. 297 at 6-7 ("ParkerVision may not serve infringement contentions raising new theories").)   Qualcomm does not dispute that these product designs are at issue in this case and has provided fulsome technical and financial discovery.   Put differently, discovery about these eighteen designs are not at issue in this motion.   This motion is about whether ParkerVision is entitled to hundreds of other designs for other categories of chips without making any showing that they are accused of infringing the remaining asserted patents.

---

[2] ParkerVision, however, still owes Qualcomm infringement contentions for ███████████ ███████████████████████, if ParkerVision believes those products infringe the asserted claims.

III.   **ARGUMENT**

A.   **ParkerVision's Requests for Production Are Vastly Overbroad, Unduly Burdensome, and Seek Irrelevant Documents and Information.**

ParkerVision asks the Court to compel Qualcomm to "completely" respond to fifteen

RFPs: "Requests for Production Nos. 1-7, 10-16, and 21." (PV Mot. at 1.) The requests recite:

- RFP 1:  "All documents and things that describe the functionality, operation, design, development, architecture, creation, implementation, data flow, algorithms, testing, modes of operation, and capabilities for each Accused Product, including software requirements, hardware requirements, requirements documents to/from carriers, requirements documents to/from handset manufacturers, specifications, design reviews, design documents, flow diagrams, user manuals, product brochures, data sheets, administrative guides, data structure descriptions, and other user instructions."

- RFP 2:  "All documents and things referring or relating to the planning, research, design, development, creation, testing, manufacture, use, operation and project layout or system architecture for the Accused Products, including memorandums, notes, e-mails, 'white papers,' specifications, flow charts, laboratory notebooks, pseudo-code, development records, timelines, invention disclosures, directory structure, file placement and libraries."

- RFP 3:  "All source code (including executable and non-executable source code) describing the functionality, operation, data flow, algorithms, and modes of operation for each Accused Product, including modifications that You make to software or hardware that You contend is material to any claim of infringement or non-infringement of any Asserted Claim of the Patents-in-Suit."

- RFP 4:  "All chip-level schematics, designs, and diagrams describing the functionality, operation, circuit design, data flow, interconnections, and modes of operation for each Accused Product."

- RFP 5:  "All documents and things identified by You in Your Initial Disclosures pursuant to Fed. R. Civ. P. Rule 26(a)(1) in this Litigation."

- RFP 6:  "All documents and things relating to Your understanding and knowledge of the Patents-in-Suit, including any meetings between You and ParkerVision related to any of the Patents-in-Suit."

- RFP 7: "All documents and things relating to communications between You and other Defendants concerning the planning, research, design, development, creation, testing,

manufacturing, functionality, user experience, use, and operation of the Accused Products."

- RFP 10: "All documents and things related to the location of the development, manufacturing, and sales of the Accused Products."

- RFP 11: "For each of the Accused Products, all documents and things relating to the first date of Your (i) use of the Accused Products in the United States; (ii) manufacture of the Accused Products; (iii) sale of the Accused Products; (iv) offer for sale of the Accused Products; and (v) import of the Accused Products into the United States."

- RFP 12: "For each of the Accused Products, all business plans including, but not limited to, strategic plans, operating plans, marketing plans or studies, sales plans, financial plans, surveys, sales forecasts, budgets, and/or other evaluations, analyses, or assessments concerning the Accused Products."

- RFP 13: "All marketing, sales, advertising, and promotional materials referencing the Accused Products, whether or not such material was ever distributed or actually used."

- RFP 14: "All documents and things provided to Defendants' customers, developers, or OEMs relating to instructions, directions, or suggestions concerning how to configure, assemble, access, program, modify, operate, control, or otherwise affect the Accused Products."

- RFP 15: "All documents and things relating to any academic publications or articles, industry publications or articles, press releases, published papers and articles, or press or media coverage of any kind relating to the Accused Products."

