# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

PARKERVISION, INC.,

                    *Plaintiff,*

          v.

QUALCOMM INCORPORATED,
QUALCOMM ATHEROS, INC.,

                    *Defendants.*

Case No. 6:14-cv-687-Orl-PGB-LRH

## DEFENDANTS' MOTION FOR RECONSIDERATION OF ENDORSED ORDER (DKT. 469) GRANTING PARKERVISION'S MOTION TO DESIGNATE A SUBSTITUTE TESTIFYING EXPERT FOR THE ASSERTED RECEIVER CLAIMS (DKT. 465)

REDACTED/PUBLIC VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

      A.   ████ EXPERTISE .......................................................................... 3

      B.   PARKERVISION KNEW, OR SHOULD HAVE KNOWN, ████
           ████ WANTED TO BE REPLACED BEFORE EXPERT
           DISCOVERY BEGAN ....................................................................... 3

      C.   ████ CONFIRMED AT DEPOSITIONS FLAWS IN
           PARKERVISION'S CASE ................................................................. 5

      D.   PARKERVISION DECIDED TO SUBSTITUTE ████ ONLY
           AFTER HE CONFIRMED THE ACCURACY OF HIS TESTIMONY ........ 8

III.  PROCEDURAL HISTORY AND LEGAL STANDARD ........................................ 10

IV.   ARGUMENT ..................................................................................................... 11

      A.   RECONSIDERATION IS WARRANTED BECAUSE
           PARKERVISION WAS NOT DILIGENT, AND ████ AGE
           WAS FORESEEABLE ....................................................................... 11

      B.   THE COURT SHOULD CONFIRM THAT ANY NEW EXPERT IS
           BOUND BY ████ REPORTS AND TESTIMONY ..................... 16

V.    CONCLUSION .................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Avant Garde Eng'g and Res. Ltd. v. Nationwide Equip. Co.*,
   No. 11-525, 2013 WL 12153534 (M.D. Fla. Sept. 11, 2013)...........................................15

*Commonwealth Sci. & Indust. Research Organisation v. Buffalo Tech.*,
   No. 06-324, 2009 WL 260953 (E.D. Tex. Feb. 3, 2009).............................................14, 15

*Crandall v. Hartford Casualty*,
   No. 10-127, 2012 WL 6086598 (D. Idaho Dec. 6, 2012)..................................................14

*Leibel v. NCL (Bahamas)*,
   185 F. Supp. 3d 1354 (S.D. Fla. 2016) ......................................................................11, 12

*Morales v. Palomar Health*,
   No. 14-164, 2016 WL 3763070 (S.D. Cal. July 14, 2016) ...............................................15

*Nutritional Biomimetics v. Empirical Labs*,
   No. 16-1162, 2018 WL 2008858 (D. Colo. April 30, 2018) .............................................13

*Oyster Optics v. Alcatel-Lucent USA*,
   No. 18-478, Dkt. 28 (E.D. Tex. June 8, 2020) (Brigham Ex. 10)......................................17

*Park v. CAS Enterprises*,
   No. CIV. 08CV385DMSNLS, 2009 WL 4057888 (S.D. Cal. Nov. 19,
   2009) ....................................................................................................................11, 16, 17

*ParkerVision v. Apple, et al.*,
   No. 3:15-cv-01477-BJD-MCR (M.D. Fla.) .........................................................................3

*ParkerVision v. Qualcomm*,
   627 F. App'x 921 (Fed. Cir. 2015) ...................................................................................17

*PK Studios. v. R.L.R. Investments, LLC*,
   No. 15-389, 2017 WL 495497 (M.D.Fla. Feb. 7, 2017)....................................................16

*Power Integrations v. Fairchild Semiconductor Int'l*,
   904 F.3d 965 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1265 (2019)................................7

*S. Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn*,
   No. 11-378, 2013 WL 2711961 (M.D.Fla. June 11, 2013)...............................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Seven Networks v. Google*,
   No. 17-442, Dkt. 603 (E.D. Tex. Jan. 16, 2019) (Brigham Ex. 11)...................................17

*Shire Dev. v. Mylan Pharma.*,
   No. 12-1190, 2017 WL 4771008 (M.D. Fla. Jun. 14, 2017) ............................................10

*Virnetx v. Cisco Sys*.,
   767 F.3d 1308 (Fed. Cir. 2014)..........................................................................................8

**Other Authorities**

Fed. R. Civ. P. 60...............................................................................................................1, 10

Fed. R. Civ. P. 60(a), 60(b)(6) ................................................................................................11

On December 28, the Court granted Plaintiff ParkerVision's motion to replace a testifying expert before Defendant Qualcomm had an opportunity to file an opposition brief. (Dkt. 462 at 2 (Qualcomm's intent to oppose); Dkt. 463 (granting extension of time to oppose to December 30); Dkt. 469 (granting ParkerVision's motion).)   Because Qualcomm did not have an opportunity to present important facts regarding ParkerVision's motion, Qualcomm respectfully moves for reconsideration under Fed. R. Civ. P. 60.

