## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

PARKERVISION, INC.,

        Plaintiff,

v.                              Case No:  6:14-cv-687-Orl-40LRH

QUALCOMM INCORPORATED and
QUALCOMM ATHEROS, INC.,

        Defendants.
_____/

## ORDER

This cause is before the Court on Defendants' Motion for Reconsideration of the Court's Endorsed Order Granting ParkerVision's Motion to Designated a Substitute Testifying Expert for the Asserted Receiver Claims (Doc. 465 (the "**Motion**")). The Motion is due to be granted in part and denied in part.

## I.    BACKGROUND

The instant dispute arose from Plaintiff ParkerVision, Inc.'s ("**ParkerVision**"), underlying motion to designate a substitute testifying expert (Doc. 465). In 2015, ParkerVision identified an expert (the "**Original Expert**")[1] relating to the Asserted Receiver Claims of the two receiver patents.[2] In late 2020, the Original Expert drafted opening and rebuttal expert reports. On December 9, 2020, the Original Expert sat for

---

[1]   The Original Expert's name is omitted from this Order.

[2]   The Asserted Patents encompass both receiver and transmitter functionality. The accused transceiver products in this case contain both receiver and transmitter components. ParkerVision designated a different testifying expert for the remaining Asserted Transmitter Claims of the two transmitter patents.

deposition. During his deposition, he "testified that he could not remember certain topics (including recent events) and [he] later admitted he was unable to parse out the words in the questions so that he could fully understand what he was being asked and offer testimony in response." (Doc. 465, pp. 2–3).

Shortly thereafter, the Original Expert "offered his resignation and asked to be released from the case." (*Id.* at p. 2). His resignation letter explained that he does "not believe [his] memory and ability to parse questions on examination is reliable enough to provide consistent and accurate testimony under examination." (Doc. 465-2, ¶ 4). As a result, he indicated that a substitution of experts would be in his and ParkerVision's best interests. (*Id.* ¶ 14).

Upon receiving the Original Expert's resignation, ParkerVision promptly conferred with Defendant Qualcomm. (Doc. 465, p. 3). ParkerVision also moved for an extension of time to designate an alternative testifying expert for the Asserted Receiver Claims. (*Id.*). ParkerVision planned to designate one of two potential alternates who will adopt the Original Expert's initial and rebuttal reports and will only provide testimony within the scope of those reports.[3]

ParkerVision filed its motion for substitution on December 23. (*Id.* at p. 2). The existing deadline for dispositive and *Daubert* motions was December 30, 2020. (*Id.*). Due to the impending deadline, the Court granted the motion via Endorsed Order on

---

[3] ParkerVision has since designated Dr. Michael Steer, Ph.D. ("**Dr. Steer**"), as its substitute testifying expert for the Asserted Receiver Claims. (Doc. 478). Dr. Steer has already been designated as ParkerVision's expert for the Asserted Transmitter Claims and has been deposed in that capacity by Qualcomm.

December 28. (Doc. 469). At that time, Qualcomm had not responded to the motion—the Court notes, however, that the time to do so had not yet passed.[4]

Qualcomm now moves for reconsideration. (Doc. 470, p. 5).

## II.   STANDARD OF REVIEW

Reconsideration is typically an extraordinary remedy which will only be granted upon a showing of one of the following: (1) an intervening change in law, (2) the discovery of new evidence which was not available at the time the Court rendered its decision, or (3) the need to correct clear error or manifest injustice. *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998).

## III.   DISCUSSION

The Court decided ParkerVision's underlying motion without the benefit of Qualcomm's input. With this in mind, the Court will fully address the merits of Qualcomm's Motion for Reconsideration.

Qualcomm asks the Court to reconsider its decision to allow ParkerVision to substitute testifying experts. (Doc. 470, p. 5). In the alternative, Qualcomm requests that the Court confirm that: (1) ParkerVision may not submit any new expert reports; (2) ParkerVision may not offer new expert opinions or testimony that go beyond the scope of the Original Expert's reports and testimony; and (3) Dr. Steer is bound by the testimony already given by the Original Expert. (*Id.*). The Court will address these arguments in turn.

---

[4]   Due to the speed at which the issue had developed, Qualcomm was unable to take a position before ParkerVision filed the motion, but reserved the right to object after reviewing the motion's substance. (Doc. 465, p. 15).

### A.      Reconsideration

District courts have broad discretion in supervising the pretrial phase of litigation. *See Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1574 (11th Cir. 1985) (applying clear abuse of discretion standard). However, a party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect. *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015)[5]; *see also* FED. R. CIV. P. 16(b)(4), 6(b)(1)(b).[6] To establish "good cause," a party must show that "the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures*, *L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008). In determining whether a party has shown "excusable neglect," a court must consider all pertinent circumstances, including "the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Advanced Estimating Sys. v. Riney*, 77 F.3d 1322, 1325 (11th Cir.1996).

Here, ParkerVision's underlying motion satisfies the good cause standard. "Courts have consistently allowed the substitution of expert witnesses when unexpected events prevent the designated expert from testifying at trial." *Leibel v. NCL (Bahamas)*, 185 F.

---

[5]   "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

[6]   Under Rule 16(b)(4), "A [scheduling order] may be modified only for good cause and with the judge's consent." Under Rule 6(b)(1)(b), "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."

Supp. 3d 1354, 1356 (S.D. Fla. 2016) (collecting cases).[7] The record suggests that neither the Original Expert nor ParkerVision expected a sudden resignation. Indeed, ParkerVision's counsel declared that, "Before [the Original Expert's] deposition, I did not have concerns about [his] ability to testify." (Doc. 468-1, ¶ 5).

