**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

PARKERVISION, INC.,

*Plaintiff*,

v.

QUALCOMM INCORPORATED,
QUALCOMM ATHEROS, INC.,

*Defendants*.

Case No. 6:14-cv-00687-Orl-40LRH

**DEFENDANTS' MOTION TO STRIKE AND EXCLUDE OPINIONS
REGARDING ALLEGED INFRINGEMENT AND VALIDITY ISSUES**

ORAL ARGUMENT REQUESTED

PUBLIC/REDACTED DOCUMENT SOUGHT TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................... 1

II. Motion #1:  Motion To Strike Undisclosed Theories .............................. 1

    A. Striking New "Impedance Translation" Infringement Theory, Which Was Never Disclosed In Infringement Contentions............ 2

    B. Striking Untimely New ▇▇▇▇ Opinions ................................ 3

        1. Motion to strike ▇▇▇▇ calculations for validity............ 4

        2. Motion to strike late ▇▇▇▇ calculations for infringement ................................................................... 4

        3. ParkerVision's ▇▇▇▇ theory lacks scientific basis ........ 5

        4. The ▇▇▇▇ theory finds no support in the patents ........ 7

        5. Qualcomm must be afforded the opportunity to respond ...................................................... 8

    C. Striking New Theory Regarding the Alleged Reference Potential, Because ParkerVision's Expert Points to a Different Signal Than ParkerVision Did In Its Contentions.......................... 8

III. Motion #2:  Motion To Strike Estopped and Unreliable Opinions......... 10

    A. ParkerVision Cannot Relitigate Validity Issues for TX Patents .... 10

    B. ParkerVision Cannot Relitigate *ParkerVision I* ............................ 13

    C. ParkerVision Cannot Testify Using Incorrect Claim Constructions................................................... 15

IV. Motion #3:  Motion to Strike Unreliable and Speculative Infringement Opinions Due to Lack of Testing and Simulation ............ 15

V. Motion #4:  Motion to Strike '372 Patent Infringement Opinions.......... 21

VI. Conclusion............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Baxter Healthcare*,
  660 F.Supp.2d 882 (N.D. Ill. Sept. 17, 2009) ............................................. 17

*Allison v. McGhan Med.*,
  184 F.3d 1300 (11th Cir. 1999)................................................................5, 18

*Ascion v. Ashley Furniture Indus.*,
  No. 19-856, Dkt. 66 (W.D. Wis. Oct. 23, 2020) ............................................ 9

*Aylus Networks v. Apple*,
  856 F. 3d 1353 (Fed. Cir. 2017).................................................................. 11

*Becton, Dickinson & Co. v. Tyco Healthcare*,
  616 F.3d 1249 (Fed. Cir. 2010)................................................................... 16

*Cobra Int'l v. BCNY Int'l*,
  No. 05-61225, 2013 WL 3938659 (S.D. Fla. July 30, 2013) ................... 15, 17

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*,
  402 F.3d 1092 (11th Cir. 2005)................................................................... 19

*Daubert v. Merrell Dow Pharm.*,
  509 U.S. 579 (1993) ................................................................................... 6

*Dolphin v. Synthes*,
  No. 06-7719, 2011 WL 1345334 (S.D.N.Y. Mar. 25, 2011) ........................ 15

*Eltech Sys. v. PPG Indus.*,
  903 F.2d 805 (Fed. Cir. May 10, 1990) ....................................................... 17

*Eon Corp. IP Holdings v. Silver Spring Networks*,
  815 F.3d 1314 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 640 (2017) ............... 15

*Finjan v. Cisco Sys.*,
  No. 17-72, 2020 WL 2322923 (N.D. Cal. May 11, 2020)...........................1, 8

*Hako-Med USA v. Axiom Worldwide*,
  No. 6-1790, 2009 WL 10671312 (M.D. Fla. Aug. 26, 2009) ......................4, 9

-ii-

*KlausTech v. Google*,
    No. 10-5899, 2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) .................. 1, 3, 9

*Kumho Tire v. Carmichael*,
    526 U.S. 137 (1999) ...................................................................................... 6

*MaxLinear v. CF CRESPE*,
    880 F.3d 1373 (Fed. Cir. 2018) .................................................................. 10

*McClain v. Metabolife Int'l*,
    401 F.3d 1233 (11th Cir. 2005) ................................................................... 5

*MiMedx Grp. v. Liventa Bioscience*,
    No. 14-1178, Dkt. 321 (N.D. Ga. Aug. 11, 2017) ....................................... 21

*MyMail v. Am. Online*,
    476 F.3d 1372 (Fed. Cir. 2007) .................................................................. 15

*Nestle USA v. Steuben Foods*,
    884 F.3d 1350 (Fed. Cir. 2018) .................................................................. 10

*O2 Micro Int'l v. Beyond Innovation Tech.*,
    521 F.3d 1351 (Fed. Cir. 2008) .................................................................. 15

*ParkerVision v. Qualcomm*,
    27 F.Supp.3d 1266 (M.D. Fla. 2014), *aff'd in part, rev'd in part*, 621
    F. App'x 1009 (Fed. Cir. 2015) ............................................................. 17, 18

*ParkerVision v. Qualcomm*,
    621 F. App'x 1009 (Fed. Cir. 2015) ............................................ 13, 14, 15, 17

*ParkerVision v. Qualcomm*,
    627 F. App'x 921 (Fed. Cir. 2015) ............................................................. 13

*ParkerVision v. Qualcomm*,
    903 F.3d 1354 (Fed. Cir. 2018) ............................................................. 10, 11

*Parrish v. Freightliner*,
    471 F.Supp.2d 1262 (M.D. Fla. 2006) ...................................................... 1, 9

*Rembrandt Vision Techs. v. Johnson & Johnson Vision Care*,
    725 F.3d 1377 (Fed. Cir. 2013) ................................................................... 1

*Rembrandt Vision Techs. v. Johnson & Johnson Vision Care*,
    No. 11-819, 282 F.R.D. 655 (M.D. Fla. 2012) ........................................... 16

*Straight Path IP v. Cisco*,
No. 16-3463, 2017 WL 6372971 (N.D. Cal. Dec. 13, 2017), *aff'd*,
748 F. App'x 1027 (Fed. Cir. 2019) ........................................................... 11

*Williams v. Mosaic Fertilizer*,
889 F.3d 1239 (11th Cir. 2018) ..................................................................... 5

*XY v. Trans Ova Genetics*,
890 F.3d 1282 (Fed. Cir. 2018) .................................................................. 10

## Other Authorities

Fed. R. Civ. P.
26 .............................................................................................. 1, 4, 5, 14
37(c) ............................................................................................ 1, 4, 5, 8

Rule 702 ......................................................................................*passim*

**TABLE OF EXHIBITS**

| Exhibit | Cite | Description |
|---------|------|-------------|
| Razavi Ex. B | Razavi Reb. Rpt. | Expert Rebuttal Report of Dr. Behzad Razavi, dated November 23, 2020 |
| Gardner Ex. 7 | 903 F.3d 1354 | *ParkerVision v. Qualcomm*, 903 F.3d 1354, 1362 (Fed. Cir. 2018) |
| Gardner Ex. 1 | 621 F. App'x 1009 | *ParkerVision v. Qualcomm*, 621 F. App'x 1009, 1013-24 (Fed. Cir. 2015) |
| Gardner Ex. 2 | 627 F. App'x 921 | *ParkerVision v. Qualcomm*, 627 F. App'x 921, 922-24 (Fed. Cir. 2015) |
| Gardner Ex. 52 | '177 Infring. Chart (2015) | ParkerVision's Exhibit 9-A, U.S. Patent No. 7,865,177, Infringement Contentions, dated January 16, 2015 |
| Gardner Ex. 53 | '177 Infring. Chart (2020) | ParkerVision's U.S. Patent No. 7,865,177 Supplemental Infringement Contentions, dated June 26, 2020 |
| Gardner Ex. 10 | RX Opening Rpt. | Initial Expert Report of [ParkerVision's RX Expert], dated October 9, 2020[1] |
| Gardner Ex. 14 | RX Reb. Rpt. | Rebuttal Expert Report of [ParkerVision's RX Expert], dated November 23, 2020 |
| Gardner Ex. 60 | Rog. 7 | Excerpts of Plaintiff ParkerVision's Supplemental Objections and Responses to Defendants' Second Set of Interrogatories (7-9), dated October 30, 2019 |

---

[1] ParkerVision contends that the name of its RX technical expert who submitted ParkerVision's opening and rebuttal reports on the "receiver" patents (*i.e.*, the "RX" patents-in-suit) issues is confidential. (*E.g.*, Dkt. 464 (sealing motions), Dkt. 473; *cf.* Dkt. 470; Dkt. 479.) Defendants thus refer to that expert as ParkerVision's "RX" expert or "RX" technical expert. The "RX patents" refers to U.S. Patent Nos. 7,218,907 and 7,865,177, and the "TX patents" refers to U.S. Patent Nos. 6,091,940, 7,039,372.

| Exhibit | Cite | Description |
|---|---|---|
| Gardner Ex. 15 | RX Reb. Rpt., App. A1 | Appendix A.1 to the Rebuttal Expert Report of [ParkerVision's RX Expert], dated November 23, 2020 |
| Gardner Ex. 16 | RX Reb. Rpt., App. A2 | Appendix A.2 to the Rebuttal Expert Report of [ParkerVision's RX Expert], dated November 23, 2020 |
| Gardner Ex. 17 | RX Reb. Rpt., App. A3 | Appendix A.3 to the Rebuttal Expert Report of [ParkerVision's RX Expert], dated November 23, 2020 |
| Gardner Ex. 18 | RX Reb. Rpt., App. A4 | Appendix A.4 to the Rebuttal Expert Report of [ParkerVision's RX Expert], dated November 23, 2020 |
| Razavi Decl. | Razavi Decl. (2021) | Declaration of Dr. Behzad Razavi, dated February 16, 2021 |
| Gardner Ex. 28 | 12/8/2020 RX Expert Depo. | Deposition transcript of [ParkerVision's RX Expert], dated December 8, 2020 |
| Gardner Ex. 43 | 1/29/2021 Steer Depo. | Excerpts of deposition transcript of Michael B. Steer, dated January 28, 2021 |
| Gardner Ex. 54 | '372 Infring. Chart, Ex. 5-A | ParkerVision's Exhibit 5-A, U.S. Patent No. 7,039,372, Infringement Contentions, dated January 16, 2015 |
| Gardner Ex. 20 | Steer Opening Rpt. | Initial Expert Report of Dr. Michael Steer, dated October 9, 2020 |
| Gardner Ex. 21 | Steer Opening Rpt., App. C | Appendix C to the Initial Expert Report of Dr. Michael Steer, dated October 9, 2020 |
| Gardner Ex. 46 | 12/9/2020 Steer Depo. | Excerpts of the deposition transcript of Michael B. Steer, dated December 9, 2020 |
| Gardner Ex. 22 | Steer Reb. Rpt. | Rebuttal Expert Report of Dr. Michael Steer Regarding Validity, dated November 23, 2020 |

| Exhibit | Cite | Description |
|---------|------|-------------|
| Gardner Ex. 3 | IPR2015-01828, Final Written Decision | Final Written Decision, dated March 7, 2017, in IPR2015-01828, Paper 32 |
| Gardner Ex. 4 | IPR2015-01831, Final Written Decision | Final Written Decision, dated March 7, 2017, in IPR2015-01831, Paper 30 |
| Gardner Ex. 5 | IPR2015-01829, Final Written Decision | Final Written Decision, dated March 7, 2017, in IPR2015-01829, Paper 30 |
| Gardner Ex. 47 | 12/10/2020 Steer Depo. | Excerpts of the deposition transcript of Michael B. Steer, dated December 10, 2020 |
| Gardner Ex. 43 | 1/28/2021 Steer Depo. | Excerpts of deposition transcript of Michael B. Steer, dated January 28, 2021 |
| Gardner Ex. 27 | 12/7/2020 RX Expert Depo. | Deposition transcript of [ParkerVision's RX Expert], dated December 7, 2020 |
| Gardner Ex. 67 | Weste textbook | Excerpts from Neil H.E. Weste and David Harris, CMOS VLSI Design: A Circuits and Systems Perspective (Pearson/Addison Wesley 2005) |
| Gardner Ex. 64 | Allen textbook | Excerpts from Phillip E. Allen and Douglas R. Holberg, CMOS Analog Circuit Design (Oxford Univ. 2002) |
| Gardner Ex. 65 | Chip Design textbook | Excerpts from John P. Uyemura, Chip Design for Submicron VLSI: CMOS Layout and Simulation (Thomson 2006) |
| Gardner Ex. 13 | RX Opening Rpt., App. A | Appendix A, Curriculum Vitae, to Initial Expert Report of [ParkerVision's RX Expert], dated October 9, 2020 |
| Gardner Ex. 23 | Steer ITC Stmt. | Excerpt of the Witness Statement of Dr. Michael Steer, dated July 20, 2016 |

| Exhibit | Cite | Description |
|---------|------|-------------|
| Gardner Ex. 51 | 8/14/2015 Hr'g. Tr. | Excerpts of the Transcript of Motion Hearing, dated August 14, 2015 |
| Gardner Ex. 41 | 12/4/2020 Sorrells Depo. | Excerpts of the deposition transcript of David F. Sorrells, dated December 4, 2020 |
| Gardner Ex. 36 | Ranjan Depo. | Excerpts of the deposition transcript of Mahim Ranjan, dated August 21, 2020 |
| Gardner Ex. 37 | 7/11/2016 Steer Depo. | Excerpts of the deposition transcript of Dr. Michael Steer, dated July 11, 2016 |
| Gardner Ex. 40 | 7/14/2016 Jaffee Depo. | Excerpts of the deposition transcript of James Jaffee, dated July 14, 2016 |
| Gardner Ex. 39 | 7/14/2016 Jaffee Depo. | Excerpts of the deposition transcript of James Jaffee, dated July 14, 2016 |
| Gardner Ex. 66 | Kang textbook | Excerpts from Sung-Mo (Steve) Kang and Yusuf Leblebici, CMOS Digital Integrated Circuits: Analysis and Design (McGraw Hill 2003) |
| Gardner Ex. 34 | Dunworth Depo. | Excerpts of the deposition transcript of Jeremy D. Dunworth, dated August 20, 2020 |
| Gardner Ex. 61 | correspondence from ParkerVision (2016) | Email string between counsel for ParkerVision and counsel for Qualcomm, dated July 13-17, 2016 |
| Gardner Ex. 62 | correspondence from Qualcomm (2016) | Letter from counsel for Qualcomm to counsel to ParkerVision, dated July 18, 2016 |
| Gardner Ex. 63 | ParkerVision Proposed Exhibit List (2016) | Excerpt of ParkerVision's proposed exhibit list, dated August 5, 2016 |

## I.    INTRODUCTION

ParkerVision's infringement and validity theories rest on unreliable and speculative opinions.   Faced with technical documents and testimony that demonstrate how Qualcomm's products operate in a non-infringing manner, ParkerVision chose to ignore the science and keep its theories a moving target.   And when the Patent Office analyzed the scope of ParkerVision's patents and the prior art, ParkerVision's experts practice selective amnesia, choosing to rely on the parts it likes and ignore the parts it doesn't.   This Court must act as a gatekeeper to ensure that ParkerVision's experts are limited to only those opinions that have been disclosed, adequately supported, and consistent with prior proceedings.

## II.    <u>MOTION #1</u>:  MOTION TO STRIKE UNDISCLOSED THEORIES

ParkerVision cannot rely on theories disclosed for the first time in expert reports.   Fed. R. Civ. P. 37(c), 26; Dkt. 92 at 3; *Parrish v. Freightliner*, 471 F.Supp.2d 1262, 1269 (M.D. Fla. 2006) (striking new infringement theory); *Rembrandt Vision Techs. v. Johnson & Johnson Vision Care*, 725 F.3d 1377, 1381-82 (Fed. Cir. 2013) (affirming exclusion of expert testimony under Rules 37 and 26); *Finjan v. Cisco Sys.*, No. 17-72, 2020 WL 2322923, at *3 (N.D. Cal. May 11, 2020) ("It is well settled that expert reports may not introduce theories not set forth in contentions.") (internal quotations, brackets, citation omitted).   "[P]rejudice is inherent in the assertion of a new theory after discovery has closed." *KlausTech v. Google*, No. 10-5899, 2018 WL 5109383, at *8 (N.D. Cal. Sept. 14, 2018).

## A.   Striking New "Impedance Translation" Infringement Theory, Which Was Never Disclosed In Infringement Contentions

ParkerVision failed to disclose, or even mention, any infringement theory related to "impedance translation" during fact discovery.  Instead, ParkerVision waited until expert reports to argue for the first time, and in a summary fashion, that the "matched filtering/correlating module" limitation was allegedly met based on "impedance translation."   (RX Opening Rpt., ¶¶ 316, 336, Gardner Ex. 10.) The Court should strike all references to "impedance translation" and "impedance transformation" from ParkerVision's expert reports for failure to comply with the Federal Rules.

Throughout discovery, ParkerVision refused to explain why it believed the "matched filtering/correlating module" limitation of the '177 RX patent claims was met.   ParkerVision's only proffered explanation was vague and conclusory: unidentified "transistors" "█████████████████████████" allegedly cause "storage modules" downstream "to charge with and discharge the energy transferred from the input signal."  ('177 Infring. Chart, Ex. 9-A (2015), at 4, Gardner Ex. 52.) After the Court entered its claim construction order (Dkt. 381 at 24), ParkerVision served amended infringement contentions that still failed to explain any discernible theory for "matched filtering/correlating module," let alone one involving "impedance translation."  ('177 Infring. Chart (2020), Gardner Ex. 53; Dkt. 381 at 24.)

Qualcomm moved to compel, asking for detailed contentions for the "matched filtering/correlating module" element, including for the "enhanced signal-to-noise

2

power ratio" limitation.   (Dkt. 408 at 13.)   ParkerVision refused, claiming its contentions were sufficient.   (Dkt. 427 at 14-16.)   ParkerVision never disclosed the "impedance translation" theory that appeared in its expert report.

ParkerVision's failure to disclose its new "impedance translation" infringement theory at any point during fact discovery from 2015 to 2020 was not substantially justified, nor was it harmless.   To the contrary, it was highly prejudicial because Qualcomm was denied the opportunity to take fact and third-party discovery, including developing the prior art record that impedance translation was well-known. *KlausTech*, 2018 WL 5109383, at *8.   This Court should not condone ParkerVision's violation of the Federal Rules.   The new "impedance translation" theory should be stricken.[2]

**B.    Striking Untimely New ▮▮▮▮ Opinions**

Two months after the close of fact discovery and for the first time in rebuttal expert reports, ParkerVision introduced a new ▮▮▮▮ theory.   ParkerVision's new theory is that a person of skill in the art can differentiate between "energy sampler" circuits (as allegedly claimed in ParkerVision's patents) and "voltage sampler" circuits (as long known in the prior art) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮.  This new theory was never disclosed previously, and should be struck because it (i) was untimely added in rebuttal reports, (ii) finds

---

[2] All relevant references should be stricken, including RX Opening Rpt., § VI.C, ¶¶ 316, 336, 368, 387, 581, 584, 607, 608, 615, 631; RX Reb. Rpt., § B.2, ¶¶ 47, 133.  (Gardner Exs. 10 & 14.)

no basis in the scientific literature, and (iii) is legally impermissible because it is contradicted by the patents-in-suit.

### 1.    Motion to strike ▮▮▮▮▮ calculations for validity

Qualcomm served interrogatories requesting that ParkerVision explain its validity positions.   (Rog. 7 at 6, Gardner Ex. 60; Fed. R. Civ. P. 37(c), 26.) Fact discovery closed without ParkerVision ever disclosing any ▮▮▮▮▮ theory. ParkerVision waited until rebuttal reports to raise this new theory.  (RX Reb. Rpt., p. 50, App. A2-A4, Gardner Exs. 14, 16-18.)  This type of surprise tactic is improper. By withholding its validity positions until after discovery closed, ParkerVision prejudiced Qualcomm's ability to seek fact discovery on this new ▮▮▮▮▮ issue and to have Qualcomm's own expert address this issue during the normal course of expert discovery.   Whether intentional or not, the fact remains that ParkerVision waited until rebuttal reports to raise this new theory—improperly attempting to preclude Qualcomm's expert from responding.   ParkerVision's ▮▮▮▮▮ theory should be excluded.  Fed. R. Civ. P. 37(c), 26.

### 2.    Motion to strike late ▮▮▮▮▮ calculations for infringement

ParkerVision was required to fully disclose all infringement opinions and analysis in its opening expert report, due in October 2020. (Dkt. 384 at 6; Fed. R. Civ. P. 26(a)(2)(B) ("a complete statement of all opinions" and "the facts or data considered"); *Hako-Med USA v. Axiom Worldwide*, No. 6-1790, 2009 WL 10671312, at *2 (M.D. Fla. Aug. 26, 2009) (expert must provide a "statement of all opinions the

expert will express").)  ParkerVision's opening report was devoid of ████████

████████ for the accused devices, and it failed to disclose any opinions pertaining

to ████████" or its alleged relevance for infringement.  ParkerVision, instead, tried to

slip in ████████ calculations in its rebuttal reports, where it also introduced a

new ████████ infringement theory that ████████████████

████████████.  (RX Reb. Rpt., p. 50, App. A1-A3, Gardner Exs. 14-17.)

This new infringement theory is far too late.  By waiting until rebuttal reports,

ParkerVision again robbed Qualcomm of the opportunity to respond.  The Court

should strike ParkerVision's new ████████ theory, including the ████████

████████ for the accused devices.  Fed. R. Civ. P. 37(c), 26.

### 3.    ParkerVision's ████████ theory lacks scientific basis

ParkerVision's ████████ theory should also be excluded as unreliable under

*Daubert*.  *Williams v. Mosaic Fertilizer*, 889 F.3d 1239, 1244 (11th Cir. 2018) (Rule 702).

"[A] district judge asked to admit scientific evidence must determine whether the

evidence is genuinely scientific, as distinct from being unscientific speculation."

*Allison v. McGhan Med.*, 184 F.3d 1300, 1316-17 (11th Cir. 1999).[3]

ParkerVision offers no scientific support for the contention that a person of

ordinary skill in the art can differentiate between "energy sampler" circuits and

"voltage sampler" circuits ████████████████

---

[3] The burden of establishing qualification, reliability, and helpfulness rests with the proponent.
*McClain v. Metabolife Int'l*, 401 F.3d 1233, 1238, 1255 (11th Cir. 2005).

███████. ParkerVision does not cite a single journal article, book, or other piece of scientific literature supporting the use of ███████ calculations. (Razavi Decl. (2021), ¶¶ 19-20); *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 593 (1993) ("peer-review and publication"). ParkerVision fails to include a single citation to where the patents-in-suit discuss performing ███████ calculations. (Fed. R. Evid. 702 (must be reliably applied to the "facts of the case"); Razavi Decl. (2021), ¶¶ 25-27.) ParkerVision's expert simply made up both (i) how to perform the ███████ ███████, and (ii) how the ███████ are used. *Daubert* exists to exclude exactly this type of unreliable analysis. *Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999).

The lack of any scientific support for these new ███████ arguments is especially problematic given that ParkerVision's own experts cannot agree on how the calculations were performed. The RX expert who came up with the calculations and prepared the report testified that corrections to his calculations were necessary because he had erred. (12/8/2020 RX Expert Depo. 360:2-20, Gardner Ex. 28; Razavi Decl. (2021), ¶¶ 36-39.) But ParkerVision's replacement expert took the opposite position that no corrections were necessary. (1/29/2021 Steer Depo. 300:8-303:2, Gardner Ex. 43.) This is not a factual disagreement that the jury can resolve because it is a question about methodology and reliability. The Court cannot simply rely on the new expert, Dr. Steer's, *ipse dixit*. The ███████ arguments should be excluded because they lack the scientific reliability required to be admissible.

### 4.   The ███████ theory finds no support in the patents

ParkerVision's late new theory should be excluded because the calculations would lead to a legally impermissible result.  If ParkerVision's ███████████ are applied to embodiments from the patents-in-suit—the ███████████████ would *exclude* ██████████████████████████████████████

███████████     For example, ParkerVision argues that ███████████████████

██████████████████████████████████████████  (*E.g.,* 12/8/2020

RX Expert Depo. 351:11-352:25 (████████████████████████████

███████).)  But using Dr. Steer's approach to ██████████████, Figure 126A[4]

from the '907 and '177 patents-in-suit has a ██████████████████.  (Razavi

Decl. (2021), ¶¶ 32-33.)  ParkerVision's ███████ theory would thus exclude the very

embodiments ParkerVision relies upon for allegedly disclosing the claimed invention.

ParkerVision's new ███████ theory is also at odds with ParkerVision's

prior art position.  For the prior art, ParkerVision argues that ████████████████

██████████.  (RX Reb. Rpt., ¶¶ 170, 181 ████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

ParkerVision's new ███████ theory is not properly tethered to the facts of this case.

---

[4] ParkerVision has repeatedly relied on Figure 126A of the '907 and '177 patents as an example of the claimed "energy sampler."  (*E.g.*, Dkt. 327 at 15-16; Dkt. 327-1, ¶¶ 14, 19.)

     **5.**     **Qualcomm must be afforded the opportunity to respond**

ParkerVision deprived Defendants of the opportunity to respond. If the Court does not exclude ParkerVision's new theory, Qualcomm should be granted leave to respond, including via a rebuttal expert report from its expert.

**C.**     **Striking New Theory Regarding the Alleged Reference Potential, Because ParkerVision's Expert Points to a Different Signal Than ParkerVision Did In Its Contentions**

"It is well settled that expert reports may not introduce theories not set forth in contentions." *Finjan*, 2020 WL 2322923, at *3; Fed. R. Civ. P 37(c). ParkerVision's infringement contentions pointed to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆. ('372 Infring. Chart, Ex. 5-A at 153-154, 158-159, Gardner Ex. 54.) But ParkerVision's expert, Dr. Steer, rejected this theory and changed to a new theory in his report. Unlike ParkerVision's contentions, Dr. Steer argues that the claimed first and second reference potentials refer to the ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Steer Opening Rpt., ¶¶ 263-266, App. C at 23 (allegation for one product, later repeated for other products (fn.5 below)), Gardner Exs. 20-21.) As shown in the annotated figure below, ParkerVision changed its infringement theory for the first and second reference potentials from ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆:





(Razavi Reb. Rpt., pp. 338-339; *see also* '372 Infring. Cont., Ex. 5-A at 153-154

(alleging the "first reference potential" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), Gardner Ex. 54.)

The Court should strike Dr. Steer's new "control input" infringement theory for

claim 107 of the '372 TX patent.  ParkerVision cannot meet its burden to show that

the failure to timely disclose was substantially justified and caused no harm.  *Hako-*

*Med USA*, 2009 WL 10671312, at *2.  ParkerVision had access to Qualcomm's

documents for years and could have included this argument in its contentions.  *Parrish*,

471 F.Supp.2d at 1269.  ParkerVision's delay was also not harmless.  By waiting until

expert reports, ParkerVision deprived Qualcomm of the opportunity to address this

issue during claim construction, to pursue discovery from ParkerVision and third

parties to refute this new theory, and to identify prior art relevant to this new theory.

*KlausTech*, 2018 WL 5109383, at *8; *Ascion v. Ashley Furniture Indus.*, No. 19-856,

Dkt. 66 at 2 (W.D. Wis. Oct. 23, 2020) ("[p]rejudice to [defendant] is inevitable"

where reports contain previously undisclosed infringement theories), Gardner Ex. 79.

Dr. Steer's new theory that the "first reference potential" and "second reference potential" are "control signals" for limitations 107[b] and 107[c] of the '372 patent should be stricken and excluded.[5]

## III.   MOTION #2:  MOTION TO STRIKE ESTOPPED AND UNRELIABLE OPINIONS

### A.   ParkerVision Cannot Relitigate Validity Issues for TX Patents

Invalidity determinations, whether from a district court or the Patent Office (PTAB), have "collateral estoppel effect" on all pending actions. *XY v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018); *MaxLinear v. CF CRESPE*, 880 F.3d 1373, 1376 (Fed. Cir. 2018); *Nestle USA v. Steuben Foods*, 884 F.3d 1350, 1351 (Fed. Cir. 2018).  After the parties spent years litigating various *inter partes* review proceedings that invalidated transmitter claims of the '940 patent-in-suit, ParkerVision and Dr. Steer want another bite at the apple. *ParkerVision v. Qualcomm*, 903 F.3d 1354, 1362, 1364 (Fed. Cir. 2018), Gardner Ex. 7.  ParkerVision and Dr. Steer are still arguing that the PTAB and the Federal Circuit got it wrong.  It is legally impermissible for ParkerVision and Dr. Steer to relitigate these issues.  The Court should preclude ParkerVision from relitigating invalidity issues and taking positions contrary to its past positions.

*First*, Dr. Steer cannot legally take positions regarding the Nozawa and Philips 4052 prior art that conflict with the PTAB's Final Written Decisions and the

---

[5] All relevant sections, including Steer Opening Rpt., ¶¶ 263-266, and Appendix C, including at 23, 42, 62-63, 81, 98, 118, 140, 162-163, 182, 198, 225, 241-242, 258, 277, 298, 315, should be stricken.

Federal Circuit's decision regarding those same references for the same patent. The PTAB and the Federal Circuit held that the combination of Nozawa and Philips 4052 ("Nozawa combination") renders obvious dozens of claims of the '940 patent-in-suit.[6] Ignoring these binding decisions, Dr. Steer intends to proffer contradictory and baseless conjecture. For example, both the Federal Circuit and the PTAB held that the Nozawa combination was "capable of" generating the claimed "integer-multiple harmonics" in the '940 patent. 903 F.3d at 1360-61, Gardner Ex. 7. Dr. Steer intends to relitigate this issue and disagree with the Federal Circuit. (12/9/2020 Steer Depo. 245:15-246:19, Gardner Ex. 46, Steer Reb. Rpt., ¶¶ 72, 80-81, 112, Gardner Ex. 22.) Dr. Steer's testimony requires that the Court order him not to express an opinion contrary to the PTAB and Federal Circuit's decisions.

The Federal Circuit also confirmed the PTAB's Final Written Decision that Nozawa discloses a pulse shaper/pulse shaping module that receives an oscillating signal and outputs a string of pulses.[7] 903 F.3d at 1358-61, Gardner Ex. 7. Dr. Steer, however, wishes to argue that Nozawa is not actually capable of "shaping an

---

[6] Gardner Ex. 3, IPR2015-01828, Final Written Decision, Paper 32 at 22 (PTAB Mar. 7, 2017) and Gardner Ex. 4, IPR2015-01831, Final Written Decision, Paper 30 at 19 (PTAB Mar. 7, 2017), confirmed on appeal by *ParkerVision v. Qualcomm*, 903 F.3d 1354 (Fed. Cir. 2018). *See also Aylus Networks v. Apple*, 856 F. 3d 1353, 1359-61 (Fed. Cir. 2017); *Straight Path IP v. Cisco*, No. 16-3463, 2017 WL 6372971, at *5 (N.D. Cal. Dec. 13, 2017), *aff'd*, 748 F. App'x 1027 (Fed. Cir. 2019).

[7] Gardner Ex. 3, IPR2015-01828, Final Written Decision, Paper 32 at 22 (PTAB Mar. 7, 2017) (invalidating claim 21, which recites "a pulse shaping module to receive an oscillating signal and to output a shaped string of pulses that is a function of said oscillating signal"); Gardner Ex. 4, IPR2015-01831, Final Written Decision, Paper 30 at 19 (PTAB Mar. 7, 2017) (invalidating claim 23, which recites "a pulse shaper to accept said oscillating signal and to output a string of pulses, and wherein said string of pulses causes said switch module to gate said bias signal").

oscillating signal to create a string of pulses that is a function of said oscillating signal." (Steer Reb. Rpt., ¶¶ 206-210, Gardner Ex. 22.)  Once again, Dr. Steer's position cannot be reconciled with the PTAB's Final Written Decisions and the Federal Circuit's decision.

The Federal Circuit also affirmed that claim 4 is invalid, including that it discloses a "switch module" that "generate[s] a periodic signal … said periodic signal having an amplitude that is a function of said bias signal" and "a filter coupled to said switch module to isolate at least one of said plurality of harmonics."  (IPR2015-01831, Final Written Decision, Paper 30 at 16-17 (PTAB Mar. 7, 2017), Gardner Ex. 4; 903 F.3d at 1362, Gardner Ex. 7.)   Yet, Dr. Steer tries to challenge the Nozawa combination's disclosure of "outputting said periodic signal, said periodic signal having an amplitude that is a function of said reference signal," speculating that Nozawa may not disclose "the relationship between the amplitude of the alleged 'reference signal' and the alleged 'periodic signal' at the output."[8]  (Steer Reb. Rpt., ¶ 222.)

*Second*, Dr. Steer takes positions regarding the Krauss and Ariie prior art that are legally impermissible.  The PTAB and Federal Circuit confirmed that Krauss in combination with Ariie ("Krauss combination") invalidated over a dozen claims of the '940 patent-in-suit.  For example, the PTAB found that Krauss includes an

---

[8] The '940 and '372 patents refer to the "reference signal" and "bias signal" interchangeably. (*E.g.*, '940 patent, Fig. 53; '372 patent, Fig. 53.)

apparatus that includes the claimed first and second information signals in the '940 patent.[9]   But Dr. Steer inexplicably—and without basis—argues that "Krauss does not disclose [] first and second information signals."  (Steer Reb. Rpt., ¶ 401, Gardner Ex. 22.)[10]  He cannot relitigate this issue.[11]  ParkerVision cannot use their paid expert to relitigate the prior art and invalidity findings they lost and that were established by the PTAB and Federal Circuit.  Absent Court order, Dr. Steer refuses to comply with the law.  This Court must preclude him from taking positions that are contrary to the PTAB's Final Written Decisions and the Federal Circuit's decision.

## B.  ParkerVision Cannot Relitigate *ParkerVision I*

Every expert that has reviewed the accused Qualcomm devices—except for ParkerVision's new replacement expert—has confirmed basic principles about the same devices.  These principles include (i) that the accused devices use double-balanced mixers, (ii) that these double-balanced mixers convert the high-frequency carrier signal to the low-frequency baseband signal, (iii) that the output of the double-

---

[9] Gardner Ex. 5, IPR2015-01829, Final Written Decision, Paper 30 at 18 (PTAB Mar. 7, 2017) (invalidating claim 18 which requires two information signals).

[10] *MaxLinear*, 880 F.3d at 1376-77 (estoppel impact of IPR results applies also to unadjudicated patent claims that are not materially different).  The first and second information signal disclosed in the '940 and '372 patents is not materially different.  (*E.g.*, 12/10/2020 Steer Depo. 379:19-381:22 (both patents disclose the first and second information signal in Figure 17), Gardner Ex. 47.)

[11] Another example of him contradicting the PTAB is for the "gating a reference signal at a rate that is a function of said string of pulses to create a periodic signal having a plurality of harmonics" element. (*Compare* Steer Reb. Rpt., ¶ 393 *with* IPR2015-01829, Final Written Decision, Paper 30 at 13-16, 20 (PTAB Mar. 7, 2017), Gardner Ex. 5 (holding same Krauss combination invalidates claim 1 which recites "wherein said first oscillating signal causes said first switch module to gate said first bias signal and thereby generate a first periodic signal having a first plurality of harmonics").)

balanced mixers is the baseband, (iv) that the double-balanced mixer creates the baseband signal, and (v) that the double-balanced mixer eliminates the carrier signal. *ParkerVision v. Qualcomm*, 621 F. App'x 1009, 1009-15 (Fed. Cir. 2015); *ParkerVision v. Qualcomm*, 627 F. App'x 921, 921-24 (Fed. Cir. 2015), Gardner Exs. 1, 2. ParkerVision included no contrary analysis in its expert reports. Fed. R. Civ. P. 26(a)(2) ("all opinions"). The expert who prepared ParkerVision's receiver reports agreed with these basic principles.[12] But ParkerVision's new replacement expert now seeks to relitigate these issues. Without any facts or data, he testified that he disagreed with these basic facts. (1/28-29/2021 Steer Depo., 78:23-80:25, 82:9-86:4, 88:24-89:2; 109:14-110:14, 97:11-101:1, 90:19-91:17, 474:10-478:5.) ParkerVision cannot use its new expert to relitigate the operation of Qualcomm devices.

ParkerVision's new replacement expert also intends to offer opinions contradicting the Federal Circuit's decisions regarding the same prior art. The Federal Circuit found that Figure 6.7 of DeMaw discloses a circuit that (i) includes two transistors that qualify as "switches," (ii) that these switches control the charging and discharging of two energy storage capacitors to generate the baseband signal. 621 F. App'x at 1022-24. ParkerVision's new expert wants to relitigate these issues and argue that the transistors are not in fact "switches," and that DeMaw's capacitors do not

---

[12] 12/7/2020 RX Expert Depo. 36:21-37:11, 34:11:15, 39:19-22, 40:21-41:1 ██████████████████); *id.* at 43:17-21, 46:12-23; 57:7-19 (██████████████████); *id.* at 57:7-19, 42:18-22, 47:6-10, 54:9-15 (██████████████); *id.* at 57:7-19, 42:18-22, 47:6-10, 54:9-15 (██████); *id.* at 34:20-25 (██████████████████, Gardner Ex. 27.

charge and discharge under the control of these switches to generate the baseband signal.  (1/28/2021 Steer Depo. 243:8-244:24, 253:4-254:19.)  Similarly, the Federal Circuit held that Weisskopf teaches a "storage module [that] receives non-negligible amounts of energy transferred from a carrier signal at an aliasing rate."  621 F. App'x at 1018-22 (invalidating claim 23), Gardner Ex. 1.  ParkerVision's expert seeks to argue—without basis—that "Weisskopf is distinguishable from the inventions at issue because they transfer negligible energy from the electromagnetic signal."  (RX Reb. Rpt., ¶ 232.)  ParkerVision should not be permitted to contradict facts the parties already established in *ParkerVision I*.

### C.    ParkerVision Cannot Testify Using Incorrect Claim Constructions

ParkerVision's expert employs claim constructions inconsistent with the Court's constructions, and the proper constructions of claim terms.  (*E.g.*, Motion for Summary Judgment (regarding claim construction disputes).)[13]  Dr. Steer must be directed to provide only opinions consistent with the construction of the limitations in the claims.

### IV.    MOTION #3:  MOTION TO STRIKE UNRELIABLE AND SPECULATIVE INFRINGEMENT OPINIONS DUE TO LACK OF TESTING AND SIMULATION

Courts strike as unreliable technical expert testimony that is not based on sufficient and proper testing of the accused products.  *Cobra Int'l v. BCNY Int'l*, No. 05-

---

[13] *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1316, 1319-20 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 640 (2017); *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *MyMail v. Am. Online*, 476 F.3d 1372, 1378 (Fed. Cir. 2007).

61225, 2013 WL 3938659, at *2 (S.D. Fla. July 30, 2013) (striking testimony where plaintiff's expert "never physically analyzed the circuit"); *Dolphin v. Synthes*, No. 06-7719, 2011 WL 1345334, at *7 (S.D.N.Y. Mar. 25, 2011) (lack of testing rendered technical opinion unreliable); *Rembrandt Vision Techs. v. Johnson & Johnson Vision Care*, No. 11-819, 282 F.R.D. 655, 667 (M.D. Fla. 2012) (striking plaintiff's expert's testimony where "lack of documentation [regarding testing] strongly weighs against the reliability of [his] methodology"). Expert testimony must be "based on sufficient facts or data." Fed. R. Evid. 702.

In *Becton, Dickinson & Co. v. Tyco Healthcare*, 616 F.3d 1249 (Fed. Cir. 2010), the patent required energy to be stored in a hinge (in blue below) and then used to move a needle guard (green below) to cover the end of the needle (red below):



| Retracted Hinge Stores Energy (U.S. Patent No. 5,348,544, Fig. 2) | Releasing Energy Moves Guard (*Id.*, Fig. 4) |

*Id.* at 1250-51. Irrespective of how the schematics of the patent and the accused product appeared on paper, the Federal Circuit required the patentee to provide "test data or even a single live demonstration" to show the accused devices "stored energy." *Id.* at 1257. Because the patentee failed to prove that the hinges contained "stored energy" with testing, noninfringement was required. *Id.* at 1258-60.

No simulations of the accused Qualcomm products were included in

ParkerVision's infringement reports.  ParkerVision's experts admitted they failed to do simulations.  (12/9-10/2020 Steer Depo. 125:15-18, 500:15-19, Gardner Exs. 46-47; 12/7/2020 RX Expert Depo. 78:24-79:2, 119:6-10, Gardner Ex. 27.)

This is not the first time ParkerVision has failed to do the requisite simulations or testing.  The *ParkerVision I* court noted that ParkerVision failed to do "any testing of any of the accused [Qualcomm] products."  *ParkerVision v. Qualcomm*, 27 F.Supp.3d 1266, 1281 & n.20 (M.D. Fla. 2014), *aff'd in part, rev'd in part*, 621 F. App'x 1009 (Fed. Cir. 2015).[14]  Simulations were required to have a reliable basis for understanding how the accused devices work and whether they satisfy the claim limitations.  (*E.g.*, Weste textbook, at 273, Gardner Ex. 67 ("[C]ircuits are complex and modern transistors have nonlinear, nonideal behavior, so *simulation is necessary* to accurately predict detailed circuit behavior.") (emphasis added); Allen textbook, at 3, Gardner Ex. 64 ("[D]esigner must turn to computer simulation methods to confirm the design's performance."); Chip Design textbook, at 19, Gardner Ex. 65 (Fig. 2.2).)

When an infringement theory relies on the way a product *operates* rather than the structures it contains, simulation or testing is required.  *Cobra Int'l.*, 2013 WL 3938659, at *3 ("To the extent Defendants argue that [plaintiff's expert's] method of 'logic analysis' has not been proven to be a reliable method of determining the physical

---

[14] Having failed in *ParkerVision I*, in its subsequent cases ParkerVision's same experts have run simulations only to find they could not prove infringement.  (RX Opening Rpt., App. A at 38 ("Performed simulations" for Jacksonville case), Gardner Ex. 13; Steer ITC Stmt., CX-0005C, Q/A 38 ("performed or directed the performance of simulations of the circuitry in Qualcomm's chips"), Gardner Ex. 23.)

structure of a circuit, the Court agrees."); *Eltech Sys. v. PPG Indus.*, 903 F.2d 805, 808 (Fed. Cir. May 10, 1990) (affirming noninfringement finding where plaintiff "had *never* tested physical samples"); *Abbott Labs. v. Baxter Healthcare*, 660 F.Supp.2d 882, 888-89 (N.D. Ill. Sept. 17, 2009) ("failing to offer any test results").

Cadence is a third-party software that allows engineers to design, test, and run simulations. (8/14/2015 Hr'g. Tr. 11:19-22, Gardner Ex. 51 (ParkerVision's counsel:

██████████████████████████████████████████████████████████████

██████████████████████████ ▆ ████████████████████████████████████

████████).) Per ParkerVision's request, Qualcomm made available for inspection its

████████████████████████████████████████████████████████████████ it

failed to do in *ParkerVision I*. 27 F.Supp.3d at 1281; 12/9/2020 Steer Depo. 46:22-24

("████████████████████████████████████████████████████████████████

██████████████████"), Gardner Ex. 46.) ParkerVision's experts could have used either their

own environment, simulation data from Qualcomm's documents, or the

████████████████████████████████ to run the necessary simulations to

show the operation of the accused Qualcomm products.

They did not. Their failure to do so renders their infringement opinions insufficiently supported, methodologically unsound, unreliable, and inadmissible. Fed. R. Evid. 702; *Allison*, 184 F.3d at 1316-17.

Because ParkerVision included no simulations in its expert reports, ParkerVision's experts' opinions of alleged infringement are speculative.

ParkerVision's own counsel told this Court in this case that Cadence simulations are





(8/14/15 Hr'g. Tr. 10:2-14 (emphasis added), Gardner Ex. 51.)  ParkerVision's expert

described the need for simulations to "understand how the circuit works" for purposes

of evaluating infringement.  (*Id.* at 43:5-19.)

ParkerVision's experts needed to run simulations to ascertain whether the claim

elements are met.  For example, ParkerVision's expert claims that the accused devices

"store" "non-negligible energy" in the ███████████.  (RX Opening Rpt., ¶ 560,

Fig. VI.I-3.)  But he never simulated the circuits to show whether this occurs.  ████

████████████████████████████████ (12/7/2020 RX Expert Depo.

119:11-14, Gardner Ex. 27.)  ████████████████████████████

████████████████████████████████████

(RX Opening Rpt., ¶ 313; 1/28/2021 Steer Depo. 133:7-13.)

████████████████████████████

████████████████████████████

█████████████████. (RX Opening Rpt., ¶ 628.)  But he never simulated

the operation of the accused devices in the ▮▮▮▮▮ so there is no basis for his opinion. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (testimony "unsubstantiated by any factual basis" is unhelpful).

For the TX patents, ParkerVision's expert speculates as to many claim elements. (Razavi Rebuttal, ¶ 690, Razavi Ex. B.) He opines that the accused products perform "gating" or are "switch modules," but performed no simulations to show that the accused devices take two states, open and closed, as required by the constructions of these claim terms. (*Id.*, ¶¶ 555-557.) Dr. Steer also speculates that the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ But he did not simulate or calculate the output and performed no analysis to show that ▮▮▮▮ ▮▮▮▮▮▮▮▮▮. He provides no facts or data to support his conclusory opinion about ▮▮▮▮▮▮ (*Id.*, ¶¶ 458-466, 469-470, 502-505; *compare id.* ¶¶ 467-497, 503-505 (▮▮▮▮▮▮▮ ▮▮▮▮▮▮).)

ParkerVision also submitted a report from an employee on the patents, David Sorrells. Sorrells has never seen Qualcomm's schematics or confidential information. (12/4/2020 Sorrells Depo. 30:7-8 ("I've not seen any Qualcomm confidential information"), Gardner Ex. 41.) Yet he speculates that Qualcomm's devices infringe. How he arrives at that conclusion remains a mystery. Fed. R. Evid. 702.

ParkerVision's experts' opinions (RX expert, TX expert, Sorrells) are based on speculation, not actual operation. For years Qualcomm has pointed out this fatal flaw,

and ParkerVision has put its head in the sand.  When confronted during deposition, ParkerVision's expert admitted "[i]t would be lovely" to run simulations, but "I don't think it would be very profitable."  (12/7/2020 RX Expert Depo. 231:9-17, Gardner Ex. 27.)  ParkerVision's failure to simulate renders their experts' opinions inadmissible.

## V.   MOTION #4: MOTION TO STRIKE '372 PATENT INFRINGEMENT OPINIONS

The '372 infringement opinions of ParkerVision's expert regarding the summer and combining limitations should be struck because they are not properly supported by "sufficient facts or data," are not the "product of reliable principles and methods," and Dr. Steer has not "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Dr. Steer relies on schematics for the accused products.



(*E.g.*, Gardner Ex. 51, Aug. 14, 2015 Hr'g. Tr. 24; Gardner Ex. 36, Ranjan Depo. 18:9-19:21.)[15]  Without looking at ████████, Dr. Steer could not determine whether the products practice the

---

[15] Dr. Steer realized he needed to look at layouts to analyze physical characteristics of a device not determined by a schematic. (*See* 1/28/2021 Steer Depo. 156:24-157:6 ████████); 7/11/2016 Steer Depo. 422:4-12 (████████); 7/14/2016 Jaffee Depo. 257:14-19, Gardner Ex. 40 (████████).)

summing order required by the asserted claims. (Razavi Reb. Rpt., ¶¶ 664-674, Razavi Ex. B.)[16] *MiMedx v. Liventa Bioscience*, No. 14-1178, Dkt. 321 at 29 (N.D. Ga. Aug. 11, 2017), Gardner Ex. 80 (striking testimony based on unreliable methodology).

During deposition, Dr. Steer tried to explain away his failure to rely on layouts. He provided two excuses. Both excuses are unsupported.

Dr. Steer first excused his failure to look at layouts on the basis that

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████, Gardner Ex. 46.)

This excuse fails for at least two reasons. *First*, Dr. Steer provides no evidence ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ Dr. Steer's speculation that Qualcomm

*should* do something is not evidence that Qualcomm did do something.

*Second*, Dr. Steer's unsupported personal opinion that ████████████████████

---

[16] Specifically, Dr. Steer's conclusory and unsupported opinions regarding summers and combining in claim limitations 99[h] ("first summer"), 99[p] ("second summer"), 99[q] (summing means), 107[d] ("combining"), 126[g] (first 126 "combining" limitation), 126[h] (second 126 "combining" limitation), 126[i] (third 126 "combining" limitation) should be struck.

[17]████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████



Dr. Steer's post-hoc rationale for failing to look at layouts ▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

   Dr. Steer's second excuse—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[18] In Cadence ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ During the 2015 discovery hearing, ParkerVision's counsel and expert emphasized the need for layouts:



(Aug. 14, 2015 Hr'g. Tr. 39:7-14 (emphasis added), Gardner Ex. 51; Dkt. 132 at 12.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*E.g.*, Gardner Ex. 23, Steer ITC Stmt., at 9 ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ParkerVision's experts, including Dr. Steer, continued to access Qualcomm's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ParkerVision dropped its ITC case and this case resumed. Dr. Steer spent several more days reviewing Qualcomm's ▮▮▮

---

[20] *See also* Gardner Ex. 61; Gardner Ex. 62 (producing QSC5PVITC0000012-44); Gardner Ex. 63, ParkerVision Proposed Exhibit List (2016) (identifying ▮▮▮▮▮▮ exhibit numbers CPX-0488C to CPX-0520C).

██████████.[21]  But ParkerVision chose to ignore the layouts Qualcomm produced. (12/9/2020 Steer Depo. 56:12-25 (never asked to look at layouts).)

Because Dr. Steer failed to look at the evidence that would show if and how the signals in the accused devices are summed, and Dr. Steer ignored the layouts Qualcomm produced, Dr. Steer's infringement opinion for the '372 patent are fundamentally flawed, unreliable, and inadmissible.

## VI.   CONCLUSION

For the reasons stated herein, the infringement opinions of ParkerVision's RX and TX experts and Mr. Sorrells should be stricken and excluded. The '372 infringement opinions of ParkerVision's TX expert regarding the summer and combining limitations should be stricken and excluded.

ParkerVision's untimely new theories should be excluded, including (1) the new "impedance translation" theory, (2) the new "██████████ theory, and the (3) new theory that the "first reference potential" and "second reference potential" are "control signals."

ParkerVision should be precluded from taking positions contrary to the PTAB and Federal Circuit decisions.  Dr. Steer should be ordered to provide only opinions consistent with the Court's constructions.

Dated:  February 16, 2021                    _/s/ Eamonn Gardner_____

---

[21] ParkerVision had access to the same information in this case, as in the ITC. ██████
████████████████████████████████████ (12/9/2020 Steer Depo. 59:2-14.)

BEDELL, DITTMAR, DEVAULT,
PILLANS & COXE, P.A.
John A. DeVault, III
Florida Bar No. 103979
jad@bedellfirm.com
Michael E. Lockamy
Florida Bar No. 069626
mel@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Phone: (904) 353-0211
Fax: (904) 353-9307

COOLEY LLP
Stephen C. Neal (pro hac vice)
nealsc@cooley.com
Matthew J. Brigham (pro hac vice)
mbrigham@cooley.com
Jeffrey Karr (pro hac vice)
jkarr@cooley.com
Priya Viswanath (pro hac vice)
pviswanath@cooley.com
Dena Chen (pro hac vice)
dchen@cooley.com
Sarah B. Moore ( pro hac vice)
smoore@cooley.com
Patrick W. Lauppe (pro hac vice)
plauppe@cooley.com
3175 Hanover Street
Palo Alto, CA  94306-2155
Phone:  (650) 843-5000
Fax:  (650) 849-7400

CADWALADER, WICKERSHAM
& TAFT, LLP
Howard Wizenfeld (pro hac vice)
Howard.wizenfeld@cwt.com
One World Financial Center
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6050
Facsimile: (212) 504-6666

COOLEY LLP
Stephen Smith (pro hac vice)
ssmith@cooley.com
1299 Pennsylvania Avenue NW,
Suite 700
Washington, DC 20004
Phone:  (202) 842-7800
Fax:  (202) 842-7899

COOLEY LLP
Eamonn Gardner ( pro hac vice)
egardner@cooley.com
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone: (720) 566-4000
Facsimile: (720) 566-4099

*Attorneys for Defendants Qualcomm
Incorporated and Qualcomm Atheros, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and forgoing document has been served on all counsel of record via the Court's ECF system on February 16, 2021.

/s/ Eamonn Gardner
_____

COOLEY LLP
Eamonn Gardner (admitted pro hac vice)
egardner@cooley.com
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021-8023
Telephone: (720) 566-4000
Facsimile: (720) 566-4099

*Attorney for Defendants Qualcomm Incorporated and Qualcomm Atheros, Inc.*

27