**CIN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

PARKERVISION, INC.,

                Plaintiff,

    v.

QUALCOMM INCORPORATED,
QUALCOMM ATHEROS, INC.,

              Defendants.

CASE NO.: 6:14-CV-00687-PGB-LRH

**PARKERVISION, INC.'S MOTION FOR SUMMARY JUDGMENT OF
IPR ESTOPPEL RELATED TO QUALCOMM'S BBA2 INVALIDITY THEORIES
AND THAT QUALCOMM CANNOT PROVE THAT BB3 IS PRIOR ART**

# TABLE OF CONTENTS

I.  Introduction ............................................................................................................1

II.  Background .............................................................................................................1

  **A.**  Procedural History .......................................................................................1

  **B.**  Qualcomm's Invalidity Theories Are Based on Prior Art that Was Raised, Or Could Have Been Raised, in the IPR Proceedings ................................................3

  **C.**  Qualcomm Has Not Shown that BB3 Qualifies as Prior Art ............................5

III.  Statement of Undisputed Facts ...............................................................................6

  **A.**  IPR Estoppel ..............................................................................................6

  **B.**  BB3/IFT3000/IFR3000 Chipset Availability ...............................................6

IV.  Legal Standards .......................................................................................................9

  **A.**  The Burden of Proof for Invalidity ..............................................................9

  **B.**  The Scope of the Prior Art ..........................................................................9

  **C.**  IPR Estoppel ............................................................................................10

  **D.**  Summary Judgement .................................................................................11

V.  Argument ..............................................................................................................11

  **A.**  Qualcomm's Invalidity Theories Related to Claims 25-26 and 368-369 of the '940 Patent Are Estopped Under 35 U.S.C. §315(e)(2) ......................................11

    **1.**  Qualcomm Is Barred from Re-litigating Prior Art that It Raised in the IPR Proceedings ...............................................................................11

    **2.**  Qualcomm Is Barred from Re-litigating Prior Art that it Could Have Raised in the IPR Proceedings .................................................................12

    **3.**  IPR Estoppel Also Applies to Ishigaki ...............................................17

  **B.**  BB3 Does Not Qualify as Prior Art to the '940 and '372 Patents ..................18

    **1.**  BB3 Does Not Qualify as Prior Art Under 35 U.S.C. § 102(a) ............18

    **2.**  BB3 Does Not Qualify as Prior Art Under 35 U.S.C. § 102(b) ............21

    **3.**  BB3 Does Not Qualify as Prior Art Under 35 U.S.C. § 102(g) ............22

VI.   Conclusion ........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apotex USA, Inc. v. Merck & Co.,*
   254 F.3d 1031 (Fed. Cir. 2001) ................................................................22

*Aspex Eyewear, Inc. v. Concepts In Optics, Inc.,*
   111 F. App'x 582 (Fed. Cir. 2004) ..........................................................19

*BASF Corp. v. SNF Holding Co.,*
   955 F.3d 958 (Fed. Cir. 2020) .................................................................18

*Biscotti Inc. v. Microsoft Corp.,*
   No. 2:13-CV-01015-JRG-RSP, 2017 WL 2526231 (E.D. Tex. May 11, 2017).........12, 13

*Cal. Inst. of Tech. v. Broadcom Ltd.,*
   No. CV 16-3714-GW(AGRx), 2019 WL 8192255 (C.D. Cal. Aug. 9, 2019)...........10, 16

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.,*
   2017 WL 2605977 (E.D. Va. June 5, 2017) ................................................16

*Delano Farms Co. v. Cal. Table Grape Comm'n,*
   778 F.3d 1243 (Fed. Cir. 2015) ...............................................................21

*Douglas Dynamics, LLC v. Meyer Prods. LLC,*
   14–cv–886–jdp, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017)......................11

*GREE, Inc. v. Supercell OY,*
   No. 2:19-cv-00071-JRG-RSP, 2019 WL 5677511 (E.D. Tex. Oct. 30, 2019)................12

*I.E.E. Int'l Elecs. & Eng'g, S.A. v. TK Holdings Inc.,*
   54 F. Supp. 3d 776 (E.D. Mich. 2014)..................................................24, 25

*Mahurkar v. C.R. Bard, Inc.,*
   79 F.3d 1572 (Fed. Cir. 1996) ................................................................. 9

*Medicines Co. v. Hospira, Inc.,*
   827 F.3d 1363 (Fed. Cir. 2016) (en banc) .................................................21

*Microsoft Corp. v. i4i Ltd. P'ship,*
   564 U.S. 91 (2011) .............................................................................. 9

*Minnesota Minnesota Min. and Mfg. Co. v. ChemQue, Inc.,*
   303 F.3d 1249, 1306 (Fed. Cir. 2002) ..................................................20, 21

iii

*Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*,
No. 15-cv-1067, 2019 WL 861394 (N.D. Ill. Feb. 22, 2019) ........................................16

*Panduit Corp. v. Dennison Mfg. Co.*,
810 F.2d 1561, 1568 (Fed. Cir. 1987) .......................................................................10

*ParkerVision, Inc. v. Qualcomm, Inc.*,
903 F.3d 1354, 1363 (Fed. Cir. 2018) ......................................................................... 2

*Symbol Techs., Inc. v. Opticon, Inc.*,
935 F.2d 1569 (Fed. Cir. 1991) ................................................................................. 9

*TQP Development, LLC v. Intuit Inc.*,
No. 2:12–CV–180–WCB, 2014 WL 2809841 (E.D. Tex. June 20, 2014) (Bryson,
J.) ........................................................................................................................ 22, 23

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
432 F. Supp. 3d 448 (D. Del. 2020) ...........................................10, 13, 16, 17

*Woodland Tr. v. Flowertree Nursery, Inc.*,
148 F.3d 1368 (Fed. Cir. 1998) ......................................................................... 18, 19

**STATUTES**

35 U.S.C. 102(a), (b)...................................................................................................5, 18

35 U.S.C. § 102 ....................................................................................................1, 9, 25

35 U.S.C. § 102(a) ...............................................................................................passim

35 U.S.C. § 102(b) ...............................................................................................21, 22

35 U.S.C. § 102(g) ......................................................................................................22

35 U.S.C. §102(g)(2) .....................................................................................22, 23, 24, 25

35 U.S.C. § 282(a) ..................................................................................................... 9

35 U.S.C. § 315(e)(2) ...........................................................................................passim

**OTHER AUTHORITIES**

America Invents Act: Hearing on H.R. 1249 Before the House Comm. on the
Judiciary, 112th Cong. 52-53 (2011) (statement of Director David Kappos) ........... 10, 11

Fed. R. Civ. P. 56(c) ....................................................................................................11

Patent Reform Act of 2009: Hearing Before the House Comm. on the Judiciary,
111th .......................................................................................................................10

## I.    INTRODUCTION

This Motion for Summary Judgement addresses two issues on which ParkerVision is entitled to judgement as a matter of law. First, the Court should find that the estoppel provisions of 35 U.S.C. § 315(e)(2) bar Qualcomm's continued assertions of prior art that it did, or could have, asserted in the *inter partes* reviews ("IPRs") it filed challenging the validity of U.S. Patent No. 6,091,940 ("the '940 Patent"). Qualcomm asserts that it should not have to pay the price of meaningful estoppel because it combines purported system art called "BBA2" in a trivial manner with the references previously considered in the IPRs. But, Qualcomm's attempt to avoid meaningful estoppel should be rejected. Each of the references it attempts to re-litigate here were at-issue in the IPRs or, and including the alleged system of BBA2 (which is described in printed publications), could have been raised in the IPRs.

Second, the Court should find that Qualcomm cannot meet its burden to show that a product called "BB3" qualifies as prior art to the asserted claims of the '940 and '372 Patents under 35 U.S.C. § 102. Qualcomm cannot meet its burden to show, by clear and convincing evidence, public knowledge (102(a)), public use or sale (102(b)), or prior invention without abanonment, supression, or concealment (102(g)), of BB3 before the October 21, 1998 priority date of these patents.

## II.    BACKGROUND

### A.    Procedural History

This action commenced on May 2, 2014. Dkt. 1. Qualcomm then filed its initial invalidity contentions. Ex. 1 (Qualcomm's 2015 Invalidity Contentions).

Following the initial proceedings in this Court, Qualcomm filed nine petitions for IPR asking the Patent Trial and Appeals Board ("PTAB") to cancel certain claims in the '940 Patent and U.S. Patent No. 7,039,372 ("the '372 Patent"). Dkt. 219. The parties subsequently filed a Joint Motion to Stay. Dkt. 249. Among other things, the parties told the Court that a stay was warranted to "consider the impact of the IPRs" and highlighted the potential for "streamlining this case." Dkt. 249. The Court granted the Motion, and stayed the case on February 4, 2016. Dkt. 250.

Other than claims 24 and 331 of the '940 Patent, Qualcomm challenged every Asserted Claim[1] of the '940 and '372 patents with one or more of its IPR Petitions. With respect to the '372 Patent, the PTAB rejected each of Qualcomm's grounds for invalidity at the institution stage because it found that Qualcomm's arguments were tainted by impermissible hindsight. *See, e.g.*, Ex. 2, 3, 4. With respect to the '940 Patent, the PTAB instituted Qualcomm's petitions and subsequently affirmed the validity of claims 25-26 and 368-369. Ex. 5 at 21. The PTAB's decision was then affirmed by the Federal Circuit. *See ParkerVision, Inc. v. Qualcomm, Inc.*, 903 F.3d 1354, 1363 (Fed. Cir. 2018) (affirming "the Board's determination that claims 25, 26, 363–66, 368, 369, and 373 [of the '940 Patent] were not proven unpatentable").

Following the Federal Circuit's decision, and after a stay lasting nearly three years, the Court reopened this case on January 9, 2019 and ruled that ParkerVision could proceed on claims "which were not invalidated via the [IPRs]." Dkt. 297 at 1;

---

[1] ParkerVision asserts claims 24-26, 331, and 368-369 of the '940 Patent and claims 99-100, 107, and 126 of the '372 Patent.

*see also* Dkt. 280 (reopening case). After a second stay due to COVID-19, ParkerVision requested the case be further narrowed. Dkt. 382. Over Qualcomm's objection, the Court granted ParkerVision's request and ordered both parties to narrow their respective contentions. Dkt. 384 at 4-5 (Court remarking that narrowing was warranted "[a]fter five years of litigation, an IPR proceeding, three final written decisions of the [PTAB] and an appeal to the Federal Circuit, Qualcomm claims that narrowing the prior art references is 'premature.'"). ParkerVision now asserts claims 25, 26, 368, and 369 of the '940 Patent—the claims that were upheld by both the PTAB and the Federal Circuit. *ParkerVision*, 903 F.3d at 1363.

### B. Qualcomm's Invalidity Theories Are Based on Prior Art that Was Raised, Or Could Have Been Raised, in the IPR Proceedings

Qualcomm seeks to re-litigate the validity of claims 25, 26, 368, and 369 of the '940 Patent over five references that it raised during the IPR proceedings: Nozawa, Philips4052, Krauss, Ariie, and Sullivan. Ex. 5; Ex. 6; *see also* Ex. 7 at ¶ 711 (summarizing "940 Prior Art Grounds"). Qualcomm asserted Nozawa combined with Philips4052 against the '940 Patent in IPR2015-01828 and IPR2015-01831. Ex. 5, 8. But the Board rejected Qualcomm's argument that claims 25-26 and 368-369 of the '940 Patent were rendered obvious by the combined teachings of Nozawa and Philips4052. Ex. 5 at 21. In an attempt to avoid IPR estoppel, Qualcomm now asserts the very same references from its unsuccessful IPR proceeding—Nozawa and Philips4052—in a further, trivial combination, with an alleged system called "BBA2." Ex. 7 at ¶ 711. In a similar vein, Qualcomm asserted Krauss combined with

Ariie in its IPR2015-01829 IPR proceeding, but again adds BBA2 in a trivial way to the previously asserted combination in an attempt to avoid IPR estoppel. Ex. 9 at 2-3; Ex. 7 at ¶ 711.

In both cases, Qualcomm does not use BBA2 in a meaningful way. Rather, Qualcomm combines a small portion of BBA2 with the exact same invalidity theories that it previously raised during the IPR proceedings. For example, Qualcomm adds a singular component of the BBA2 chipset, a digital-to-analog converter ("DAC"), to the IPR combination of Nozawa and Philips4052. Ex. 7 at ¶ 788. Qualcomm's expert, Dr. Razavi, practically admits that Qualcomm seeks to re-litigate Nozawa and Philips4052 by adding BBA2 to this previously asserted combination in a trivial way. Ex. 7 at ¶ 774 ("I understand that '940 Patent, Claim 25 cannot be invalidated based purely on Nozawa and Philips 4052, due to procedural reasons having to do with the IPR. In my opinion, this claim and its asserted dependent claims are also invalid based on the combination of Nozawa, Philips 4052, and BBA2 . . ."). Likewise, and as to Krauss combined with Ariie, Qualcomm adds the local oscillator ("LO") circuitry from BBA2 in furtherance of its attempt to re-litigate the IPR prior art references by recasting them as a system in a trivial combination with BBA2. As is explained below, the elements of the BBA2 system that Qualcomm points to now in its attempts to avoid IPR estoppel—*i.e.,* the DAC and the LO—were described in printed publications related to BBA2 that Qualcomm could have raised in the IPRs.

### C.     Qualcomm Has Not Shown that BB3 Qualifies as Prior Art

Qualcomm argues that claims 24-26, 331, and 368-369 of the '940 Patent and claims 99-100, 107, and 126 of the '372 Patent are anticipated or rendered obvious by BB3 (not to be confused with BBA2). Dkt. 438 at 2; *see also* Ex. 7 (Razavi Report) at ¶ 711 (summarizing invalidity theories for the '940 and '372 Patents). In its invalidity contentions, Qualcomm contends that "BB3/IFT3000/IFR3000 integrated circuits qualify as prior art under 35 U.S.C. 102(a), (b), and/or (g)," but it does not proffer evidence supporting this contention. Ex. 10 (Exhibit A02 to Qualcomm's Invalidity Contentions (July 31, 2020)) at 2; Ex. 11 (July 31, 2020 Cover Letter to Qualcomm's Invalidity Contentions (July 31, 2020)) at 23. Without citing any evidence of record to prove the veracity of its assertions, Qualcomm states:

> Purchase records from Qualcomm's servers confirm that Qualcomm purchased BB3/IFT3000/IFR3000 chips from IBM in the United States at least as early as June 26, 1998, with additional purchases received [by Qualcomm] no later than July 14, 1998. Qualcomm's documentation confirms that BB3/IFT3000 was conceived by at least Charlie Persico, James Jaffee, and Brett Walker and reduced to practice by at least as early as February 26, 1998. Qualcomm shipped the BB3/IFT3000/IFR3000 to customers (including U.S. customers) in early August 1998, and sold the BB3/IFT3000/IFR3000 at volume to customers (including U.S. customers) by early December 1998.

Ex. 10 (Exhibit A02 to Qualcomm's Invalidity Contentions (July 31, 2020)) at 2. Likewise, Qualcomm's expert, Dr. Razavi, states that he "understand[s] that Qualcomm's BB3 integrated circuits qualify as prior art under 35 U.S.C. 102(a), (b), and/or (g)." Ex. 7 (Razavi Report) at ¶ 918. To support his "understanding" that BB3 qualifies as prior art, Dr. Razavi merely parrots the unsupported statements from Qualcomm's invalidity contentions. Ex. 7 (Razavi Report) at ¶¶ 918-19. As will

be established herein, Qualcomm cannot meet its burden to prove, by clear and convincing evidence, that BB3 is prior art under the statutory provisions of 35 U.S.C. § 102(a) (public knowledge), (b) (public use or sale), or (g) (prior invention without abanonment, supression, or concealment).

## III.   STATEMENT OF UNDISPUTED FACTS

### A.   IPR Estoppel

Qualcomm filed six IPR petitions challenging the validity of the '940 Patent. Dkt. 219. At the conclusion of the IPR proceedings, the PTAB issued a final written decision finding that "Qualcomm has not met its burden to prove, by preponderance of the evidence, that claims 25, 26, 363–366, 368, 369, and 373 are unpatentable." Ex. 5 at 22. Qualcomm may not now assert in this litigation that claims 25-26 and 368-369 are "invalid on any ground that [it] could have raised during [the] inter partes review." 35 U.S.C. § 315(e)(2).

Qualcomm challenges the invalidity of claims 25-26 and 368-369 of the '940 Patent based on various combinations of eight references: Nozawa, Phillips 4052, Ariie, Krauss, Sullivan, Ishigaki, BBA2, and BB3. Ex. 7 at ¶ 711; Dkt. 249. Qualcomm asserts five references—Nozawa, Phillips 4052, Ariie, Krauss, and Sullivan—that it also raised during the IPR proceedings on the '940 Patent.

### B.   BB3/IFT3000/IFR3000 Chipset Availability

The '940 Patent issued from an application that was filed on October 21, 1998. Ex. 12 at Cover. The '372 Patent claims priority to the application that issued as the

'940 Patent. Ex. 13 at Cover. October 21, 1998 is the operative priority date for both the '940 and '372 Patents.

BB3 is the name of a chipset that includes a transmitter called IFT3000 and a receiver called IFR3000. Ex. 7 at ¶ 913. Qualcomm argues that every Asserted Claim of the '940 and '372 Patents is invalid in view of BB3. Ex. 7 at ¶ 711; Dkt. 249. Qualcomm's theory of invalidity is based on eight internal documents "that describe the structure and operation of the BB3 product." Ex. 14 (Appendix 27 to Dr. Razavi's Opening Expert Report) at 1. Each document states, on its face, that the information contained therein is "confidential" and/or "proprietary" to Qualcomm. *See, e.g.*, Ex. 15 (BB3T: TxAGC LLD (Fed. 1998)) at QCPVII02888298; Ex. 16 (IFR3000/IFT3000 Preliminary User Manual (April 1998)) at QCPVII00072734; Ex. 17 (IFT3000 Test Guidelines (December 1998)) at QCPVII02887584. None of these eight documents were (or are) public.

IBM served as Qualcomm's contract manufacturer or "foundry" for the IFT3000 component of BB3. *See generally* Ex. 18 (Qualcomm Design Specification for IFT3000 (March 31, 2000)) at QCPV005431101-1104. The IFR3000 component of BB3 was manufactured by Motorola. Ex. 7 (Razavi Report) at ¶ 918. As of May 31, 2000, specifications, drawings, and data related to BB3 were kept strictly confidential by Qualcomm—including when it shared those designs with IBM as its foundry. Ex. 18 (Design Specification for BB3/IFT3000 (May 31, 2000)) at QCPV005431101.

Despite stating that "Purchase records from Qualcomm's servers confirm that Qualcomm purchased BB3/IFT3000/IFR3000 chips from IBM in the United States at least as early as June 26, 1998, with additional purchases received [by Qualcomm] no later than July 14, 1998" Qualcomm did not cite these purchase records in its invalidity contentions (*see* 10 (Exhibit A02 to Qualcomm's Invalidity Contentions (July 31, 2020)) at 2) nor does its expert, Dr. Razavi, refer to them in his expert reports. Ex. 7 at ¶¶18-19. And even if they had cited such evidence, it would be immaterial because such sales are not public.

Despite stating that "Qualcomm shipped the BB3/IFT3000/IFR3000 to customers (including U.S. customers) in early August 1998" Qualcomm again does not cite documents in support of this contention in its invalidity contentions (*see* 10 (Exhibit A02 to Qualcomm's Invalidity Contentions (July 31, 2020)) at 2) nor does Dr. Razavi cite any such documents in his reports related to the alleged shipments or sales. Ex. 7 at ¶¶18-19. Nor does Qualcomm identify the "U.S. customers" who allegedly received such shipments in "early August 1998." *See id*. Qualcomm's contention is also inconsistent with its financial disclosures, which indicate that "production shipping [] for the 5th generation CDMA chipset"—which includes BB3/IFT3000/IFR3000—commenced on January 27, 1999. Ex. 19 (Qualcomm Annual Report 1999) at 29.

Qualcomm has never revealed to the public technical information related to the operation of BB3. And, to this day, Qualcomm continues to conceal from the public technical information related to the operation of BB3. Qualcomm has marked

the BB3 documents as "OUTSIDE ATTORNEYS' EYES ONLY"[2] under the Protective Order entered in this case. *See, e.g.*, Ex. 15 (BB3T: TxAGC LLD (Fed. 1998)) at QCPVII02888298; Ex. 16 (IFR3000/IFT3000 Preliminary User Manual (April 1998)) at QCPVII00072734; Ex. 17 (IFT3000 Test Guidelines (December 1998)) at QCPVII02887584.

## IV.   LEGAL STANDARDS

### A.   The Burden of Proof for Invalidity

Courts begin with the presumption that a patent is valid. 35 U.S.C. § 282(a). To overcome the presumption of validity, a patent challenger must prove its invalidity defense by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). The burden of proving invalidity by clear and convincing evidence is "a heavy and unshifting burden." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1580 (Fed. Cir. 1991).

### B.   The Scope of the Prior Art

The patent challenger must establish by clear and convincing evidence that a reference is available as prior art under 35 U.S.C. § 102 ("Section 102"). *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996); *see also Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987) ("[A] key preliminary legal inquiry is—what is the prior art?").

---

[2] "OUTSIDE ATTORNEYS' EYES ONLY" is a designation for "information, documents, and things that include non-public information that is extremely confidential and/or sensitive in nature and for which the Designating Party reasonably believes that a mere CONFIDENTIAL designation would cause economic harm or significant competitive disadvantage to the Designating Party." Ex. 20 (Protective Order) at 2-3.

## C.    IPR Estoppel

In September of 2011, Congress passed the American Invents Act, which delineates the process and procedure for IPRs. Congress created IPR proceedings with the intent that they would serve as an expeditious and efficient way for a party to challenge the validity of a United States patent. *See, e.g., Patent Reform Act of 2009: Hearing Before the House Comm. on the Judiciary*, 111th Cong. 153 (2009) (statement of Rep. Manzullo). To that end Congress enacted the IPR estoppel provision:

> The petitioner in an [IPR] of a claim in a patent . . . that results in a final written decision . . . may not assert either in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that [IPR].

35 U.S.C. § 315(e)(2). Statutory IPR estoppel applies to invalidity grounds that a petitioner raised or reasonably could have raised in its IPR petition. This includes "any references that were known to the petitioner or that could reasonably have been discovered by a skilled searcher conducting a diligent search." *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453 (D. Del. 2020) (granting summary judgment of IPR estoppel); *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW(AGRx), 2019 WL 8192255, at *3 (C.D. Cal. Aug. 9, 2019) (same). Due to the estoppel provision, patents that survive an IPR are "largely unchallengeable by the same party." America Invents Act: Hearing on H.R. 1249 Before the House Comm. on the Judiciary, 112th Cong. 52-53 (2011) (statement of Director David Kappos).

D.    **Summary Judgement**

Summary judgment is appropriate when, based on the record, no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

V.    **ARGUMENT**

A.    **Qualcomm's Invalidity Theories Related to Claims 25-26 and 368-369 of the '940 Patent Are Estopped Under 35 U.S.C. §315(e)(2)**

Qualcomm should be estopped from arguing that Claims 25-26 and 368-369 of the '940 Patent are invalid by relying upon references that it actually raised in the IPRs it filed or components of the BBA2 "system" which are described in printed publications that it reasonably could have raised in the IPRs.

1.    **Qualcomm Is Barred from Re-litigating Prior Art that It Raised in the IPR Proceedings**

Qualcomm asserts five references against claims 25-26 and 368-369 of the '940 Patent that it raised, and that were addressed in detail, during the IPR proceedings: Nozawa, Philips4052, Krauss, Ariie, and Sullivan. Ex. 5; Ex. 6. Qualcomm is estopped from asserting these references at trial. *See* 35 U.S.C. §315(e)(2) (an unsuccessful petitioner "may not assert [] in a civil action . . . any ground that the petitioner raised or reasonably could have raised during that inter partes review"); *see also Douglas Dynamics, LLC v. Meyer Prods. LLC*, 14–cv–886–jdp, 2017 WL 1382556, at *5 (W.D. Wis. Apr. 18, 2017) ("A patent infringement defendant does not have to take the IPR option; it can get a full hearing of its validity challenge in district court.

If the defendant pursues the IPR option, it cannot expect to hold a second-string invalidity case in reserve in case the IPR does not go defendant's way.").

There is no genuine issue of material fact as to whether Nozawa, Philips4052, Krauss, Ariie, and Sullivan are subject to estoppel. The very purpose of 35 U.S.C. §315(e)(2) is to prevent Qualcomm from re-litigating the validity of claims 25-26 and 368-369 of the '940 Patent in light of these same references again. *See, e.g.*, *GREE, Inc. v. Supercell OY*, No. 2:19-cv-00071-JRG-RSP, 2019 WL 5677511, at *4 (E.D. Tex. Oct. 30, 2019) ("The purpose of the estoppel statute is to prevent parties from pursuing two rounds of invalidity arguments before the PTAB and the district court."); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2526231, at *4 (E.D. Tex. May 11, 2017) ("Congress intended to prevent the same party from challenging the validity of the same patent twice, at least based on patents or printed publications that the PTAB considered."). The Court should hold that the IPR estoppel provisions of 35 U.S.C. §315(e)(2) apply and that Qualcomm is barred from asserting that any of claims 25-26 and 368-369 of the '940 Patent are invalid in light of any combination of Nozawa, Philips4052, Krauss, Ariie, or Sullivan.

### 2.    Qualcomm Is Barred from Re-litigating Prior Art that it Could Have Raised in the IPR Proceedings

The IPR estoppel provisions of 35 U.S.C. §315(e)(2) also apply to Qualcomm's attempt to combine the IPR prior art of Nozawa, Philips4052, Krauss, Ariie, and Sullivan with the purported system based prior art of BBA2 which is also described in printed publications that Qualcomm could have raised in the IPRs. This

is because IPR estoppel reaches not just to the Nozawa, Philips4052, Krauss, Ariie, and Sullivan references that Qualcomm asserted in the IPR proceedings, it also extends to references that Qualcomm could have raised in the IPRs—including printed publications describing the components of purported prior art systems (here BBA2) that it now tries to combine with the IPR prior art to avoid estoppel. *See, e.g.*, *Wasica*, 432 F. Supp. 3d at 455 n.7. As summarized by one court,

> IPR is limited to invalidity grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). [Defendant] therefore could not have raised a prior art "system" during IPR proceedings. **If, however, [Defendant's] purported system prior art relies on or is based on patents or printed publications that [Defendant] would otherwise be estopped from pursuing at trial**, e.g., patents or printed publications that a "skilled searcher conducting a diligent search reasonably could have been expected to discover," **then [Defendant] should be estopped from presenting those patents and printed publications at trial**.

*Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017) (recommending granting-in-part summary judgment on IPR estoppel, which the district judge later adopted) (emphasis added).

Qualcomm argues that claims 25-26 and 368-369 of the '940 Patent are rendered obvious by the IPR prior art of Nozawa, Philips4052, Krauss, Ariie, and Sullivan in combination with certain elements of the BBA2 "system"—elements that are *also* described in printed publications related to BBA2. Qualcomm contends that Nozawa combined with Phillips4052 and further combined with the DACs used in BBA2 (the "Nozawa Theory") renders claims 25-26 and 368-369 of the '940 Patent obvious. *See e.g.* Ex. 7 (Razavi Report) at ¶¶ 712, 788. Qualcomm additionally

contends that Krauss combined with Ariie (as in its IPR2015-01829 IPR proceeding) with the addition of local oscillator ("LO") circuitry from BBA2 renders the claims obvious (the "Krauss/Ariie Theory"). Ex. 9; Ex. 7 at ¶¶ 711, 1041. Because each of the purported combinations of the IPR prior art of Nozawa, Philips4052, Krauss, Ariie, and Sullivan incorporates a single component from BBA2 (*i.e.*, the DAC in the "Nozawa Theory"; the LO circuitry in the "Krauss/Ariie Theory"), Qualcomm argues that these purported combinations of the IPR prior art with BBA2 are prior art systems that could not have been raised during the IPR proceedings. Ex. 21.

But here, the elements of BBA2 that Qualcomm points to in its combinations (*i.e.*, the DAC in the "Nozawa Theory"; the LO circuitry in the "Krauss/Ariie Theory") were described in printed publications – and, as such, Qualcomm could have raised these very same combinations in the IPRs. In this case, before the stay, Qualcomm itself identified multiple publications related to BBA2 in the pre-IPR invalidity contentions it served in 2015. For example, BBA2's DACs (as used in the "Nozawa Theory" are described in a paper published by MaryJo Nettles—a Qualcomm employee—in 1995 that Qualcomm referred to as the "BBA2 Paper" in its pre-IPR invalidity contentions served in 2015. *See* Ex. 22 (Nettles) at 328 (explaining that "Eight bits of I and Q TX data are input to the CDMA DACs" and that "[e]ach CDMA DAC is followed by a low-pass filter"); Ex. 23 at 1 (listing Nettles and BBA2 ASIC in the list of BBA2 technical documents that Qualcomm's expert relied on). BBA2's DACs are also described in detail in Qualcomm's marketing materials, including a product catalog that was published by Qualcomm in September 1997 and

also included in its pre-IPR invalidity contentions served in 2015. *See* Ex. 24 (BBA2 ASIC) at 4-4 (disclosing that "Eight bits of I and Q transmit data are multiplexed over an 8-bit input port into the BBA2 CDMA DACs" and that the "each CDMA DAC is followed by an anti-aliasing low-pass filter with a bandwidth of 640 kHz that reduces unwanted frequency components.").



Nettles at Fig. 4 (annotated)            BBA2 ASIC at Fig. 4 (annotated)

Despite being in possession of these publications related to BBA2, authored by its employees, and included in its pre-IPR invalidity contentions, Qualcomm elected not to pursue invalidity defenses based on the DAC of BBA2 in combination with Nozawa and Phillips4052 in the IPRs—even though it could have.

Likewise, Qualcomm could have advanced the "Krauss/Arrie Theory" during the IPR proceedings because the same references that disclose BBA2's DAC also disclose BBA2's LO circuitry. For example, Nettles explains the process by which "LO signals are generated" in BBA2 and discloses specific circuitry for the variable controlled oscillator ("VCO") that is used to generate the LO signals. Ex. 22 (Nettles) at 328, Fig. 3. Nettles further explains that a "master-slave divide-by-two

15

circuit generates I and Q signals in precise quadrature for the mixers." *Id.* at 328, Fig. 4; *see also* Ex. 24 (BBA2 ASIC) at 4-4 (same). Despite being in possession of references that disclose the LO and divider circuits, Qualcomm elected not to pursue invalidity defenses based on the LO and divider circuitry of BBA2 in combination with Krauss and Arrie during the IPRs—even though it could have.

Numerous courts have held that IPR estoppel applies when purported system art is described by patents or printed publications that could have been raised during the IPR. *See, e.g., Wasica,* 432 F. Supp. 3d at 454 (D. Del. 2020) (preventing a former-petitioner from relying on purported product art that was described in a patent); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2017 WL 2605977 (E.D. Va. June 5, 2017) (estopping a former-petitioner from relying on product manuals that reasonably could have been raised in IPR). Here, as in these cases, Qualcomm "is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' a prior art ground and 'skirt' estoppel." *Cal. Inst. of Tech.*, 2019 WL 8192255 at *7. As a result, the Court should not permit Qualcomm to "avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation." *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, No. 15-cv-1067, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019).

Because Qualcomm could have raised these descriptions and depictions of BBA2 (and its DACs and LO circuitry) in combination with the IPR art in its IPR petitions, estoppel applies to the "Nozawa Theory" and "Krauss/Ariie Theory." In *Wasica*, for example, Wasica sued Schrader for patent infringement. *See Wasica,* 432

F. Supp. 3d at 451, 455. Similar to the present facts, Schrader filed multiple IPR petitions challenging the validity of the asserted claims under Sections 102 and 103. *Id.* at 452. The PTAB upheld the validity of the asserted claims, and the PTAB's decision was affirmed by the Federal Circuit. *Id.* After the appeal, Schrader attempted to raise new invalidity theories that combined the reference asserted in the IPR with purported product art called the "ZR-1 Sensor." *Id.* Echoing Qualcomm's assertions in this case, Schrader argued that IPR estoppel did not apply to invalidity theories that are based, at least in part, on alleged system prior art even where that alleged system is also described in a printed publication that could have been raised in the IPR. *Id.* at 454. The court rejected Schrader's argument—and granted Wasica's motion for summary judgment of IPR estoppel—because a prior publication that was known to the patent challenger "disclose[d] the same claim elements" as the ZR-1 Sensor. *Id.* at 455.

### 3.      IPR Estoppel Also Applies to Ishigaki

Qualcomm asserts Ishigaki against claims 25-26 and 368-369 of the '940 Patent. Ex. 7 at ¶ 711. Although Ishigaki was not raised during the IPR proceedings challenging the '940 Patent, Qualcomm asserted Ishigaki against the '372 Patent in an IPR petition that was filed in parallel. Ex. 2. Qualcomm therefore "reasonably could have raised" Ishigaki in a petition challenging the '940 Patent. 35 U.S.C. §315(e)(2). And, as such, Qualcomm is estopped from asserting Ishigaki here. *See id.*

## B.    BB3 Does Not Qualify as Prior Art to the '940 and '372 Patents

Separately from the estoppel arguments presented above, Qualcomm cannot meet its burden to show that BB3 is prior art to the '940 and '372 Patents. In its invalidity contentions, Qualcomm argued that "BB3/IFT3000/IFR3000 integrated circuits qualify as prior art under 35 U.S.C. 102(a), (b), and/or (g)," but Qualcomm has not proffered evidence that supports its contention. Ex. 10 at 2. ParkerVision is entitled to summary judgment that BB3 is not prior art to the '940 and '372 Patents.

### 1.    BB3 Does Not Qualify as Prior Art Under 35 U.S.C. § 102(a)

Qualcomm cannot meet its burden to prove that BB3 qualifies as prior art under Section 102(a) because there is no evidence that BB3 was publicly known or used before October 21, 1998—the effective filing date of the '940 and '372 Patents. As explained by the Federal Circuit, "[i]n order to invalidate a patent based on prior knowledge or use, that knowledge or use mSust have been available to the public." *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) (collecting authority). "[W]here the prior user has successfully concealed his work from the public, such prior knowledge or use is unavailable as prior art because the prior user has 'not contributed to the store of knowledge' in the art." *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 965 (Fed. Cir. 2020) (quoting *Woodland Tr.*, 148 F.3d at 1370). In the time before the October 21, 1998 priority date, Qualcomm actively concealed all technical aspects of BB3, including those alleged to practice the claim elements of ParkerVision's inventions. Qualcomm cannot show by clear and

convincing evidence that BB3 was "known or used by others in this country" before October 21, 1998. 35 U.S.C. § 102(a).

Qualcomm's invalidity theory for BB3 is based solely on confidential documents that purportedly "describe the structure and operation of the BB3 product." Ex. 14 (Appendix 27 to Dr. Razavi's Opening Expert Report) at 1. Qualcomm does not allege that any of the relied-upon documents were made available to the public prior to October 21, 1998. Qualcomm's confidential documents do not qualify as prior art under Section 102(a). *Woodland Tr.*, 148 F.3d at 1370; *see also Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582, 587 (Fed. Cir. 2004) (observing, in the context of Section 102(a) and (b), that "the trial court was required to determine whether and what features of the [] invention were public" because prior knowledge "kept confidential [] cannot serve to anticipate").

Moreover, Qualcomm has not proffered evidence that the BB3 chipset was available to the public prior to October 21, 1998. And Qualcomm's expert, Dr. Razavi, did not render an opinion on this issue:

> Q. Do you know if any of the activity that you list in paragraph 918 [of your opening report] was performed outside of a confidentiality agreement or a confidential relationship?
> A. I do not have the information one way or another.
> Q. Do you know whether BB3 was sold to customers in the United States in a way that it would be publicly available prior to October 1998?
> A. I do not have that information.
> Q. Okay. If a person of ordinary skill in the art wanted to buy a BB3 chip and dissect it to see how it works, would that person of ordinary skill in the art be able to do so before October 1998?
> A. I don't have that information.

Ex. 25 (Razavi Deposition Tr.) at 365:11-366; *see also* Ex. 7 (Razavi Report) at ¶ 918. This failure of proof is fatal to Qualcomm's contention that BB3 qualifies as prior art under Section 102(a). *See, e.g.*, *Minnesota Min. and Mfg. Co. v. ChemQue*, *Inc.*, 303 F.3d 1249, 1306 (Fed. Cir. 2002).

In stark contrast to Qualcomm's unsupported contention that BB3 qualifies as prior art under Section 102(a), ParkerVision's expert, Dr. Steer, performed a detailed analysis of Qualcomm's documents and concluded that "IFT3000 [*i.e.*, the transmitter used in the BB3 chipset] was not in the public domain before the priority date of the Asserted Patents (*i.e.*, October 21, 1998)." Ex. 26 (Steer Rebuttal Report) at ¶ 49. For example, Qualcomm's internal presentations and spreadsheets show that initial production of IFT3000 and IFR3000 did not begin until December 1998—*after* the October 1998 priority date. *Id*. at ¶ 48; Ex. 27 (Qualcomm Product Presentation (January 1999)) at QCPV005485291. Likewise, Qualcomm's financial disclosures for 1999 indicate that "production shipping [] for the 5th generation CDMA chipset"— which includes IFT3000 and IFR3000—commenced on January 27, 1999—again, *after* the relevant October 1998 priority date. Ex. 26 (Steer Rebuttal Report) at ¶ 48; Ex. 19 (Qualcomm Annual Report 1999) at 29. Qualcomm's documents thus confirm that BB3 was not available to the public before October 21, 1998.

Finally, even if Qualcomm could show that BB3 was publicly available prior to October 21, 1998, which it cannot, Qualcomm has not shown that a skilled artisan

could, upon receipt of the BB3 chipset, discern the elements of the Asserted Claims.[3] This is a distinct failure of proof that independently warrants judgment as a matter of law that ParkerVision's inventions were not "known or used" under Section 102(a). *See Minnesota Min.*, 303 F.3d at 1306 (reversing verdict of invalidity under Section 102(a) where "[t]he defendants have not highlighted any evidence of record that supports a jury finding that a person of ordinary skill in the art, upon receipt of the [alleged prior art], would have any of the requisite information to make the claimed invention"); *Delano Farms Co. v. Cal. Table Grape Comm'n*, 778 F.3d 1243, 1249–50 (Fed. Cir. 2015) ("[I]f members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the allegedly invalidating prior art, the public has not been put in possession of those features.").

### 2.     BB3 Does Not Qualify as Prior Art Under 35 U.S.C. § 102(b)

Qualcomm appears to argue that BB3 qualifies as prior art under Section 102(b) because it was allegedly on sale by June 1998. *See* Ex. 11 (July 31, 2020 Cover Letter to Qualcomm's Invalidity Contentions) at 23; Ex. 7 (Razavi Report) at ¶¶ 918-19. The evidence does not support Qualcomm's claim, but, even if Qualcomm's claim is accepted, Qualcomm cannot meet its burden of proof. This is because "the on-sale bar under 35 U.S.C. § 102(b) applies when, before the critical date [i.e. one year before the priority date], the claimed invention (1) was the subject of a commercial offer for sale; and (2) was ready for patenting." *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1372 (Fed. Cir. 2016) (en banc); 35 U.S.C. § 102(b). Because the

---

[3] These chips are the size of a fingernail and contain *millions* of distinct circuit elements.

alleged date of first sale—June 1998—is less than one year before the October 1998 priority date, even if BB3 was sold as Qualcomm alleges, it has failed to show that any such sale of BB3 qualifies as a prior "sale" under Section 102(b).[4]

### 3.   BB3 Does Not Qualify as Prior Art Under 35 U.S.C. § 102(g)

Finally, Qualcomm contends that "BB3/IFT3000 was conceived by at least Charlie Persico, James Jaffee, and Brett Walker and reduced to practice by at least as early as February 26, 1998" and therefore qualifies as prior art under Section 102(g)(2). Exhibit 10 (A02 to Qualcomm's Invalidity Contentions (July 31, 2020)) at 2; Ex. 7 (Razavi Report) at ¶¶ 918-19. As the party challenging validity under Section 102(g)(2), Qualcomm "must prove facts by clear and convincing evidence establishing a prior invention that was not abandoned, suppressed, or concealed." *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001). Qualcomm cannot invoke Section 102(g)(2) here because it actively suppressed and concealed *how* its alleged prior invention of the Asserted Claims worked (and indeed, it is still concealing the "inner workings" of its alleged prior invention). *TQP Development, LLC v. Intuit Inc.*, No. 2:12–CV–180–WCB, 2014 WL 2809841, at *6 (E.D. Tex. June 20, 2014) (Bryson, J.) ("When the 'inner workings' are the essence of the invention, it is those 'inner workings' that must not be suppressed or concealed in order for the invention to be prior art under section 102(g).")

---

[4] Qualcomm's contention is also inconsistent with its financial disclosures, which indicate that "production shipping" commenced on January 27, 1999. Ex. 26 (Steer Rebuttal Report) at ¶ 48; Ex. 19 (Qualcomm Annual Report 1999) at 29.

Qualcomm contends that its proprietary documents—including schematics, design reviews, and test documents—demonstrate its conception and reduction to practice of the '940 and '372 Patent Asserted Claims before ParkerVision. Even accepting Qualcomm's description of what these documents are alleged to show for the sake of argument, these documents reveal, on their face, that Qualcomm took affirmative steps to conceal its alleged prior invention. *See, e.g.*, Exs. 15, 16, and 17; Ex. 18 (Qualcomm Design Specification for IFT3000 (May 31, 2000)) at QCPV005431101. Accordingly, Qualcomm cannot show, by clear and convincing evidence, that ParkerVision's "invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. §102(g)(2).

Although Qualcomm claims to have eventually commercialized a product that is allegedly based on the BB3 documents,[5] Qualcomm has not provided evidence of steps that it has taken to make its alleged prior invention known. *TQP Development, LLC v. Intuit Inc.*, No. 2:12–CV–180–WCB, 2014 WL 2809841, at *6. In the pre-2000 timeframe, all of the documents describing its alleged invention were Qualcomm proprietary and protected from disclosure. And, even now, Qualcomm continues to designate every piece of evidence on which it relies as "OUTSIDE ATTORNEYS' EYES ONLY" under the Protective Order. Given that this designation applies to "information, documents, and things that include non-public information that is extremely confidential and/or sensitive in nature and for which [Qualcomm]

---

[5] Qualcomm has not identified when products that contain BB3 were sold or otherwise made available to the public.

reasonably believes that a mere CONFIDENTIAL designation would cause economic harm or significant competitive disadvantage," Ex. 20 (Protective Order) at 2-3, Qualcomm effectively concedes that it continues to suppress and conceal the pertinent information to this day.[6]

Summary judgment is appropriate here because no reasonable juror could find that Qualcomm has not "abandoned, suppressed, or concealed" the aspects of BB3 that allegedly practice the Asserted Claims of the '940 and '372 Patents. 35 U.S.C. § 102(g)(2). For example, in a particularly apt decision, one court found that a patent challenger failed to show invalidity under Section 102(g)(2) because the patent challenger had not shown that it did not "abandon[ ], suppress[ ], or conceal[ ]" information related to a prototype device that allegedly embodied the asserted claims." *I.E.E. Int'l Elecs. & Eng'g, S.A. v. TK Holdings Inc.*, 54 F. Supp. 3d 776, 792 (E.D. Mich. 2014). Like Qualcomm in this case, the patent challenger relied on documents that "uniformly bore such designations as 'Private,' 'Confidential,' and 'Not for Third Party Distribution.'" *Id.* at 793. Moreover, the patent challenger "continued to designate these documents as confidential in this litigation." *Id.* at 793 n.14. Although the patent challenger "point[ed] to evidence of steps taken [] to commercialize its product," the court found that the patent challenger "failed to

---

[6] Underscoring this point, Qualcomm generated and served the public version of Dr. Razavi's report on October 19, 2020. And, in the redacted version of Dr. Razavi's report, Qualcomm concealed *every* opinion related to BB3—continuing to suppress and conceal all of the evidence that it advances as prior art under Section 102(g)(2). *Compare* Ex. 7 (Confidential Razavi Report) at pp. 590-638 (disclosing opinions related to BB3) *with* Ex. 28 (Public Razavi Report) at pp. 590-638 (redacting every opinion concerning BB3).

establish as a matter of law—particularly under the governing clear and convincing standard—that the [prototype device] qualifies as prior art[.]" *Id.* at 793.

Like the patent challenger in *TK Holdings*, Qualcomm relies on documents that are uniformly designated confidential. Furthermore, Qualcomm continues to suppress the relied-upon information in this litigation. "Consequently, [Qualcomm] must rebut [the] inference of suppression or concealment 'with clear and convincing evidence to the contrary.'" *TK Holdings*, 54 F. Supp. 3d at 793 (quoting *Apotex*, 254 F.3d at 1038). Qualcomm cannot carry its burden because it has not proffered any evidence—much less clear and convincing evidence—establishing that it has not suppressed or concealed the aspects of BB3 that allegedly practice the Asserted Claims. ParkerVision is entitled to summary judgement that BB3 is not prior art to ParkerVision's '940 and '372 Patents under Section 102(g)(2).

## VI.    CONCLUSION

The Court should issue summary judgment holding that: (1) IPR estoppel applies to Qualcomm's grounds for invalidity based on Nozawa, Phillips4052, Krauss, Ariie, Sullivan, and Ishigaki in combination with the DAC and LO/divider circuits of BB2 (*i.e.* estoppel bars Qualcomm's continued assertion of the "Nozawa Theory" and the "Krauss/Ariie Theory" along with the "Ishigaki" reference); and (2) BB3 does not qualify as prior art to the Asserted Claims of the '940 and '372 Patents under Section 102(a), (b), or (g) because Qualcomm cannot meet its burden to prove by clear and convincing evidence that BB3 qualifies as prior art under any of these subsections of Section 102.

February 16, 2021

Respectfully submitted,

**McKOOL SMITH, P.C.**
By: */s/ Joshua W. Budwin*
Douglas A. Cawley
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Richard A. Kamprath
Texas State Bar No. 24078767
rkamprath@mckoolsmith.com
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Facsimile: (214) 978-4044

Joshua W. Budwin
Texas State Bar No. 24050347
jbudwin@mckoolsmith.com
Leah Buratti
Texas State Bar No. 24064897
lburatti@mckoolsmith.com
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

**CALDWELL CASSADY & CURRY**
Kevin L. Burgess
Texas State Bar No. 24006927
2121 N. Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (212) 888-4849
kburgess@caldwellcc.com

**SMITH HULSEY & BUSEY**
Stephen D. Busey
Florida Bar Number 117790
John R. Thomas
Florida Bar Number 77107
One Independent Dr., Suite 3300
Jacksonville, Florida 32202
Telephone: (904) 359-7700
Facsimile: (904) 359-7708

busey@smithhulsey.com
jthomas@smithhulsey.com

***ATTORNEYS FOR PLAINTIFF
PARKERVISION, INC.***

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and forgoing document has

been served on all counsel of record via the Court's ECF system on February 16, 2021.


*/s/ Josh Budwin*
Josh Budwin