**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PARKERVISION, INC.,

                      PLAINTIFF,

v.                                               CASE NO.: 6:14-cv-687-PGB-KRS

QUALCOMM INCORPORATED and
QUALCOMM ATHEROS, INC.,

                      DEFENDANTS.

**PARKERVISION'S MOTION FOR CLARIFICATION**
**OF THE COURT'S ORDER (DKT. 537)**
**AS IT RELATES TO THE '177 PATENT**

# **TABLE OF CONTENTS**

I.    Introduction ................................................................................. 1

II.   ParkerVision's Infringement Theory in its Expert Report for the '177 Patent is Consistent With Its 2015 Infringement Contentions ............................................................................... 3

        1.   As Used in ParkerVision's 2015 Contentions, "Digitized" Is A Synonym for "Sampling" or "Aliasing." ............................................ 4

        2.   Consistent With ParkerVision's 2015 Contentions, ▮▮▮▮▮ First Filter And Then Combine *After* Filtering. .................................. 6

        3.   ParkerVision's Expert Report is Consistent with the 2015 Infringement Contentions. ................................. 8

III.  Qualcomm Fully Responded to ParkerVision's Infringement Theory, as Expressed in Its 2015 Contentions ........................... 15

IV.  Conclusion ................................................................................. 17

# TABLE OF EXHIBITS

New Exhibits

| Exhibit | Name |
|---------|------|
| 1 | Declaration of Dr. Michael Steer, dated March 31, 2021 |
| 2 | March 19, 2021 email from E. Gardner regarding the Court's Order Granting Qualcomm's Motion to Strike |
| 3 | Excerpt from *Practical Digital Signal Processing for Engineers and Technicians* (cited in Declaration of Dr. Michael Steer) |
| 4 | Excerpt from *Digital Signal Processing* (cited in Declaration of Dr. Michael Steer) |
| 5 | Excerpts from QCPV005932688 ████████████ ████████████ (cited in Declaration of Dr. Michael Steer) |

Previously Docketed Exhibits

| Exhibit | Name |
|---------|------|
| Dkt. 499-19 | ParkerVision's 2015 Infringement Contentions for the '177 Patent |
| Dkt. 527-2 | Initial Expert Report of ParkerVision's RX Expert |
| Dkt. 528-18 | Appendix D to RX Expert Report |
| Dkt. 527-3 | Razavi Rebuttal Report |
| Dkt. 498-11 | Qualcomm's July 2020 Amended Invalidity and Non-Infringement Contentions |

## I.    INTRODUCTION

The Court granted Qualcomm's Motion to Strike ParkerVision's 2020 Amended Infringement Contentions and held that ParkerVision is limited to its 2015 infringement contentions. Dkt. 537 at 15 (hereinafter "Order"). The Order discussed ParkerVision's 2020 infringement contentions as to the four patents-in-suit, but the focus of the Court's Order was the '177 Patent. *See* Dkt. 537 at 6-10. The Order did not, on its face, limit the scope of ParkerVision's 2015 infringement contentions or the scope of ParkerVision's expert report as to any patent generally or the '177 Patent specifically. *See generally id.*

By way of this Motion, ParkerVision is not asking the Court to reconsider its Order striking ParkerVision's 2020 infringement contentions. Rather, ParkerVision seeks clarification that the Order—particularly as to the '177 Patent—did not make dispositive findings of disputed fact and did not act to strike or otherwise limit the theories of infringement contained in ParkerVision's 2015 infringement contentions or ParkerVision's expert report. While ParkerVision believes that this is evident from the Court's Order, this filing is necessary because Qualcomm has recently expressed the view that the Court's Order striking ParkerVision's 2020 infringement contentions included dispositive findings of fact limiting the scope of ParkerVision's expert's report and

anticipated trial testimony—even though the expert report and the anticipated trial testimony of ParkerVision's expert is consistent with the theories of infringement expressed in ParkerVision's 2015 infringement contentions. *See* Ex. 2 (March 19, 2021, Email from E. Gardner).[1]

ParkerVision believes that the Court's ruling on this issue now will preserve judicial and party resources because the parties disagree about the scope of the Court's Order as it relates to the '177 Patent, including whether the Order makes dispositive findings of disputed fact that would, in Qualcomm's view, preclude ParkerVision from relying on portions of its expert report in support of its case at trial. *See id.* In ParkerVision's view, the question of whether its 2015 contentions support the theories of infringement as to the '177 Patent expressed in its expert report was not before the Court and has not yet been raised by Qualcomm in, for example, a motion for summary judgment where the Court could, if it so chose, make dispositive findings of disputed fact (under the proper standard for a motion for summary judgment).

---

[1] While Qualcomm takes issue with some of ParkerVision's other theories of infringement as to the other patents, *see id.*, ParkerVision does not presently believe that additional clarification is needed as to those patents.

## II.  PARKERVISION'S INFRINGEMENT THEORY IN ITS EXPERT REPORT FOR THE '177 PATENT IS CONSISTENT WITH ITS 2015 INFRINGEMENT CONTENTIONS

The dispute between the parties is whether the theory of infringement included in ParkerVision's expert report for the "combiner" limitation of the '177 Patent is supported by ParkerVision's 2015 infringement contentions. ParkerVision's 2015 contentions state the following:

> The Accused Products generate differential baseband signals (I+, I-, Q+, and Q-). The differential baseband signals are **digitized** and passed to the baseband functionality of the Accused Products **after filtering** (as discussed below). The baseband functionality includes circuitry that combines the I+ and I- baseband signals into an I-phase baseband signal and the Q+ and Q- baseband signals into a Q-phase baseband signal.

Dkt. 499-19 (ParkerVision's 2015 Infringement Contentions for the '177 Patent) at 12 (emphasis added). In ParkerVision's view, these statements are accurate, provided notice of ParkerVision's infringement theory for the '177 Patent as articulated in its expert report, and stand for four propositions that ParkerVision intends to prove at trial:

1. The Accused Products have switches that output signals labeled I+, I-, Q+, and Q-.
2. The switches in the Accused Products "digitize" the continuous time input signals into discrete, discontinuous samples—that is, the switches in the Accused Products open and close to "sample" or "alias" the continuous time input signals to create discrete, discontinuous samples of the input signal.

3

3. After "digitizing" (i.e., after "sampling" or "aliasing"), the Accused Products then filter each discrete sample prior to combination.

4. After "digitizing" and after "filtering," the Accused Products combine the filtered, discrete, discontinuous samples or aliases as a function of time. The I+ and I- samples and the Q+ and Q- samples or aliases are each combined as I-Phase and Q-Phase, respectively.

As ParkerVision understands it, there is no real dispute about items (1) and (3). But Qualcomm disputes—as a matter of disputed fact in a manner that has not yet been resolved by formal findings of fact (for example, in a ruling on a motion for summary judgment)—items (2) and (4). Specifically, and as to these items, ParkerVision understands that Qualcomm disputes as a matter of fact whether the word "digitized" is a synonym for "sampling" or "aliasing" and ████████████████ as both a "filter" and a "combiner" (where the filtering occurs ███████ before the combination also ████████████████████). These are the theories of infringement expressed in ParkerVision's 2015 infringement contentions for the '177 Patent which are also contained in ParkerVision's expert's report.

### 1. As Used in ParkerVision's 2015 Contentions, "Digitized" Is A Synonym for "Sampling" or "Aliasing."

As to item (2), in Qualcomm's view the word "digitized" as used in the phrase "[t]he differential baseband signals are digitized" from ParkerVision's 2015 contentions refers to the "digital domain" (i.e.,

"digital" as in binary digits). Dkt. 410 at 12. But, and as a matter of disputed fact, the word "digitized" as used in ParkerVision's 2015 contentions was intended by ParkerVision as a synonym for "sampling" or "aliasing"—that is a continuous time input signal is "digitized," "discretized," "aliased," or "sampled" by switches opening and closing to create a non-continuous output signal. Ex. 1, Steer Dec. at ¶ 8 ("I understand ParkerVision's 2015 Infringement contentions to be using the term 'digitized' signals to be describing 'sampled' or 'aliased' signals."). As Dr. Steer explains in his attached declaration, not only do those of skill in the art sometimes use the word "digitized" in this manner, textbooks and technical documents (including some ███████████████████) also use the word "digitized" to refer to "sampling" or "aliasing." *See id.* And, as the Court has previously recognized, for example in its claim construction order, the '177 Patent relates to the process of "sampling" or "aliasing" whereby switches operate to convert a continuous time input signal into discrete, discontinuous samples. Dkt. 381 at 24 (construing "matched filtering/correlating module" in the '177 Patent). This is explained in additional detail below.

### 2.   Consistent With ParkerVision's 2015 Contentions, ███████████ First Filter And Then Combine *After* Filtering.

As to item (4), in Qualcomm's view the words "after filtering" as used in the phrase the signals are "passed to the baseband functionality of the Accused Products after filtering" from ParkerVision's 2015 infringement contentions means that ███████████████ cannot also be the "combiner." Dkt. 410 at 12. Echoing Qualcomm's assertion, the Court's Order states that ParkerVision's 2015 contentions provide that "that the combiner is downstream of the filter." Dkt. 537 at 9-10. As to this statement, and as explained herein, in ParkerVision's 2015 infringement contentions the "combiner" ███████████ *is* "downstream of the filter" (also ███████████████ *first* filters, and then "after filtering," ██ combines the filtered signals.

But the Court's Order continues to state that "Qualcomm has formulated its defense based on the premise that ████████████, and that the combiner is downstream of the filter, meaning ██████ cannot be the combiner." *See id.* ParkerVision respectfully asserts that the Court may have failed to appreciate that in its 2015 infringement contentions ██████ ██████ *both* a filter and a combiner—where the "combining" portion ██████ ██ is "downstream of the filter" portion ██████████. As explained in more detail below, and consistent with ParkerVision's 2015 infringement

contentions, the filter portion ███████ *first* filters the sampled input signals; *then* at the output ███████ (after the filter portion ███████ has filtered the signal), the filtered signals are combined. In this way ███████ both filters and combines, but—and consistent with ParkerVision's 2015 infringement contentions—the filtering occurs ███████ *before* the combination occurs ███████ (that is the "combining" functionality ███████ is "downstream" of the "filtering" functionality ███████). This is the theory of infringement articulated in ParkerVision's 2015 infringement contentions, which is further explained in its expert report. Dkt. 499-19 (ParkerVision's 2015 Infringement Contentions for the '177 Patent) at 12, 33; Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶¶ 340, 252, 270.

As ParkerVision's expert explains in his report, the "combining" occurs in "the baseband functionality" ███████ *at a time after* "filtering" (where the "filtering" occurs ███████ before the "combining"). Ex. 1, Steer Dec. at ¶¶ 10-14; Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶¶ 340, 252, 270. In other words, and as ParkerVision's 2015 contentions and expert report explain: After "digitizing" of the continuous time signal (that is after "sampling" or "aliasing"), ███████ *first* filters the discrete time samples and *then*— "downstream" from the filtering functionality—combines the samples of

I+, I-, Q+, and Q- at the output ██████ after these samples have been filtered. *See id.* ██████ first filters and then, "after filtering," and "downstream" from the filtering, combines. This is explained in additional detail below.

### 3.   ParkerVision's Expert Report is Consistent with the 2015 Infringement Contentions.

As ParkerVision's expert explains in his report, energy samplers have "a load connected to the energy storage module that represents the input resistance of the baseband circuitry." Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶ 39. In the Accused Products, the "input resistance of the baseband circuitry" is ██████, which is part of the ████████████████ highlighted in yellow. *Id.* The below figure from a Qualcomm design review document shows ████████████ ████████████. Dkt. 528-18 (Appendix D to RX Expert Report) at ¶ 97 (annotation added); *see also* Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶ 286 (showing an exemplary product consisting of ████████████████ ████████████). ████████████████ ████████████████ ████████████



Like the expert report, ParkerVision's 2015 contentions identify ▮ ▮ as performing this filtering. *See, e.g.*, Dkt. 499-19 (ParkerVision's 2015 Infringement Contentions for the '177 Patent) at 33. This is correct: After "digitizing" (or "sampling" or "aliasing") of the continuous time input signal (long red arrow) in the switches within the mixer (the circle with the "X" in the figure inside the red circle), the discrete time samples (series of short red arrows) are filtered as they pass through the ▮▮▮ ▮▮▮ ▮▮▮ as shown in the figure above. PV RX Rep. at ¶¶ 270 (showing filters), 55-57 (explaining the behavior of filters in the time domain). Consistent with this, and as both the 2015 contentions and ParkerVision's expert report explain: The claimed *combiner module* within ▮▮ ("downstream" from the filtering components ▮▮▮) acts at a **time after** filtering and **after** digitizing. Dkt. 499-19 (ParkerVision's 2015 Infringement Contentions for the '177 Patent) at 12; Dkt. 527-2 (Initial

Expert Report of ParkerVision's RX Expert) at ¶¶ 340, 252, 270. This must be true because the Accused Products combine multiple samples, which have each passed through the filtering stages ███████ at different times *before* they are combined at the output ████████. Ex. 1, Steer Dec. at ¶¶ 10-14; Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶ 57 (explaining why one should analyze ParkerVision's inventions in the time domain).

The table below shows a mapping between the notice provided by ParkerVision's 2015 contentions and a diagram from ParkerVision's expert report showing that ParkerVision's expert report is consistent with its infringement theory for the '177 Patent from the 2015 infringement contentions. Dkt. 528-18 (Appendix D to RX Expert Report) at ¶ 101 (depicting the ████████ product) (Appendix D provides similar diagrams for all of the Accused Products); Dkt. 499-19 (ParkerVision's 2015 Infringement Contentions for the '177 Patent) at 12. Note that the "digitizing," "sampling," or "aliasing" process highlighted in yellow occurs across multiple switches over time with the opening and closing of the switches based on LO signals.

| ParkerVision's 2015 Infringement Contentions: |
| --- |
| The Accused Products generate differential baseband signals (I+, I-, Q+, and Q-). |

The differential baseband signals are digitized and passed to the baseband functionality of the Accused Products after filtering (as discussed below).

The baseband functionality includes circuitry that combines the I+ and I- baseband signals into an I-phase baseband signal and the Q+ and Q- baseband signals into a Q-phase baseband signal.

Dkt. 499-19 (ParkerVision's 2015 Infringement Contentions for the '177 Patent) at 12.

ParkerVision's Expert Report:

| | | |
|---|---|---|
| The continuous time RF input signal is "digitized," "sampled" or "aliased" by the opening and closing of the switches within the mixer—i.e. "the digitizing" of the continuous time input RF signal into a series of discrete samples. In the below figure, I+, I-, Q+, Q- correspond to IP, IM, QP, and QM.  *See, e.g.*, Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶ 310. | After the digitizing, sampling or aliasing, the discrete samples are filtered ██████████ (which is the "baseband filter" or "baseband functionality"). In the below figure, ██████ within the BBF.  *See, e.g.*, Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶ 313. | After digitizing, sampling, or aliasing, and also after filtering ██████████ by the filtering components ██ ██████, the digitized and filtered discrete signals are combined at the output ██████ (which is part of the "baseband functionality"). The below figure has vertical labels ██████ ██████████  Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶¶ 340, 252, 270. |



Dkt. 528-18 (Appendix D to RX Expert Report) at ¶ 101 (this diagram of the ▮▮▮▮▮ product is excerpted and annotated).

As this discussion makes clear:

- <u>As shown in yellow</u>: The switches in the "mixer" first "digitize," "sample," or "alias" the continuous time input "RF" signal (solid red arrow) into discrete time samples (series of three

short red arrows) that are then passed to the filtering portion
████████████

- As shown in green: After "digitizing" (or "sampling" or "aliasing") the now discontinuous signals (series of three short red arrows) are passed ████████ where they are filtered.

- As shown in blue: After "digitizing" (or "sampling" or "aliasing") and after "filtering" ████████, at the output ████████ ████, the signals are "combined" at the output ████████ as part of the "baseband functionality." This combination occurs *over time* as the discontinuous "sampled" signals that passed through filtering portion ████████ at separate times are combined in the load at the output ████████. The figure below from ParkerVision's expert report shows this combination, wherein the "baseband load" is the output resistance ████████ (circled in red). Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶ 40. As shown in the figure, two discontinuous signals (the solid line and the dotted line) are combined over time at the output ████████ (after digitization and after filtering).

13



As the foregoing shows, and notwithstanding Qualcomm's protestations to the contrary, ParkerVision's infringement theories for the '177 Patent as expressed in its infringement expert report are consistent with the infringement theories contained in its 2015 infringement contentions. Because the Court's Order striking ParkerVision's 2020 infringement contentions did not disturb or otherwise limit the scope of ParkerVision's 2015 infringement contentions, the Court's Order should not act to limit the scope of ParkerVision's expert's report or anticipated trial testimony which is, for the reasons expressed herein, fully consistent with the 2015 infringement contentions.

14

### III.   QUALCOMM FULLY RESPONDED TO PARKERVISION'S INFRINGEMENT THEORY, AS EXPRESSED IN ITS 2015 CONTENTIONS

To the extent that Qualcomm argues that it was deprived notice of ParkerVision's theories of infringement due to its subjective misunderstanding of ParkerVision's 2015 infringement contentions with reference to any of the points discussed above, Qualcomm has suffered no prejudice. First, ParkerVision should not be penalized for what is effectively Qualcomm's subjective misunderstanding of the theories of infringement expressed in its 2015 infringement contentions. If Qualcomm understood "digitizing" or "after filtering" to mean something other than ParkerVision intended, then it should have sought to clarify its understanding in discovery.

Second, and as a technical matter, Qualcomm's argument is—and always has been (regardless of its subjective understanding of ParkerVision's 2015 infringement contentions), that any combining occurs before filtering: "████████████████████████." Dkt. 527-3 (Razavi Rebuttal Report) at ¶ 365 (emphasis added). Qualcomm's position on the "combiner module" limitation is—and always has been—the opposite of ParkerVision's position (disclosed in its 2015 contentions and explained above), which is that the combiner module operates *after* filtering.

15

| Qualcomm's Position: Combining **before** filtering | ParkerVision's Position: Combining **after** filtering |
|---|---|
|  | |
| Dkt. 527-3 (Razavi Rebuttal Report) at ¶ 365 (annotation in the original). | Dkt. 527-2 (Initial Expert Report of ParkerVision's RX Expert) at ¶ 58 (annotated). |

Even assuming that Qualcomm subjectively failed to understand the theories of infringement expressed in ParkerVision's 2015 infringement contentions, Qualcomm's has suffered no prejudice. Its defense has always been that combining occurs before filtering and its rebuttal expert report addressed all of the circuit components at issue. In other words, Qualcomm's defense to ParkerVision's infringement allegations would have been the same even if Qualcomm believed that ParkerVision was

advancing a theory that the claimed combiner module operated entirely apart ▮▮▮▮▮▮ in some other part of the baseband functionality.

Third, Qualcomm has also suffered no prejudice as a procedural matter. Qualcomm was able to address ParkerVision's "combiner module" in both its Invalidity and Non-Infringement Contentions (served July 2020) and expert reports. *See* Dkt. 498-11 (Qualcomm's July 2020 Amended Invalidity and Non-Infringement Contentions) at 359. Qualcomm was also able to depose ParkerVision's experts on this subject. This is because ParkerVision's 2020 infringement contentions were served on June 26, 2020, and the Court's Order striking ParkerVision's 2020 infringement contentions did not issue until March 5, 2021 *after* the parties had completed fact and expert discovery. Dkt. 384 at 6 (setting October 9, 2020, as opening expert report deadline); Dkt. 451 (granting Dkt. 447 and setting November 23, 2020, as rebuttal report deadline and December 11, 2020, as expert discovery deadline); Dkt. 479 (January 6, 2021, Order granting Qualcomm an additional deposition of ParkerVision's expert Dr. Steer after expert substitution).

## IV.   CONCLUSION

ParkerVision respectfully asks the Court to grant its requested clarification and issue an order making clear that the prior Order striking ParkerVision's 2020 infringement contentions—particularly as to the '177

Patent—did not make dispositive findings of disputed fact (i.e. as to the meaning of the word "digitized" and the specific operation ████████ as a factual matter). As such, ParkerVision does not believe that the Court's prior Order acted to strike or otherwise limit the theories of infringement contained in ParkerVision's 2015 infringement contentions or ParkerVision's expert report which, for the reasons explained herein, is consistent with ParkerVision's 2015 infringement contentions.

### CERTIFICATION PURSUANT TO LOCAL RULE 3.01(G)

The parties have conferred about the substance of this Motion. Defendants oppose the relief requested.

April 2, 2021                                        Respectfully submitted,

                                                    **MCKOOL SMITH, P.C.**

                                                    By:*/s/ Douglas A. Cawley*
                                                    Douglas A. Cawley
                                                    Texas State Bar No. 04035500
                                                    dcawley@mckoolsmith.com
                                                    Richard A. Kamprath
                                                    Texas State Bar No. 24078767
                                                    rkamprath@mckoolsmith.com
                                                    300 Crescent Court, Suite 1500
                                                    Dallas, Texas 75201
                                                    Telephone: (214) 978-4000
                                                    Facsimile: (214) 978-4044

                                                    Joshua W. Budwin
                                                    Texas State Bar No. 24050347
                                                    jbudwin@mckoolsmith.com
                                                    Leah Buratti
                                                    Texas State Bar No. 24064897

lburatti@mckoolsmith.com
Matt Cameron
Texas State Bar No. 24097451
mcameron@mckoolsmith.com
Peter M. Hillegas
Texas State Bar No. 24101913
phillegas@mckoolsmith.com
R. Mitch Verboncoeur
Texas State Bar No. 24105732
mverboncoeur@mckoolsmith.com
George G. Fishback, Jr.
Texas State Bar No. 24120823
gfishback@mckoolsmith.com
300 West Sixth Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

**CALDWELL CASSADY & CURRY**
Kevin L. Burgess
Texas State Bar No. 24006927
2121 N. Pearl Street, Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (212) 888-4849
kburgess@caldwellcc.com

**SMITH HULSEY & BUSEY**
Stephen D. Busey
Florida Bar Number 117790
John R. Thomas
Florida Bar Number 77107
One Independent Dr., Suite 3300
Jacksonville, Florida 32202
Telephone: (904) 359-7700
Facsimile: (904) 359-7708
busey@smithhulsey.com
jthomas@smithhulsey.com
***ATTORNEYS FOR PLAINTIFF
PARKERVISION, INC.***

19

## CERTIFICATE OF SERVICE

I certify that on April 2, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: none.

*/s/ Leah Buratti*