# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**PARKERVISION, INC.,**

      **Plaintiff,**

v.                                       Case No: 6:14-cv-687-PGB-LHP

**QUALCOMM INCORPORATED and QUALCOMM ATHEROS, INC.,**

      **Defendants.**

## SEALED ORDER

This cause is before the Court on Qualcomm's Motion for Summary Judgment of Noninfringement and Invalidity (Doc. 538 (the "**Motion**")). ParkerVision has submitted a Response in Opposition (Doc. 572), and Qualcomm filed a Reply (Doc. 568). Following oral argument and upon due consideration, the Motion is granted.[1]

## I.    BACKGROUND

Qualcomm moves for summary judgment of non-infringement of the '907 and '940 Patents. (Doc. 538, p. 2). Qualcomm argues ParkerVision is precluded from asserting its receiver claims based on collateral estoppel from *ParkerVision,*

---

[1] ParkerVision and Qualcomm entered into a Joint Stipulation and Motion for Entry of Judgment of Non-Infringement of the '177 Patent. (Doc. 650). Accordingly, Qualcomm's Motion for Summary Judgment of Invalidity as to the '177 Patent is rendered moot. Similarly, ParkerVision dismissed claim 107 of the '372 Patent (Doc. 670), rending the instant motion moot as to that claim. Finally, this Order renders Qualcomm's motion for summary judgment on willfulness moot.

*Inc. v. Qualcomm Inc.*, 621 F. App'x 1009 (Fed. Cir. 2015) ("***ParkerVision I***"). Qualcomm submits that "ParkerVision had a full and fair opportunity to litigate in *ParkerVision I* whether Qualcomm's products generate the baseband signal using energy transferred to an energy storage device (i.e., capacitor)." (*Id.* at p. 2). Since the accused devices were found in *ParkerVision I* to downconvert using double-balanced mixers to create the baseband signal, Qualcomm argues they do not infringe the receiver claims of the '907 and '940 Patents. (*Id.* at p. 3).

Qualcomm further contends that the accused products do not infringe the transmitter claims of the '940 and '372 Patents because "[e]ach Transmitter Claim requires a harmonically rich signal;" that is, a signal with a plurality of harmonics. (*Id.* at p. 12). Since Qualcomm's accused products suppress the signal at the local oscillator ("**LO**") frequency and its integer multiples, they do not infringe the transmitter claims. (*Id.* at pp. 12–14). Qualcomm also contends the accused products do not infringe the asserted claims of the '372 Patent because they do not sum in the order required by the patent. (*Id.* at pp. 20–21).

Finally, Qualcomm's Motion must be viewed considering the Court's Order granting Qualcomm's Motion to Strike and Exclude Opinions Regarding Alleged Infringement and Validity Issues.[2] (Doc. 682). In its Order, the Court granted Qualcomm's motion to give preclusive effect to factual findings from *ParkerVision I* which were affirmed by the Federal Circuit. (*Id.* at pp. 16–18). Specifically, the

---

[2]   The Court's Order is incorporated by reference herein.

Court gave preclusive effect to the Federal Circuit's finding that the baseband signal was created before, or upstream from, the storage capacitor in the accused products. (*Id.* at p. 17). The Court also granted Qualcomm's Motion to Exclude the opinions of ParkerVision's expert, Dr. Steer, concerning whether the accused products have harmonically rich signals as required by the '940 and '372 Patents, and whether they sum signals in the order required by the '372 Patent. (*Id.* at pp. 29, 31).

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials," but may also consider any other material in the record. FED. R. CIV. P. 56(c)(3).

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating a lack of genuine dispute of material

3

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows "an absence of evidence to support the nonmoving party's case," the burden then shifts to the non-moving party to show that there are, in fact, genuine disputes of material facts. *Celotex*, 477 U.S. at 325; *see also Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006), *cert. denied*, 549 U.S. 996 (2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must go beyond the pleadings and "come forward with specific facts showing that there is a genuine issue for trial." *Id.* at 587 (emphasis and internal quotation marks omitted); *see also Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (holding that a non-movant carries its burden on summary judgment only by "identify[ing] affirmative evidence" which creates a genuine dispute of material fact).

In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587.

## III.  DISCUSSION

### A.  Non-Infringement of the Receiver Claims[3]

What at first glance appears to be a thorny issue is easily resolved when one applies the factual findings of the Federal Circuit in *ParkerVision I* to the facts in controversy. First, it is beyond dispute that the accused products are the same in this litigation as those involved in *ParkerVision I*.[4] And secondly, Qualcomm's expert, Dr. Razavi, opines that the Receiver Claims at issue here have the same requirements as the claims in *ParkerVision I*, including the "generating limitation."[5] (Doc. 538, p. 5 (quoting Dr. Razavi's opening report, Doc. 573-5, ¶¶ 565–84, 632–34, and Dr. Razavi's rebuttal report, Doc. 573-1, ¶¶ 805–28)). Accordingly, to infringe the patents-at-issue the accused products must produce the baseband signal using energy stored (or "accumulated") in an energy storage device (i.e., capacitor), as was the case in *ParkerVision I*. (Doc. 573-5, ¶¶ 565–71). This issue was resolved in *ParkerVision I* against Plaintiff, and the same outcome must be reached in the case before this Court.

---

[3]  The Receiver Claims are claims 1 and 10 of the '907 Patent and claims 24 and 331 of the '940 Patent.

[4]  ParkerVision stipulated at oral argument that the accused products in the instant case are the same as those involved in *ParkerVision I*. (Doc. 677, 98:3–6, 98:19—99:2). Qualcomm's expert, Dr. Razavi, confirmed that all the accused products here use the same fundamental receiver circuitry at issue in *ParkerVision I*; that is, "double-balanced mixers followed by low-pass filters and trans-impedance amplifier." (Doc. 573-1, ¶¶ 48-94).

[5]  The issue, as Qualcomm points out, is whether the claims are materially different from those in *ParkerVision I*. (Doc. 568, p. 2). And ParkerVision's expert does not rebut Qualcomm's expert's opinion that the claims are not materially different.

5

Additionally, there is no material dispute over whether the claims at issue here are materially similar to those in *ParkerVision I*. Qualcomm correctly notes that ParkerVision's expert failed to compare claims or elements from the *ParkerVision I* patents to the Receiver Claims at issue in this case. (Doc. 538, p. 6). Therefore, Dr. Razavi's opinion that the Receiver Claims at issue have the same generating limitation as the claims at issue in *ParkerVision I* is unrebutted. Now one need only apply the factual findings in *ParkerVision I* to the instant dispute. In *ParkerVision I*, the Federal Circuit made the following factual findings, which this Court has given preclusive effect:

> (1) 'ParkerVision's infringement expert [Dr. Prucnal] conceded that in the accused produces the baseband signal was created before, or upstream from, the storage capacitor'; (2) 'Dr. Prucnal testified that the accused products . . . [use] a specific type of circuitry called a double-balanced mixer'; (3) '[i]t is undisputed that double-balanced mixers . . . can be used to convert high-frequency carrier signals into low-frequency baseband signals'; (4) Dr. Prucnal admitted 'the double-balanced mixer create the baseband signal'; and (5) in its opinion on ParkerVision's motion for reconsideration, held the double-balanced mixer eliminates the carrier signal.

(Doc. 682, p. 18 (quoting *ParkerVision I*, 621 F. App'x at 1012–14)). The Federal Circuit found none of the accused products in *ParkerVision I* infringe because a "baseband current already exists before the current from the carrier signal reaches the capacitors." 621 F. App'x at 1013, 1016.

In the instant case, ParkerVision's expert conceded that the patents-at-issue require the production of a lower-frequency signal using energy that has been transferred from a higher-frequency signal into a storage medium. (Doc. 573-9,

74:18-24). Since the baseband signal in the accused devices is produced at the output of the double-balanced mixers, the accused devices do not infringe and summary judgment in favor of Qualcomm on the Receiver Claims is warranted.[6]

### B. Non-Infringement of the Transmitter Claims

The Transmitter Claims of the '940 and '372 Patents require a harmonically rich signal.[7] The parties agree the proper construction of "harmonically rich signal" is "[a] signal comprised of a plurality of harmonics." (Doc. 381, p. 9). "ParkerVision alleges the local oscillator (LO) frequency and its integer multiples are the infringing harmonics of the accused signal." (Doc. 538, pp. 12–13) (citations to record omitted). In response, Qualcomm argues the accused products do not infringe, because the accused signals are "suppressed at the LO frequency" and its integer multiples. (*Id.* at pp. 12–14). Qualcomm's expert opines that "[t]he mixer is . . . designed with great care and is calibrated so it does not generate a signal at the center frequency, i.e., at the LO frequency. . . Thus, there is no signal at the frequencies LO, 3LO, 5LO, . . ." (*Id.* at p. 14) (citations to Dr. Razavi's report omitted). The Court previously struck the opinion of ParkerVision's expert, Dr.

---

[6] The Court agrees with Qualcomm that ParkerVision's expert, Dr. Steer, may not offer a new theory for the first time at his deposition wherein he contends the double-balanced mixers do not create a "usable downconverted signal." (Doc. 568, p. 4). This is particularly true where, as here, the replacement expert offers a theory that contradicts ParkerVision's original expert, Dr. Pruncal, who conceded that the double-balance mixers produce the baseband signal upstream of the capacitors. (*Id.* at p. 5) (record citations omitted); *see also ParkerVision I*, 621 F. App'x at 1013–14. And this Court permitted ParkerVision to substitute its expert provided the expert did not "expand the parameters, analysis, conclusions, or scope of the Original Expert's opinions." (Doc. 479, p. 7).

[7] The Transmitter Claims are claims 22 and 25 of the '940 Patent and claims 99 and 126 of the '372 Patent.

7

Steer, on whether the accused products have a harmonically rich signal, (Doc. 682, pp. 28–29), leaving Dr. Razavi's opinion of non-infringement unrebutted.[8]

Turning to the '372 Patent, Qualcomm moves for summary judgment on the basis that claims 99 and 126 of the patent requires summing signals in a specific order[9], and the accused products do not satisfy those claims. (Doc. 538, p. 20 (quoting Dr. Razavi's report at Doc. 573-1, ¶¶ 668–88)). Qualcomm supports its argument by citing a diagram of the summing sequence required by the '372 Patent, to which the Plaintiff offers no objection. (Doc. 538, p. 20). Next, Qualcomm identifies the way the accused products sum signals to show they do not infringe the '372 Patent. (*Id.* at p. 21) (citations to the record omitted). Since the Court struck Dr. Steer's summing opinion, Dr. Razavi's opinions regarding what the claims require versus how the products function is uncontested. Accordingly, Qualcomm is entitled to summary judgment of non-infringement of the '940 and '372 Patents.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Qualcomm's Motion for Summary Judgment of Noninfringement of the '907, '940, and '372 Patents (Doc. 538) is **GRANTED**.

---

[8] The Court also excluded the expert testimony of ParkerVision's expert, Mr. Sorrells. (Doc. 682, pp. 29–30).

[9] (*See* Doc. 573-1, ¶¶ 664, 681–82, 673, 679).

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Qualcomm Inc. and against Plaintiff ParkerVision, Inc.

3. The Clerk is **DIRECTED** to terminate any pending deadlines and close the file.

**DONE AND ORDERED** in Orlando, Florida on March 22, 2022.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

9