- RFP 16: "On a product-by-product basis for the Accused Products from 2008 to present, all documents and things describing or showing U.S. monthly, quarterly, and annual figures with respect to the following information attributable to or derived from the making, using, offering for sale, selling, testing, refurbishing, or importing the Accused Product: (i) the total number of units sold; (ii) the total gross revenue; (iii) the total net revenues; (iv) the total gross profits; (v) the total net profits; (vi) costs of goods sold; (vii) selling expenses; (viii) sales price; (ix) general expenses; (x) administrative expenses; and (xi) advertising or promotional expenses."

- RFP 21: "All documents and things that You may use to support or refute any calculation of damages in this matter."

ParkerVision's requests include over seven pages of sweeping definitions and instructions.

(Dkt. 345-1, PV Ex. A at 3-10.)  Most pertinent to this motion, ParkerVision's requests define

"**Accused Products**" as "all of the Qualcomm Accused Products, HTC Accused Products, and

Samsung Accused Products." (Dkt. 345-1, PV Ex. A at 3) And ParkerVision defined "**Qualcomm Accused Products**" as "all of the Qualcomm Transmitter Patents Accused Products, Qualcomm Receiver Patents Accused Products, and Qualcomm Protocol Converter Patent Accused Products." (Dkt. 345-1, PV Ex. A at 3.)[3]

ParkerVision also defined "You," "Your," and "Defendants" with enormous purported scope to cover: "all past and present officers, directors, affiliates, brokers, agents, representatives, employees, servants, and all persons acting directly or indirectly under their control, including any attorney and including each Defendant's respective parents, subsidiaries, or affiliated companies, and other related entities, including all assets or companies that each Defendant has acquired." (Dkt. 345-1 at 4, PV Ex. A.) Additionally, ParkerVision's proposed definition of "documents" spans an entire page. (Dkt. 345-1 at 5-6.) ParkerVision's definition of "communications" is likewise exceedingly overbroad and unduly burdensome. (Dkt. 345-1 at 4.)

Requests for Production Nos. 1-7, 10-16, and 21 do not identify a time restriction (let alone a reasonable one), and ParkerVision's onerous list of proposed instructions purports to demand that the "geographic scope of these requests is worldwide, to the extent that there is a reasonable basis to believe that locations outside of the United States may contain responsive documents that cannot be found inside the United States." (Dkt. 345-1 at 10.)

Qualcomm served objections and responses in 2015. (*E.g.*, PV Ex. B at 4-5, 7-25.)

---

[3] Qualcomm notes, ParkerVision's definition of "Qualcomm Accused Products" does not expressly refer to products identified in response to ParkerVision's Interrogatory No. 1. (Dkt. 345-1 at 3, PV Ex. A (*compare* definition for "Qualcomm Accused Products" and definition for former Defendant "Samsung Accused Products"); *cf.* PV Mot. at 1 and 19 (seeking broad discovery of what ParkerVision calls "collateral products").)

**B.      Qualcomm Produced (and Does Not Object to Producing) Technical and Financial Documents Sufficient to Show the Design and Operation, and the Sales, Revenue, Costs, of the Actual Accused Products.**

Qualcomm has produced nearly one million documents at over fifteen million pages. (Brigham Decl. ¶ 36.)  Qualcomm has produced, for example, detailed technical documents (*e.g.*, design reviews, block diagrams, product design documents), schematics (either in PDF or native form), financial documents (*e.g.*, dozens of sales, revenue, costs spreadsheets), and customer and sales information, and more.  (Brigham Decl. ¶ 35; *see also, e.g.*, Brigham Ex. 15 at 22-23 ("technical documentation" at QCPV000000001 - QCPV000039971, and "schematics and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Brigham Ex. 19 at 3-4 (schematics), 6-11, 12-13 (financial spreadsheets and documents).)  Qualcomm has also produced non-privileged, responsive documents regarding notice of the asserted patents.  (Brigham Ex. 19 at 16-23 (citing Bates numbers and documents).)  Simply put, Qualcomm has produced and does not object to producing technical and financial documents sufficient to show the design and operation, and the sales, revenue, costs, of the Actual Accused Products.

**C.      ParkerVision Had Documents and Information to Assess Whether Non-"WAN/Cellular Transceiver, GPS Receiver" Products Met the Elements of the Asserted '940, '372, '907, and '177 Patent Claims, and Chose Not to Chart Those Products.**

As explained in Qualcomm's opposition to ParkerVision's other pending motion to compel, per ParkerVision's request, Qualcomm provided ParkerVision with identification information about more than forty product categories in its March 2015 interrogatory response. (Brigham Ex. 14 at Ex. AA.)  Qualcomm also produced documents sufficient for ParkerVision to evaluate whether it wished to accuse products beyond ▮▮▮▮▮▮▮▮▮▮▮, which are both "WAN/Cellular Transceiver, GPS Receiver" products.  (Brigham Ex. 14 at

Ex. AA.19-AA.20; Brigham Decl. ¶ 14.)  To take but just two examples: ██████ is an "Ethernet Passive Optical Networking" product, and ██████ is an "Ethernet Switch," both listed in Qualcomm's response to ParkerVision's Interrogatory No. 1.  (Brigham Ex. 14 at AA.13, AA.3.)  The datasheet for ██████ is found at QCPV001433191-244, and the datasheet for ██████ is found at QCPVII00021686-802.  (Brigham Decl. ¶ 14.)

In March 2015, Qualcomm also provided ParkerVision with invalidity and noninfringement contentions, which, among other things, pointed out certain critical flaws with ParkerVision's infringement contentions and ParkerVision's Exhibit A list of "Accused Products".  For example, ParkerVision accused a plastic case used to cover a cellphone of infringing the asserted patents.  (Brigham Ex. 11 at 5.)  Qualcomm also explained that ParkerVision listed products that "do not exist" or are not Qualcomm products.  (*Id*. at 5.)  ParkerVision also listed products that "have no receiver or transmitter functionality".  (*Id*. at 5-7.)

In June 2015 and again in November 2015, ParkerVision "supplemented" its infringement contentions.  ParkerVision elected *not* to chart any non-"WAN/Cellular Transceiver, GPS Receiver" products in its contentions.  (Brigham Exs. 1-4.)  Rather, ParkerVision accused ██████████████, and cited Bates numbers for ██████ ████████████████████████████ in its charts for the '940, '372, '907, '177 patents.  (Brigham Exs. 1 ('940), 2 ('372), 3 ('907), 4 ('177).)  ParkerVision subsequently dismissed six patents entirely from the case ('902, '549, '836, '508, '246, '012).  (Dkts. 246, 248.)

In sum, ParkerVision had ample time and information back in 2015 to decide which products to chart against the asserted '940, '372, '907, and '177 patents.  ParkerVision chose not to chart any non-"WAN/Cellular Transceiver, GPS Receiver" products.  (Dkt. 92 at 3; *see also Costa v. Metro. Life Ins*., No. 17-cv-714, 2018 WL 1635642, at *2 (M.D. Fla. Apr. 5, 2018) ("Rule 26's requirement that discovery be relevant 'signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings'") (citation omitted).).  Reliance on a mere laundry "list" to bring hundreds of products across different product categories into the case is improper.  *Uniloc USA v. Apple*, No. 18-360, 2018 WL 3219486, at *3 (N.D. Cal. July 2, 2018) (plaintiff must explain "*how* its laundry list of accused products operate in the same manner for infringement purposes") (emphasis in original).

    **D.**    **The Court Should Deny ParkerVision's Extraordinary Motion to Compel RFP Nos. 1-7, 10-16, and 21.**

ParkerVision's motion seeks extraordinary relief.  It purports to seek to compel production of "all" documents (and things and source code and schematics and business plans and marketing materials and so forth) for *hundreds* of products that have never been properly accused or charted, or to make the Court "adopt" ParkerVision's "Representative Products Proposal".  ParkerVision's motion should be denied.

    **1.**    **ParkerVision is not entitled to discovery of irrelevant or non-accused products.**

Qualcomm repeats:  Qualcomm has produced and does not object to producing technical and financial documents sufficient to show the design and operation, and the sales,

revenue, costs, of the Actual Accused Products. What Qualcomm objects to producing is discovery of non-accused and irrelevant products. No fishing expedition should be allowed.

The Court should reject ParkerVision's bid to obtain innumerable documents – at incredible burden and expense to Qualcomm – that are neither relevant to, nor proportional to, the needs of the current case involving only two receiver and two transmitter patents. Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(C)(iii) (court "must limit" the "extent of discovery," if it determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)"). For example, ParkerVision's requests for production purport to broadly define "Qualcomm Accused Products" as "all of the Qualcomm Transmitter Patents Accused Products, Qualcomm Receiver Patents Accused Products, and Qualcomm Protocol Converter Patent Accused Products." (Dkt. 345-1, PV Ex. A at 3; *see also* Dkt. 345-1, PV Ex. A at 3 ("Accused Products").) But ParkerVision dismissed with prejudice six patents from the case in 2015. (Dkts. 246, 248.) ParkerVision dismissed the only patent it dubbed the "Protocol Converter Patent" (U.S. Patent No. 7,966,012). (Brigham Ex. 31; Brigham Ex. 5.) ParkerVision's motion to compel is overbroad, seeking irrelevant documents and information.

ParkerVision is only entitled to discovery of products **(1)** it has properly accused and charted in its infringement contentions per the Court's Scheduling Order, and **(2)** products in the same category ("WAN/Cellular Transceiver, GPS Receiver") released during the pendency of the stay (*e.g.*, ███████████████████████). To find otherwise would be to allow this case to devolve into a "discovery goat rodeo" and flies in the face of the Court's Order that ParkerVision cannot raise new infringement theories at this late date in the proceeding. (Dkt. 297 at 6-7 ("ParkerVision may not serve infringement contentions raising new theories");

*Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-28 (11th Cir. 2014) ("dispute metastasized into the years-long discovery sinkhole" due to plaintiff's "shot-gun pleadings"); *Card-Monroe v. Tufto*, No. 14-CV-292, slip. op. at 3 (E.D. Tenn. Jan. 17, 2017) (denying motion to compel financial information for "all" products, not just the accused products) (Brigham Ex. 25); *Mediatek v. Freescale Semiconductor*, No. 11-5341, 2013 WL 588760, at *2 (N.D. Cal. Feb. 13, 2013) ("To require [defendant] to produce voluminous discovery related to every product … eviscerates the goal of the Patent Local Rules to streamline discovery by requiring the party claiming infringement to identify with particularity how each accused product infringes the patents-in-suit"); *Micro Motion*, 894 F.2d at 1327.)

To obtain discovery of non-"WAN/Cellular Transceiver, GPS Receiver" products when ParkerVision has never identified any Rule 11 basis for accusing these products would be completely unjustified. Filing a complaint and charting a couple "WAN/Cellular Transceiver, GPS Receiver" products does not give ParkerVision license to demand "all" documents for "all" of Qualcomm's chips, including modems, applications processors, baseband processors, WiFi chips, Bluetooth chips, Ethernet Switches, and dozens of other product categories and hundreds of products. *E.g.*, *Sensor Elec. Tech. v. Bolb*, No. 18-cv-5194, 2019 WL 570758, at *4 (N.D. Cal. Feb. 12, 2019) (finding plaintiff had "not articulated any particular basis" for believing certain products infringed, and denying motion to compel).

Courts in fact routinely deny overbroad requests for discovery of un-accused products. *E.g.*, *Drone Techs. v. Parrot S.A.*, 838 F.3d 1283, 1299 (Fed. Cir. 2016) (finding court abused its discretion in ordering production of "documents relating to non-accused products," even though the plaintiff asserted two products "may also" be accused in its contentions); *Gilead*

*Scis. v. Merck & Co*, No. 13-cv-4057, 2016 WL 146574, at *2 (N.D. Cal. Jan. 13, 2016) (denying motion to compel; stating "It would be like requiring GM to produce discovery on Buicks and Chevys in a patent case about Cadillacs simply because all three happen to be cars"); *Bascom Global Internet Servs. v. AT&T*, No. 14-cv-3942, slip. op. at 3-4 (N.D. Tex. Jul. 31, 2017) (denying motion to compel "all revenue") (Brigham Ex. 27); *Aavid Thermalloy v. Cooler Master Co.*, No. 17-cv-5363, 2018 U.S. Dist. LEXIS 80275, *8-9 (N.D. Cal. May 10, 2018) (denying motion to compel discovery of "all" products with two limitations as "overbroad"); *Bender v. Maxim Integrated Prods.*, No. 09-1152, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (stating "[w]hile plaintiff's statements may not be untrue, they are based on assumptions.  The Court will not order defendant to produce proprietary schematics for over 200 products based on an assumption.").

ParkerVision's motion to compel RFP Nos. 1-7, 10-16, and 21 should be denied.

## 2. ParkerVision is not entitled to "all" documents, which is disproportionate to the needs of this case, and unduly burdensome.

Courts routinely deny motions to compel "overly broad" requests for production. *E.g.*, *Harris v. Ruckus Wireless*, No. 11-cv-618, Dkt. 56 at 2-3 (M.D. Fla. May 17, 2012) (denying motion to compel requests seeking "all" documents relating to the "Accused Products" and "[a]ll documents relating to sales, marketing, and promotional materials for each Accused Product"); *Aatrix Software v. Green Shades Software*, No. 15-cv-164, Dkt. 159 at 9 (M.D. Fla. Dec. 10, 2019) (denying request for "*all* of the data in all tables" of defendant's software) (emphasis in original) (Brigham Ex. 28); *RTC Indus. v. Fasteners for Retail*, No. 17-cv-3595, Dkt. 313 at 2-3 (N.D. Ill. Nov. 26, 2019) (denying motion to compel production of all sales data "conceivably related" to the accused products, and rejecting

plaintiff's "convoyed sales" argument as supporting a broad "fishing expedition" into sales of other products) (Brigham Ex. 26 ).

ParkerVision has made no good faith effort to narrow its requests to a reasonable scope, nor has it justified to the Court why the colossal scope of its numerous requests for "all" documents is relevant to, necessary for, and proportional to the needs of this case.  Fed. R. Civ. P. 26(b)(1); L.R. Rule 3.01(g).  ParkerVision instead unreasonably demands "[a]ll documents and things," "[a]ll source code," "[a]ll chip-level schematics," and "[a]ll marketing, sales, advertising, and promotional materials" for hundreds of products.  (Dkt. 345-1, PV Ex. A at 3-10; PV Ex. D, Dkt. 345-4; *Waymo v. Uber*, No. 17-cv-939, slip op. at 1 (N.D. Cal. Oct. 16, 2017) (denying motion to compel, where the "request [was] profoundly overbroad," and criticizing the party for making a "broad, unsupported discovery request on the assumption that if its broad request is not granted the Court will narrow it to an appropriate scope") (Brigham Ex. 29); *Card-Monroe,* slip. op. at 3 (Court stating it was "unwilling" to narrow plaintiff's requests for it) (Brigham Ex. 25).  ParkerVision's "severe overreaching" should be rejected.  *Straight Path IP Grp. v. Blackberry*, No. 14-80150, 2014 WL 3401723, at *6 (N.D. Cal. July 8, 2014); *Harris,* Dkt. 56 at 2-3 (denying motion to compel "all" documents) (Brigham Ex. 22).

### 3.    ParkerVision is not entitled to privileged and work product materials.

Qualcomm does not believe ParkerVision is seeking privileged and work product materials, based on the parties' discussions.  Due to the extreme over-breadth of ParkerVision's motion, however, Qualcomm maintains its objections to the production of privileged and work product materials.  (PV Ex. B at 12 and 3 (¶ 1).)  For example, RFP No. 6 purports to demand

"[a]ll documents and things relating to Your understanding and knowledge of the Patents-in-Suit …." (Dkt. 345-1 at 12), where "Your" purports to include "any attorney" and "all persons acting directly or indirectly under [numerous entities'] control". (*Id*. at 4.)  Qualcomm objects to the extent the requests seek to invade documents and information protected by the attorney-client privilege, joint defense privilege, and attorney work product doctrine.

### E.   The Court Should Deny ParkerVision's "Representative Product Proposal."

ParkerVision all but admits the reason it wants overly broad and improper discovery requests is to have leverage against Qualcomm.  At page 24 of its brief, ParkerVision asks Qualcomm and this Court to adopt its "Representative Product Proposal" as a carrot to its discovery stick.  Yet, ParkerVision offers no evidence as to how a single Qualcomm product or set of Qualcomm products are "representative" of others.  (PV Mot. at 24.)

This Court has no evidentiary basis (let alone a sufficient one) to justify ordering the parties to comply with ParkerVision's "Representative Product Proposal".  (PV Ex. C at PDF page 21; *Uniloc,* 2018 WL 3219486, at *3 (conclusory assertions that products are representative are "insufficient"; plaintiff must explain "*how*" its laundry list of accused products operate in the same manner for infringement purposes"); *Tech. Properties Ltd. v. Samsung Elecs*., 114 F. Supp. 3d 842, 849–50 (N.D. Cal. 2015) (plaintiff's "representative product" approach was "deficient"); *Bender v. Infineon Techs. N. Am.*, No. 09-2112, 2010 WL 964207, at *1-2 (N.D. Cal. Mar. 16, 2010) (criticizing "plaintiff's grouping of the accused products into rather broad and amorphous categories"); *Digital Reg of Tex. v. Adobe Sys.*, No. 12-1971, 2013 WL 633406, at *4 (N.D. Cal. Feb. 20, 2013) ("alleging a representative platform, without an explanation, is insufficient").)  In fact, on the contrary, the interrogatory

17

responses from Qualcomm that ParkerVision provided the Court actually explain that even within the "WAN/Cellular Transceiver, GPS Receiver" product category, the products are "not identical." (PV Mot. to Compel re Interrogatories, Ex. B at 31; Brigham Ex. 19 at 31.) Even though some of Qualcomm's noninfringement defenses apply to some or all of the Actual Accused Products (as explained in Qualcomm's motion for partial summary judgment addressing collateral estoppel), ordering ParkerVision's "Representative Products Proposal" would be a legally impermissible and erroneous action that would strip Qualcomm of some additional product-specific noninfringement defenses. (*E.g.*, PV Ex. B at 31-56 (identifying differences that further prove noninfringement).)[4] It is also ironic that, having defeated summary judgment based on an argument that Qualcomm's products are different, ParkerVision now changes course and asks the Court to order that they are all the same. (*See, e.g.*, Dkt 348 at 18.)

Even the cases ParkerVision cites related to "representative products" do not support the relief it requests here. (PV Mot. at 10-11.) *TiVo* was in the context of an expert's testimony at trial, not a court ordering a defendant to litigate using representative products where the plaintiff (*i.e.*, ParkerVision) has not established that the other "allegedly infringing devices [] operate similarly" with respect to the asserted patent claim elements. *TiVo v. EchoStar Commc'ns*, 516 F.3d 1290, 1308 (Fed. Cir. 2008). *Spansion* too concerned an expert choosing

---

[4] ParkerVision misunderstands the motion for partial summary judgment Qualcomm filed. (PV Mot. at 7.) Qualcomm's motion (which ParkerVision asked the Court to order Qualcomm to file early) argued based on ParkerVision's infringement contentions, that none of the accused Qualcomm products use an energy storage device to down-convert. (Dkt. 318 at 22-25 and 2, n.2.) Just because one of Qualcomm's noninfringement arguments based on collateral estoppel was that the accused Qualcomm products do not infringe for the same reason, does not mean that every single product is "identical" in all material respects.

to testify about 52 models, as opposed to all of the accused products – not a court ordering a defendant to adopt a representative product proposal. *Spansion v. Int'l Trade Comm'n*, 629 F.3d 1331, 1350 (Fed. Cir. 2010). In both of those cases there was "substantial evidence" that the modeled (*i.e.*, allegedly representative product) and non-modeled products "operate[d] similarly with respect to the claimed limitation". *Id*. at 1351. No such proof has been tendered by ParkerVision here, and ParkerVision even contends that its "four asserted patents" have "claims with varying evidentiary requirements". (PV Mot. at 24.)

The Court should reject ParkerVision's request to dodge the work it took on by filing this case and accusing numerous products. Qualcomm objects to ParkerVision's "Representative Product Proposal," which would violate Qualcomm's due process rights and would be a legally impermissible intrusion on Qualcomm's ability to defend itself in this case.

### F. The Court Should Deny ParkerVision's Motion for Failing to Comply With The Rules.

Rule 37(a)(1) and Rule 3.01(g) of the Middle District of Florida Local Rules require the moving party to confer "in a *good faith effort* to resolve the issues raised by the motion," *before* filing a motion. L.R. Rule 3.01(g) (emphasis added); Fed. R. Civ. P. 37(a)(1). On January 8, ParkerVision served Qualcomm with two motions to compel. (Dkts. 345, 346.) ParkerVision's motions demanded, among other things, "all" documents and things responsive to "Requests for Production Nos. 1-7, 10-16, and 21." (PV Mot. at 1.) But in ParkerVision's numerous emails to Qualcomm, and during the parties' calls in December 2019, ParkerVision never indicated it was moving to compel all documents covered by each of the "Requests for Production Nos. 1-7, 10-16, and 21." (Brigham Decl. ¶ 37.) The parties never even generally discussed the subject matter covered by RFP Nos. 5, 6, and 21. (*Id*. ¶ 37.) It is also difficult

to assess the true nature of the burden and expense of ParkerVision's requests because Qualcomm still does not understand *how* these hundreds of products are relevant, and therefore, which documents (other than "all documents") are the ones ParkerVision wants.

The Court can deny ParkerVision's motion for failing to comply with the rules.

## IV.   CONCLUSION

For the reasons stated herein, ParkerVision's motion to compel Requests for Production Nos. 1-7, 10-16, and 21 should be denied.

Finally, if the Court would benefit from additional clarification on anything in ParkerVision's motion or in Qualcomm's opposition brief, or is inclined to order any discovery (which it should not), Qualcomm respectfully requests the opportunity for oral argument. ParkerVision's motion purports to seek a stunningly large volume of documents – "all" documents for *hundreds* of products.  The entire case schedule may need to be re-done to even contemplate such an extreme measure.[5]

## Request for Oral Argument

Under Local Rule 3.01(j), Qualcomm requests oral argument on this motion and estimates that the time required for argument is 30 minutes.

---

[5] Due to the age of many of the products on ParkerVision's massive list of hundreds of products, even locating and producing responsive documents is likely to require reviving numerous backup tapes or undertaking other extraordinary tasks at incredible burden and expense.  If necessary Qualcomm can submit some estimated costs and additional testimony.

Dated:  January 22, 2020

By:   *Matthew J. Brigham*
Matthew J. Brigham

COOLEY LLP
Stephen C. Neal (admitted pro hac vice)
nealsc@cooley.com
Matthew J. Brigham (admitted pro hac vice)
mbrigham@cooley.com
Jeffrey Karr (admitted pro hac vice)
jkarr@cooley.com
Dena Chen (admitted pro hac vice)
dchen@cooley.com
3175 Hanover Street
Palo Alto, CA  94306-2155
Phone:  (650) 843-5000
Fax:  (650) 849-7400

Stephen Smith (admitted pro hac vice)
ssmith@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Phone:  (202) 842-7800
Fax:  (202) 842-7899

Eamonn Gardner (admitted pro hac vice)
egardner@cooley.com
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone: (720) 566-4000
Facsimile: (720) 720-566-4099

Michael E. Lockamy (Florida Bar No. 069626)
mel@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307

*Attorney for Defendants Qualcomm*
*Incorporated, Qualcomm Atheros, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and forgoing document has

been served on all counsel of record via the Court's ECF system on January 22, 2020.


*/s/ Matthew Brigham*
Matthew Brigham (admitted pro hac vice)
mbrigham@cooley.com
3175 Hanover Street
Palo Alto, CA  94306-2155
Phone:  (650) 843-5000
Fax:  (650) 849-7400

*Attorney for Defendants*
*Qualcomm Incorporated, Qualcomm Atheros, Inc.*