ParkerVision's motion to replace ████████ is highly prejudicial to Qualcomm. At a minimum, if after reviewing Qualcomm's opposition, the Court is still inclined to allow substitution of ██████, then Qualcomm requests amendment of the Court's order to address the permissible scope of expert substitution.  Qualcomm requests that the Court confirm that ParkerVision is not permitted to submit any new expert reports, is not permitted to offer any new expert testimony or opinions that go beyond the scope of ████████ reports and testimony, and the replacement expert is bound by the testimony given by ███████.

## I.   INTRODUCTION

Despite having worked with ██████ for months preparing his voluminous expert reports and spending days preparing him for deposition, ParkerVision never raised a single concern about ██████ until after he provided testimony that supports Qualcomm's noninfringement arguments and exposed fundamental flaws in ParkerVision's damages case. ParkerVision's untimely motion to replace ██████ with a new expert witness, after he sat for ten hours of deposition (during which he testified under oath that he was fully able to testify and confirmed the accuracy of his answers), is an attempt to try and hide fatal flaws in

ParkerVision's receiver patent case.  Regrets about the performance of an expert during deposition is not a proper basis for substitution.

ParkerVision has not shown good cause sufficient to warrant the wholesale replacement of a key expert or the prejudice it causes Qualcomm.  Qualcomm invested time and resources preparing responses to ███████ hundreds of pages of reports.  Qualcomm then obtained case dispositive and trial cross-examination testimony about ███████ opinions.  It would violate the rules of civil procedure, as well as the rules of fundamental fairness, to allow ParkerVision to press the reset button.

If the Court is still inclined to allow ParkerVision's tardy substitution, then Qualcomm seeks amendment of the Court's order to confirm that the new expert must be required to stand in the shoes of ███████.  The new expert should be bound by each of ███████ reports and his deposition testimony.  No new or different testimony or opinions should be allowed.  The scope of allowable substitute expert testimony, if any, will influence how much ParkerVision has disrupted the pre-trial and trial schedule through its last-minute substitution.  In addition, Qualcomm seeks clarification that it is awarded fees and expenses attributable to the substitution.

## II.   BACKGROUND

### A.   ██████ Expertise



### B.   ParkerVision Knew, or Should Have Known, ██████ Wanted to Be Replaced Before Expert Discovery Began

ParkerVision hired ██████████████.[4]  When the stay lifted in January 2019 (Dkt. 280), ████████ was ██ years old and had decided that he "████████████████████ ████████████████ because of the demands and stress that the work places on me."[5]  The trial was set for December 2020 (Dkt. 309 (August 30, 2019 order)), when ████████ would be nearly ██ years old.  ParkerVision nonetheless chose to move forward with ██████ as their testifying expert.

In January and February 2020, ParkerVision worked with ████████ in the Jacksonville case[6] on reviewing materials, analyzing schematics, running simulations, and submitting an

---

[1] Appendix A to ████ Opening Rpt., p. 1, Brigham Ex. 1.
[2] Appendix A to ████ Opening Rpt., p. 7, Brigham Ex. 1.
[3] Appendix A to ████ Opening Rpt., pp. 36-39, Brigham Ex. 1.
[4] ████████ Hr'g. Tr. at 49:9-16, Brigham Ex. 2.
[5] ████ Decl., ¶ 3; *see also* ParkerVision's Mot., Ex. 1 ████████████████████
████████████████████████████████████████████."")
[6] *ParkerVision v. Apple, et al.*, No. 3:15-cv-01477-BJD-MCR (M.D. Fla.)

expert report that was over 300 pages with over 1300 pages of Appendices. After working

with and observing ████████ in that case against Qualcomm and Apple, ParkerVision did not

raise any concerns or hire a new expert for this case, despite having plenty of time to do so.[7]

 ParkerVision and its counsel instead worked with ████████ again on this case.[8] Per

the case schedule (Dkt. 384 at 6; Dkt. 447 at 2), in October 2020, ParkerVision submitted

reports from four experts, including ████████, covering issues of alleged infringement of

Qualcomm's products and damages. Up until that time, ParkerVision had not identified their

testifying experts, and could have identified an expert other than ████████. ParkerVision also

could have adjusted the issues it was designating ████████ on, such as by designating a

different expert for issues of alleged validity of the receiver patents. Instead, ParkerVision had

████████ submit another rebuttal expert report on November 23, 2020, covering issues of

alleged validity.[9] The parties agreed on one day (*i.e.*, 7 hours on the record) of deposition for

each expert report, and thus scheduled a two-day deposition of ████████. On November 2,

2020, ParkerVision's counsel stated ████████ was available for deposition "on Dec. 7-9,"

2020.[10] Qualcomm's counsel confirmed the "Dec. 7-8" deposition dates on November 9.[11]

 By November 2020, ████████ had worked nearly 1,000 hours with ParkerVision

counsel on various ParkerVision matters.[12] At any point, if ParkerVision had concerns about

---

[7] ████████████████████████████████████████
████████ (*E.g.,* ████████ Hr'g. Tr. 5:13-15, Brigham Ex. 3.)

[8] Verboncoeur Decl., ¶ 2.

[9] The reports were collectively over 500 pages.

[10] November 2, 2020 Buratti email, Brigham Ex. 4.

[11] November 9, 2020 Moore email, Brigham Ex. 4.

[12] ████████████████████████████████████████
████████████████████████████████

██████ age or memory, it could have sought leave to hire a new expert. *ParkerVision did nothing.*

### C.   ██████   Confirmed at Depositions Flaws in ParkerVision's Case

ParkerVision submitted ██████ two reports, and thus, Qualcomm prepared its case believing ██████ would be ParkerVision's testifying expert for the two receiver patents. On the first day of ██████ deposition, ██████ confirmed (1) he understood he was under oath, (2) there was no reason he could not give accurate testimony, and (3) that he would ask for clarification if he did not understand a question.[13]   Under oath, ██████ then proceeded to testify truthfully as to facts helpful to Qualcomm's defense.

For example, ██████ confirmed that to accurately calculate the energy stored in the accused capacitor in Qualcomm's products, one would need to determine the current through simulation.[14]   ██████, however, repeatedly confirmed that he did not perform any simulations of the Qualcomm products in support of his infringement opinion.[15]   ██████ revealed that counsel had decided that he should not do simulations.[16]   Both the failure of proof to perform the necessary simulation, as well as the result if one had been performed, provide additional basis for finding that the accused Qualcomm products do not infringe ParkerVision's receiver patents.

██████ also provided helpful testimony to Qualcomm's case in three key areas – *negligibility, SAW filters,* and the *'907 patent claims* – that have apparently struck a nerve

---

[13]   ██ Depo., 12:3-23, Brigham Ex. 5.
[14]   ██ Depo., 72:4-78:7, Brigham Ex. 5.
[15]   ██ Depo., 78:24-79:2; 118:18-119:10; 241:9-17, Brigham Ex. 5.
[16]   ██ Depo., 230:18-231:16, Brigham Ex. 5.

with ParkerVision.  For example, on *negligibility*, ███████ agreed that all of the receiver claims require there to be "nonnegligible amounts of energy transferred."[17] ███████ then agreed that a single electron volt (the amount of energy needed to move a single electron) was a negligible amount of energy:[18]

> Q.    Well, I'm just asking you if we're talking about a single electron volt, the amount of energy it takes to move one electron, we would both consider that to be a negligible amount of energy when it comes to the accused devices; correct?
>
> A.    It should be, yes.

The evidence will show that Qualcomm's products transfer less than an electron volt, and thus, do not infringe.

With respect to *SAW filters*, ████████ confirmed that he had no basis to agree or disagree with Qualcomm's contention that duplexers, jammer detector technology, or a host of other technological advancements unrelated to the patents-in-suit, were critical to eliminating SAW filters because he had not done the analysis:[19]

> Q.    And so you can't know how those technologies impacted Qualcomm's ability to eliminate SAW filters versus your perception of

---

[17] ██ Depo., 64:2-11, Brigham Ex. 5.

[18] ██ Depo., 65:22-66:5; 95:19-96:14, Brigham Ex. 5.

[19] ██ Depo., 143:23-144:6; 178:25-179:5; *see also id.*, 129:17-131:20; 133:2-134:8; 135:14-138:6; 140:14-142:19; 143:23-144:6; 176:13-23, Brigham Ex. 5.

```
                ParkerVision's technology; right?
                     A.      I can't --
                             MR. VERBONCOEUR:  Object to the form.
                     A.      I can't do that until I've had the
                opportunity to do the analysis.
                     Q.      Okay.  I agree.

                                     ---

                     Q.      But you don't know if Qualcomm would
                have been able to eliminate some of those interstage
                SAW filters using some of these other technologies
                without using ParkerVision's technology; right?
                     A.      I haven't made any analysis of that,
                so yes, I don't know.
```

███████ confirmation that he did not perform the necessary analysis in reaching his opinion about SAW filter elimination demonstrates a fatal flaw in ParkerVision's damages theory. ParkerVision's damages expert, Mr. Bone, based his royalty opinion on an alleged "cost savings" through the elimination of SAW filters. ███████ provided Mr. Bone with a count of SAW filters.[20] Mr. Bone erroneously assumed ███████ had only counted SAW filters that were eliminated as a result of ParkerVision's patents-in-suit.[21] But as ███████ testimony confirms, that analysis was never done, and therefore, Mr. Bone's receiver damages opinion is inadmissible under Federal Circuit precedent. *E.g.*, *Power*

---

[20] Bone Depo., 181:12-184:24, Brigham Ex. 6.

[21] Bone Depo., 184:25-185:4 ("Q. Right. And so the ones in Exhibit 6.2 are supposed to be only SAW filters that were eliminated because of ParkerVision's patents, not for other reasons, right? A. That's my understanding."), Brigham Ex. 6.

*Integrations v. Fairchild Semiconductor Int'l*, 904 F.3d 965, 977-980 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 1265 (2019); *Virnetx v. Cisco Sys.*, 767 F.3d 1308, 1334 (Fed. Cir. 2014) (vacating award where damages theory was "insufficiently tied to the facts of the case").

Finally, ███████ confirmed what he understood the *claims of the '907 patent-in-suit* to require when he performed the analysis in his reports.[22] ███████ understanding of what the claims require is essential to understand the accuracy (or inaccuracy in this case) of his infringement and validity opinions.

**D.    ParkerVision Decided to Substitute ███████ Only After He Confirmed the Accuracy of His Testimony**

The significance of ███████ damaging testimony in these three areas – negligibility, SAW filters, and the '907 claims – during his first day of deposition was not lost on ParkerVision.  ParkerVision's counsel discussed these areas of testimony with ███████ during a deposition break overnight:[23]

---

[22] ███ Depo., 196:14-206:14, Brigham Ex. 5.
[23] ███ Depo., 256:5-16, Brigham Ex. 5.  *Cf.* M.D. Fla. Civil Discovery Handbook, II(B)(3) ("an attorney and a deponent should ***not normally confer during a deposition***") (emphasis added).

> Q.      During your break last night, did you
> discuss the substance of your testimony with
> counsel?
> A.      Did I discuss the substance?
> Q.      Correct.
> A.      Yes.
> Q.      What substance of your testimony did
> you discuss with counsel?
> A.      There were three things.  One dealt
> with the SAW filters.  The second dealt with the
> concept of negligibility.  I'm not sure I said that
> right.  And the third was the claims of '907.

ParkerVision counsel coached ▮▮▮▮▮ to re-review his report with respect to SAW filters.[24]  The report, of course, contains nothing about analyzing or proving that the patents-in-suit were the reason for the elimination of SAW filters, as opposed to other factors. With respect to negligibility, ▮▮▮▮▮ explained his testimony to ParkerVision's counsel.[25] Finally, with respect to his understanding of the claims of the '907 patent, ParkerVision's counsel had a discussion with ▮▮▮▮▮ "to make sure that I understood what those claims mean and how they go together and what's important in them."[26]  In each instance, and even after having these conversations with ParkerVision's counsel, ▮▮▮▮▮ confirmed the next day during deposition (under oath) that he understood the questions asked on the first day and reconfirmed he testified accurately.[27]  It was only then that ParkerVision's counsel,

---

[24] ▮▮▮ Depo., 256:1-257:2, Brigham Ex. 5.
[25] ▮▮▮ Depo., 257:16-24, Brigham Ex. 5.
[26] ▮▮▮ Depo., 257:25-258:4, Brigham Ex. 5.
[27] ▮▮▮ Depo., 258:5-259:2, Brigham Ex. 5.

*not* ████████, raised concerns about ██████████████████████████████████[28]

## III.   PROCEDURAL HISTORY AND LEGAL STANDARD

On December 14, ParkerVision filed a motion to designate a substitute testifying expert for the asserted receiver claims.  (Dkt. 458; Dkt. 465.)

On December 18, Qualcomm moved to extend its deadline to oppose ParkerVision's motion, from December 28 to December 30.  (Dkt. 462.)  The deadline for Qualcomm to file an opposition brief was extended to December 30, 2020.  (Dkt. 463.)

On December 28, 2020, the Court issued an endorsed order granting ParkerVision's motion.  (Dkt. 469.)[29]

Courts in this District have recognized three grounds justifying reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice."  *Shire Dev. v. Mylan Pharma.*, No. 12-1190, 2017 WL 4771008, at *2 (M.D. Fla. Jun. 14, 2017) (citing *Fla. Coll. of Osteopathic Med. v. Dean Witter Reynolds*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998)).  Federal Rule of Civil Procedure 60 provides for relief from an order, including based on "clerical mistake or a

---

[28] Verboncoeur Decl., ¶ 6 ("As the deposition progressed, I developed concerns about his ability to testify accurately."), 10 ("I spoke with ████████ after the first day of his deposition about his memory and ability to testify accurately. After hearing my concerns, ██████ requested shorter periods of questioning and more frequent breaks.")

[29] Dkt. 469 stated:  "granting in part and denying in part [465] Motion for Extension of Time to File.  Plaintiff may designate a substitute testifying expert for the asserted receiver claims. On or before Tuesday, January 5, 2021, the parties will meet and confer, identify the new testifying expert witness, and submit an amended Case Management Report with proposed new dates for dispositive and Daubert briefing, as well as a discussion of the impact on the remaining deadlines, including trial."

mistake arising from oversight or omission" and "any other reason that justifies relief."  Fed. R. Civ. P. 60(a), 60(b)(6).

## IV.   ARGUMENT

### A.   Reconsideration is Warranted Because ParkerVision Was Not Diligent, and ████████ Age Was Foreseeable

A party seeking to extend an "already-expired scheduling order deadline must show both good cause and excusable neglect."  *Leibel v. NCL (Bahamas)*, 185 F. Supp. 3d 1354, 1356 (S.D. Fla. 2016) (denying motion to substitute expert witness).   Courts have been "consistent in denying motions to substitute an expert witness when the reason for the substitution was foreseeable and resulted from the parties' lack of diligence."  *Leibel*, 185 F. Supp. 3d at 1356-57.   ParkerVision focuses on its alleged "diligence" between ████████ indication of his desire to resign and the filing of this motion.   But focusing on that narrow window is the wrong inquiry.   *Even if* the reason for ████████ resignation is age, instead of unfavorable testimony, the proper question is – What has ParkerVision and its counsel done over the last several years to make sure ████████, Qualcomm, and this Court were not placed in this position, after the close of expert discovery?[30]

ParkerVision wishes for Qualcomm and this Court to assume that ████████ age has caused his sudden mid-deposition unwillingness to proceed.[31]   But ████████ age is certainly

---

[30] Dkt. 447 at 2 (expert discovery closed December 11).

[31] ParkerVision has not submitted a note or declaration from a medical doctor.  If the Court is inclined to allow ParkerVision to substitute an expert but not allow Qualcomm to use deposition based on broad, untested statements from ████████ and Mr. Verboncoeur, then the Court should first order a deposition and request medical documentation concerning whether ████████ was competent to testify.  *E.g.*, *Park v. CAS Enterprises*, No. CIV. 08CV385DMSNLS, 2009 WL 4057888 (S.D. Cal. Nov. 19, 2009)

not something that could have snuck up on ParkerVision or its counsel. ███████ even joked about being ███████████████████████████████████████████.[32]   Nor can ParkerVision, a serial litigant represented by experienced trial counsel, claim to be unaware of the burdens placed on a testifying expert in patent litigation or ███████ concerns about those burdens.   According to ███████, he decided *years ago* that he no longer wanted to be an expert due to the stress of testifying.[33]   ParkerVision knew, or should have known, this fact. ParkerVision was not diligent, and the stated reason of "age" was foreseeable. *Leibel*, 185 F. Supp. 3d at 1356-57 (denying motion to substitute expert witness).

By 2020, before any expert work had begun in this case, ParkerVision knew ███████ was over ██ years old and should have known age may affect stamina or memory. ParkerVision had disclosed a *dozen* other technical experts or consultants under the protective order.[34]   ParkerVision had other options but put ███████, Qualcomm, and this Court in this situation anyway by choosing to use ███████ as its expert.

███████ ability to handle the burdens of expert work could not have been a surprise either. ███████ submitted a voluminous technical report in the Jacksonville case against Qualcomm. ███████ had "[d]iscussions" with ParkerVision employees, including

---

(permitting a deposition of the expert to determine the extent to which his condition prevented him from continuing and a letter from a physician).

[32] ███████ Hr'g. Tr. at 158:17-18, Brigham Ex.2.

[33] ParkerVision's Mot., Ex. 1; *see also* ███████ Decl., ¶ 3 ("At some point after signing on with ParkerVision, ███████████████████████████████████████ ███ because of the demands and stress that the work places on me.")

[34] April 15-16, 2020 Burke email exchange, Brigham Ex. 7.

"David Sorrells and Jeff Parker," before submitting his opening expert report in this case.[35]
ParkerVision's counsel spent numerous hours talking with ███████ and asking him about his
opinions.[36] *E.g.*, *Nutritional Biomimetics v. Empirical Labs,* No. 16-1162, 2018 WL 2008858
at *2 (D. Colo. April 30, 2018) (counsel failed to ask the expert "rudimentary questions" which
demonstrated lack of diligence).  ParkerVision's counsel and ███████ also spent days together
in person at the Qualcomm review computer in San Diego.[37]  After working closely with him
for months, ParkerVision selected ███████ to be its expert witness and ███████ submitted
two expert reports in this case.  Put simply, ParkerVision's motion is the result of ███████
giving sworn testimony that ParkerVision did not like.[38]

It was ParkerVision's lawyers – *not* ███████ *or a medical professional treating*
███████ – that raised concerns about ███████ memory and "ability to testify accurately"
after the first day of deposition on the record.[39]  ParkerVision's lawyers did not say anything

---

[35] *E.g.*, ███████ Opening Rpt., p. 42, n.26 (citing "Discussions with David Sorrells and Jeff Parker"), Brigham Ex. 8.

[36] *E.g.*, Verboncoeur Decl., ¶ 4 ("My colleagues and I provided guidance and feedback to ███████ …").

[37] *E.g.*, December 13, 2019 Burke email, Brigham Ex. 9.

[38] Without downplaying any concerns ███████ may have about his health, the examples cited by ParkerVision's attorneys as proof of faulty memory are unremarkable and unrelated to the accuracy of the testimony given.  Particularly in circumstances like the one here, where ParkerVision is asserting an unreasonable number of claims, patents, and products, experts routinely cannot remember specific names of products or sections of voluminous reports.  With respect to whether ███████ travelled to San Diego, anyone who has undergone the stress and uniqueness of 2020 would have sympathy for not remembering what happened at the beginning of the year.

[39] Verboncoeur Decl., ¶10.  In his declaration, ███████ also expresses concerns about travelling and interacting with others until the pandemic has passed.  ███████ Decl., ¶ 15. Qualcomm shares this concern.  Qualcomm's witnesses, counsel, and experts (many of whom are also in high-risk age groups) reside in at least three different states.  Qualcomm, however,

on the record, but instead waited until that night, during a deposition break, to mention ████████ stamina.  But even then, ParkerVision's lawyers said nothing about accuracy or truthfulness, but only referred to wanting the second day of ████████ deposition be reduced to 3.5-hour stints.[40]  It was only *after* ████████ second day of deposition, *after* ████████ reconfirmed the accuracy of the testimony he had given on the first day, that ParkerVision mentioned the prospect of replacing ████████.

Unfavorable testimony is not the "good cause" needed to justify a late substitution of an expert.  *Crandall v. Hartford Casualty*, No. 10-127, 2012 WL 6086598 at *3 (D. Idaho Dec. 6, 2012) ("A party's choice upon which expert to hire for assistance in a lawsuit is just that — a choice.  Sometimes the results of those choices go smoothly and successfully.  Sometimes they do not.  However, ***the timely progression of a lawsuit cannot turn on whether a party is fully satisfied with the particular choice of an expert***.  Those are decisions, including the due diligence necessary to guard against difficulties arising from such decisions, that must be made by parties within the scheduling time-frames imposed by the Court.") (emphasis added).

Courts have refused to allow the substitution of experts in similar circumstances.  In *Commonwealth Sci. & Indust. Research Organisation v. Buffalo Tech.*, No. 06-324, 2009 WL 260953 at *1-2 (E.D. Tex. Feb. 3, 2009), the court denied a motion to identify a new expert witness when the prior expert "[did] not want to testify at the trial and wants to only be

_____

intends to address these concerns with the Court as trial gets closer and more is known about the current state of the pandemic and applicable travel restrictions.
[40] Verboncoeur Ex. 2, Dkt. 465-4 at 4.

minimally involved in the case."  The expert "express[ed] his belief that testifying may jeopardize his health" but provided no evidence of the expert's medical condition.  The court found that the opposing party "would be prejudiced by the substitution.  Impeaching [a new expert] with [the prior expert's] statement would have a minimal impact on the jury, whereas impeaching [the prior expert] with his own statements would have a much stronger impact." *Id*.  The court concluded:  "Given [the prior expert's] prior statements and the absolute lack of evidence concerning his health, Buffalo's attempt to replace [the prior expert] with [the new expert] appears to be only a ***litigation tactic to avoid those negative statements***."  *Id*. at *3 (emphasis added).  The same rationale applies here.

The *Morales* court similarly denied a plaintiff's request to substitute a reluctant expert witness, noting plaintiff's "buyer's remorse" in retaining the expert.  *Morales v. Palomar Health*, No. 14-164, 2016 WL 3763070 at *2 (S.D. Cal. July 14, 2016).  In concluding that good cause had not been shown, the court highlighted many critical prejudices:

> Defendants contend, as they did initially, that they will be unfairly prejudiced if substitution of a new expert is permitted at this time.  The new, as yet unidentified expert will not be relying on Dr. Mandeville's report but will prepare a new report.  This will prejudice defendants, they argue, because the new report will be made with the benefit of reviewing the reports of Defendants' experts and may necessitate new rebuttal reports and another round of depositions.  This in turn will impact the Court's scheduling of this case for pretrial disclosures and conference and, ultimately, trial.  The Court agrees with Defendants that good cause has not been shown.

*Id*. at *2.

ParkerVision's cited cases are inapposite.  In *Avant Garde Eng'g and Res. Ltd. v. Nationwide Equip. Co.,* No. 11-525, 2013 WL 12153534 at *2 (M.D. Fla. Sept. 11, 2013)*,* the

15

expert "completely refuse[d] to communicate with Plaintiff" and in *PK Studios. v. R.L.R. Investments, LLC*, No. 15-389, 2017 WL 495497 (M.D.Fla. Feb. 7, 2017), *Park v. CAS Enterprises, Inc.*, No. 08-385, 2009 WL 4057888 (S.D.Cal. Nov. 19, 2009) and *S. Gardens Citrus Processing Corp. v. Barnes Richardson & Colburn*, No. 11-378, 2013 WL 2711961 (M.D.Fla. June 11, 2013), the experts unexpectedly resigned before deposition.  Here, █████ █████ did not refuse to communicate with ParkerVision, and instead worked closely with ParkerVision and sat for a multi-day deposition.  Notably, █████████ has not actually resigned; instead, he says only that he is prepared to resign "if the court permits."[41]   In *Jung,* the substitution was before any deposition, backed up by a declaration by someone who had known the expert for eight years and observed his deteriorating condition, and the expert's condition had "declined so precipitously" that counsel eventually "lost contact with him entirely."  None of those events occurred here.  Reconsideration should be granted because ParkerVision's motion is not supported by good cause.

### B.     The Court Should Confirm That Any New Expert Is Bound by ████████ Reports and Testimony

ParkerVision's tardy request to replace one of its two technical experts after expert discovery closed is highly prejudicial to Qualcomm.  But if the Court is inclined to deny the motion for reconsideration, then Qualcomm requests that the Court's order be amended to enact several important safeguards to mitigate the prejudice to Qualcomm.[42]   Importantly, ParkerVision's new expert must pick up exactly where ██████ left off.

---

[41] ParkerVision's Mot., Ex. 1; *see also* ██████ Decl., ¶ 4.

[42] Qualcomm also requests an amendment to the trial schedule.  Qualcomm will include its proposal in the Case Management Report due January 5.  (Dkt. 469.)

*First*, there appears to be no dispute that the new expert should be bound by ███████ reports.  ParkerVision indicates that it agrees that the new expert will "adopt ███████ initial and rebuttal expert reports and will provide testimony within the scope of those reports."[43] *Park*, 2009 WL 4057888 at *2 ("Mr. Fogel may not, however, espouse any other opinions or theories not found in Mr. Lande's expert reports.   It would be both prejudicial and unduly burdensome to Kreg Tool to allow submission of new expert reports with new theories and opinions.  It would also be unduly prejudicial to Kreg Tool to allow Park to prepare new expert reports after having had the benefit of Kreg Tool's expert reports for several months.").  The Court should make clear that the new expert is not permitted to issue any new reports, any new opinions, or to rely on facts or materials that ███████ did not cite or review in developing his reports.

*Second,* ███████ reports and deposition testimony should be admissible, including to impeach the new expert.  *See Oyster Optics v. Alcatel-Lucent USA*, No. 18-478, Dkt. 28 (E.D. Tex. June 8, 2020) ("During trial, Oyster may, where appropriate, attempt to impeach [new expert] Dr. Gunderson using Dr. Gunderson's deposition testimony, [old expert] Mr. Fancher's reports, and [old expert] Mr. Fancher's depositions in this case.") (Brigham Ex. 10); *Seven Networks v. Google*, No. 17-442, Dkt. 603 (E.D. Tex. Jan. 16, 2019) ("During trial, Defendant Google may, where appropriate, attempt to impeach [new expert] Dr. Peterson using the depositions of Dr. Peterson and [old expert] Dr. Stewart") (Brigham Ex. 11).  During meet and confers, ParkerVision has indicated it generally agrees that they will be "of record" and

---

[43] ParkerVision's Mot. at ¶ 26.   But ParkerVision has a track record of trying to proffer new theories.  *E.g.*, *ParkerVision v. Qualcomm*, 627 F. App'x 921, 922, n.1 (Fed. Cir. 2015) (recounting ParkerVision's changing theories).

can be used for impeachment.

*Third*, Qualcomm should not be forced to ask the same questions of a new expert, only to get different answers now that ParkerVision's new expert had a chance to see the questions and be coached by ParkerVision's counsel.  The new expert should be bound by exactly what ████ said under oath.  The ten hours of deposition of ████ (which he confirmed were accurate and truthful at the time) should not be ignored and wiped away, treated as a dry-run, or discounted at trial as the words of some other expert.  Rather, to avoid confusion and further disputes, the new expert must be bound by ████ testimony as if it was his own.  In exchange, Qualcomm will forgo another fourteen-hour deposition of ParkerVision's new expert, and any additional deposition of the new expert would be limited to his qualifications, confirmation under oath that he adopts the testimony and opinions of ████, and the subject matter Qualcomm was not able to address with ████ given his shortened deposition.[44]

*Fourth*, the Court should grant Qualcomm fees and expenses, including for: (1) responding to the motion ParkerVision brought and bringing this motion for reconsideration, (2) for any work and costs preparing for and deposing ParkerVision's replacement expert, and (3) for the work done to prepare for and depose ████.  "But for" ParkerVision's neglect and actions, Qualcomm would not have incurred these undue burdens and expenses.

## V.    CONCLUSION

Reconsideration is warranted because no good cause has been shown to support

---

[44] Per ParkerVision's counsel's request, Qualcomm limited its second day of deposition of ████ to 3.5 hours.  Verboncoeur Ex. 2, Dkt. 465-4 at 4.

ParkerVision's motion.  The substitution of a new expert at this late date should be denied.

If substitution is allowed, the Court should amend its Order to confirm that a new expert is bound by the reports and deposition testimony of ████.  No new opinions or new testimony should be allowed.  The deposition of ParkerVision's new expert would be focused on his qualifications, confirmation under oath that he adopts the testimony and opinions of ██, and the subject matter Qualcomm was not able to address with █████ given his abbreviated second-day deposition.  Finally, Qualcomm should be awarded its fees and expenses.

### **Local Rule 3.01(g) Certification**

The undersigned counsel certifies that, on December 30, 2020, counsel for Qualcomm and ParkerVision conferred via telephone conference about this motion.  Counsel for ParkerVision indicated that it does not agree on the resolution of this motion.

Dated:  December 30, 2020                */s/ Matthew J. Brigham*

BEDELL, DITTMAR, DEVAULT,              COOLEY LLP
PILLANS & COXE, P.A.                   Stephen C. Neal (admitted pro hac vice)
John A. DeVault, III                   nealsc@cooley.com
Florida Bar No. 103979                 Matthew J. Brigham (admitted pro hac vice)
jad@bedellfirm.com                     mbrigham@cooley.com
Michael E. Lockamy                     Jeffrey Karr (admitted pro hac vice)
Florida Bar No. 069626                 jkarr@cooley.com
mel@bedellfirm.com                     Priya Viswanath (admitted pro hac vice)
The Bedell Building                    pviswanath@cooley.com
101 East Adams Street                  Dena Chen (admitted pro hac vice)
Jacksonville, Florida 32202            dchen@cooley.com
Phone: (904) 353-0211                  Sarah B. Moore (admitted pro hac vice)
Fax: (904) 353-9307                    smoore@cooley.com
                                       Patrick W. Lauppe (admitted pro hac vice)
                                       plauppe@cooley.com

3175 Hanover Street
Palo Alto, CA  94306-2155
Phone:  (650) 843-5000
Fax:  (650) 849-7400

CADWALADER, WICKERSHAM &
TAFT, LLP
Howard Wizenfeld (admitted pro hac vice)
Howard.wizenfeld@cwt.com
One World Financial Center
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6050
Facsimile: (212) 504-6666

COOLEY LLP
Stephen Smith (admitted pro hac vice)
ssmith@cooley.com
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
Phone:  (202) 842-7800
Fax:  (202) 842-7899

COOLEY LLP
Eamonn Gardner (admitted pro hac vice)
egardner@cooley.com
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone: (720) 566-4000
Facsimile: (720) 566-4099

*Attorneys for Defendants Qualcomm
Incorporated and Qualcomm Atheros, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and forgoing document has

been served on all counsel of record via the Court's ECF system on December 30, 2020.


*/s/ Matthew J. Brigham*

COOLEY LLP
Matthew J. Brigham (admitted pro hac vice)
mbrigham@cooley.com
3175 Hanover Street
Palo Alto, CA  94306-2155
Phone:  (650) 843-5000
Fax:  (650) 849-7400

*Attorney for Defendants Qualcomm Incorporated and Qualcomm Atheros, Inc.*