Notwithstanding, Qualcomm responds that ParkerVision either knew or should have known that the Original Expert would need to be replaced. According to Qualcomm, ParkerVision should have anticipated the Original Expert's resignation—after all, "[The Original Expert's] age is certainly not something that could have snuck up on ParkerVision or its counsel." (*Id.* at p. 15–16). The Court first notes that age is not necessarily indicative of mental capacity.[8] Regardless, ParkerVision explains that "Qualcomm's focus on the foreseeability of age is a red herring: The issue is that [the Original Expert] unexpectedly submitted his resignation after he became concerned with his wellbeing and ability to testify accurately. This was unexpected, and ParkerVision acted diligently once this occurred." (Doc. 474, p. 5). The Court agrees. It defies reason to assume that ParkerVision would move forward with a deposition if they believed their expert would resign midway through, potentially leaving them with no Asserted Receiver Claims expert at all—no reasonable attorney would make such a gamble.

---

[7] *See, e.g.*, *Jung v. Neschis,* No. 01 Civ. 6993, 2007 WL 5256966, at *4, *16–17 (S.D.N.Y. Oct. 23, 2007) (allowing substitution of experts because original expert developed Alzheimer's disease during course of litigation); *Park v. CAS Enterprises, Inc.*, 2009 WL 4057888, at *1–2 (S.D. Cal. 2009) (allowing substitution of experts where the original expert resigned due to "memory problems.")

[8] An obvious example is Justice Ruth Bader Ginsburg, who served on the Supreme Court until her death at age 87.

Regarding the excusable neglect prong, the Court does not believe ParkerVision acted negligently by selecting and proceeding with an expert who suddenly resigned for health reasons. But even if ParkerVision *had* been negligent, the balance of pertinent circumstances still tip in favor of excusal. Substitution of experts will not have an overly burdensome effect on the length and course of litigation. Additionally, as discussed below, a substitution of experts will cause little prejudice to Qualcomm. In contrast, the prejudice to ParkerVision would be severe, the reason for delay is largely outside ParkerVision's control, and ParkerVision appears to have acted in good faith.

The Court therefore concludes that the Original Expert's resignation was unforeseeable. Thus, good cause exists to modify the Case Management and Scheduling Order to allow substitution of experts. Qualcomm's Motion for Reconsideration on this point is denied.

### B.    Confines of the Substitute Expert's Testimony

Qualcomm requests that the Court amend its Endorsed Order to "enact several important safeguards to mitigate prejudice to Qualcomm." (Doc. 470, p. 20). The parties agree on the necessity of several such safeguards: (1) Dr. Steer will adopt the Original Expert's initial and rebuttal reports in their entirety and provide testimony within the scope of those reports; (2) Dr. Steer will not submit a new report; (3) the Original Expert's reports and deposition testimony will be admissible, including to impeach Dr. Steer; and (4) ParkerVision will reimburse Qualcomm's reasonable costs related to the additional deposition of Dr. Steer.[9] The Court agrees that these conditions are reasonable and

---

[9]   To the extent that Qualcomm seeks further reimbursement, they may do so by separate motion.

necessary to ensure that Dr. Steer is indeed a *replacement* expert rather than an *additional* expert.

That said, Qualcomm's final request goes too far. According to Qualcomm, "The new expert should be bound by exactly what [the Original Expert] said under oath [at his deposition]." (*Id.* at p. 22). Qualcomm proposes that Dr. Steer accept the Original Expert's deposition testimony as if it was his own. (*Id.*).[10] In response, ParkerVision argues that requiring Dr. Steer to be "bound" by the Original Expert's testimony is an unprecedented and "ambiguous request that goes beyond curing any prejudice to Qualcomm." (Doc. 474, p. 8). The Court agrees. As ParkerVision points out, trial witnesses are never "bound" by their depositions—if trial testimony conflicts with deposition testimony, the witness must be given the opportunity to explain the inconsistency. *See* Fed. R. Evid. 613(b).[11] Qualcomm's proposed remedy would deprive Dr. Steer of that opportunity. Qualcomm may impeach Dr. Steer with inconsistent statements by the Original Expert, but they may not wholly block Dr. Steer from defending himself.

The Court emphasizes that ParkerVision is not entitled to a mulligan. Dr. Steer should stand in the shoes of the Original Expert to the greatest extent possible. To that end, Dr. Steer will not be permitted to offer opinions that either limit or expand the parameters, analysis, conclusions, or scope of the Original Expert's opinions. However,

---

[10] "In exchange, Qualcomm will forgo another fourteen-hour deposition of ParkerVision's new expert, and any additional deposition of the new expert would be limited to his qualifications, confirmation under oath that he adopts the testimony and opinions of [the Original Expert], and the subject matter Qualcomm was not able to address with [the Original Expert] given his shortened deposition." (*Id.*).

[11] "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." *Id.*

in the absence of supporting authority, the Court declines to "bind" Dr. Steer to the Original Expert's deposition testimony.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Qualcomm's Motion for Reconsideration of the Court's Endorsed Order Granting ParkerVision's Motion to Designated a Substitute Testifying Expert for the Asserted Receiver Claims (Doc. 465) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.    Qualcomm's request for the Court to reconsider its decision to allow ParkerVision to modify the Case Management and Scheduling Order to allow substitution of experts is **DENIED**.

2.    The Court clarifies its Endorsed Order (Doc. 469) as follows:

a.    Dr. Steer must adopt the Original Expert's initial and rebuttal reports in their entirety and provide testimony within the scope of those reports;

b.    Dr. Steer may not submit a new report;

c.    The Original Expert's reports and deposition testimony will be admissible at trial, including to impeach Dr. Steer; and

d.    ParkerVision will reimburse Qualcomm's reasonable costs related to the additional deposition of Dr. Steer.

3.    The Motion is otherwise **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on January 6, 2021.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties