# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PARKERVISION, INC.,

               Plaintiff,

    v.

QUALCOMM INCORPORATED, and
QUALCOMM ATHEROS, INC.,

               Defendants.

Case No. 6:14-cv-00687-PGB-LRH

## PARKERVISION'S OPPOSITION TO QUALCOMM'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF (DKT. 745-1)

# **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................... 1

II. ARGUMENT ............................................................................................ 3

  A.  "whereby the energy provided to the load forms a down-
      converted signal" ('907 patent) ........................................................ 3

    1.  ParkerVision's Explanation of the Claims Has Been
        Consistent ................................................................................. 5

    2.  The Federal Circuit Agreed with ParkerVision's
        Explanation ............................................................................... 7

    3.  The Court Previously Agreed with ParkerVision's
        Explanation ............................................................................. 10

    4.  This Issue Has Been Conclusively Resolved Against
        Qualcomm as a Matter of Law ................................................ 11

  B.  "a storage device storing energy from said UFT module" ('940
      patent) ............................................................................................ 13

III. CONCLUSION ...................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Hill-Rom Servs. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. June 27, 2014) ........................................................ 10

*Intel Corp. v. Qualcomm Inc.*,
   21 F.4th 801 at 810, (Fed. Cir. 2021) ........................................................ 16, 17

*Miccosukee Tribe of Indians of Fla. v. United States Army Corps of Eng'rs*,
   619 F.3d 1289 (11th Cir. 2010) ........................................................ 11

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................ 13, 15

*Omnia Med., LLC v. Painteq, LLC*,
   2023 U.S. Dist. LEXIS 113886 ........................................................ 3, 13

*Parkervision, Inc. v. Qualcomm Inc.*,
   116 F.4th 1345 (Fed. Cir. 2024) ........................................................ passim

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002) ........................................................ 10

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. Feb. 1, 2012) ........................................................ 10

*Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*,
   2023 U.S. Dist. LEXIS 97507 ........................................................ 13

## I.    INTRODUCTION

Qualcomm seeks reconsideration of the Court's December 9, 2024 Order declining its oral request for construction of new claim terms not presented or raised in either of the first two *Markman* hearings. *See* Dkt. 726. at 1; *see generally,* Dkt. 745 (Motion for Reconsideration). Consistent with the Court's Order, no new claim construction of any term is warranted. Dkt. 726 at 1. Qualcomm's attempt to add a *generating* limitation to the claims of U.S. Patent No. 7,218,907 ("the '907 patent") and U.S. Patent No. 6,091,940 ("the '940 patent")—where none exists—should be recognized for what it is: an end run around the Federal Circuit's determination that collateral estoppel does not apply since no *generating* limitation is recited in the claims at-issue here. The intrinsic evidence of the '907 and '940 patents, along with the Federal Circuit opinion, could not be more clear that down conversion in the claims at-issue is performed by one or more switch(es).

The Court should reject Qualcomm's proposed claim construction "re-do" (Dkt. 745-1) and move forward with trial as expeditiously as possible.

Qualcomm seeks to read in a *generating* limitation to claim terms that do not recite one: (i) "whereby the energy provided to the load forms a down-converted signal" (from claim 1 in the '907 patent); and (ii) "a storage device storing energy from said UFT [Universal Frequency Translation] module"—which is built from a switch (from claim 24 in the '940 patent). But no such limitation exists in the claims as written. Nor do standard claim-construction principles based on the intrinsic evidence of the patents support that *forming* (at-issue in the '907 patent here) and *generating* (at-

issue in *ParkerVision I*[1]) are the same. Importantly, and as explained in more detail
herein, the '907 claims "form" the already "down-converted [by the switches] signal"
based (in-part) on already down-converted energy that never even goes into the
"energy storage device." Down conversion by the use of switch(es) is clearly taught in
the '907 patent with no alternate down conversion teachings.

Likewise, no intrinsic evidence supports adding an entirely new claim phrase
containing the word *generate* to the '940 patent—"and using that energy to generate a
down-converted signal"—where no such phrase exists in the claim as written or in any
intrinsic source of meaning. To the contrary, the '940 patent explicitly teaches that
down conversion is performed by a "UFT module" that comprises nothing more than
a switch operated according to an aliasing rate.

Qualcomm's arguments have already been rejected by this Court and the
Federal Circuit anyway. Although Qualcomm failed to advance these arguments as
part of the Court-mandated *Markman* proceedings (as required), both the Federal
Circuit and this Court (in its Order denying Qualcomm's first collateral estoppel
summary judgment motion) have correctly determined that no claim at-issue here is
materially the same as any claim at-issue in *ParkerVision I*. That matters because
Qualcomm built its non-infringement defense in *ParkerVision I*, and its collateral
estoppel arguments in this case, around the *generating* limitation. *See Parkervision, Inc.
v. Qualcomm, Inc.* 116 F.4th 1345 at 1356, 1359 (Fed. Cir. 2024); *see also* Dkt. 348 at 16-

---

[1] Also referred to by the Federal Circuit as the "2011 Action."

18. As this Court and the Federal Circuit have determined, that limitation is not present here. No *generating* limitation is recited in any claim of the '907 and '940 patents. And no intrinsic evidence mandates "reading-in" such a limitation. Further, because the Federal Circuit and this Court have determined that the claims at-issue here are different from the claims at-issue in *ParkerVision I* as a matter of law, it has already been decided that the claims at-issue here do not require a *generating* limitation.

The Court should reject Qualcomm's attempt to re-write the claims in an effort to "undo" its Federal Circuit loss.

## II.    ARGUMENT

### A.    "whereby the energy provided to the load forms a down-converted signal" ('907 patent)

| Claim Term | ParkerVision Proposal | Defendants' Proposal |
|---|---|---|
| whereby the energy provided to the load forms a down-converted signal | plain and ordinary meaning | whereby the energy provided to the load generates a down-converted signal |

Under Federal Circuit precedent, unless the intrinsic record mandates a different understanding of a claim term, claims are to be construed according to their plain and ordinary meaning. *Omnia Med., LLC v. Painteq, LLC*, 2023 U.S. Dist. LEXIS 113886, *6; *accord* 116 F.4th at 1357 ("The proper approach to determining claim scope is to 'look first to the intrinsic evidence of record, i.e. the patent itself, including the claims, the specification and, if in evidence, the prosecution history.'"). Notwithstanding this clear precedent, Qualcomm seeks to "read-in" a *generating*

3

limitation based almost entirely on extrinsic sources of meaning and without regard to
the Federal Circuit's clear statement that Qualcomm was in the appeal—as it is now—
seeking to improperly "read into the receiver claims a [*generating*] limitation that is not
expressly recited in [them]." 116 F.4th at 1357 n.4.[2]

There is no *generating* limitation included in claim 1 of the '907 patent, which
recites:

> A method for down-converting an electromagnetic signal, comprising:
>
> periodically coupling an electromagnetic signal that includes a carrier
> signal to an energy storage device and a load, wherein the periodic
> couplings occur at a rate less than twice the frequency of the carrier
> signal;
>
> providing, during the periodic couplings, energy from the
> electromagnetic signal to the energy storage device, thereby changing an
> amount of energy stored by the energy storage device;
>
> providing, during the periodic couplings, energy from the
> electromagnetic signal to the load; and
>
> providing, between the periodic couplings, energy from the energy
> storage device to the load, thereby changing the amount of energy stored
> by the energy storage device;
>
> whereby the energy provided to the load forms a down-converted signal.

---

[2] ParkerVision and Qualcomm filed claim construction briefs in 2015, followed by a *Markman*
hearing. Dkts. 148, 171, and 198. ParkerVision then narrowed its case by dismissing
previously asserted receiver patents containing *generating* limitation language. *See* Dkt. 228 at
1-2; Dkt. 284 at 2-3. Additional claim construction briefing was filed and a second *Markman*
hearing was held in 2020. Dkts. 317, 324 and 333. The *Markman* stage finally ended when this
Court issued its claim construction order on April 29, 2020. Dkt. 381. At no point during that
*five-year* process—despite the co-pendency of its collateral estoppel briefing (*see* Dkts. 318, 327,
and 348)—did Qualcomm propose any of the newly identified terms or their new
constructions for '907 or '940 patents.

'907 patent, claim 1 (emphasis added). Qualcomm argues that the last claim phrase
must be limited such that the energy provided to the load *generates* a down-converted
signal. Qualcomm further asserts that ParkerVision proffered new claim construction
of this term during summary judgment and on appeal to the Federal Circuit. Tellingly,
Qualcomm fails to provide any citation to the record where ParkerVision did so. Mot.
Ex. A at 1, 3, 10.

### 1.    ParkerVision's Explanation of the Claims Has Been Consistent

Notwithstanding Qualcomm's assertions, ParkerVision has been uniformly
consistent in explaining how the claims at-issue work. *See e.g.* Dkt. 327 (ParkerVision's
October 2019 Opposition to Qualcomm's first Collateral Estoppel Summary
Judgement Motion); Dkt. 327-1 (the declaration of ParkerVision's then-expert Dr.
Allen in support of same); Dkt. 348 (Court's Order denying Qualcomm's Motion). As
ParkerVision explained therein, "[o]ne need only glance at the asserted claims of the
'907 and '177 patents to confirm that they lack 'generating' limitations. None of those
claims uses the word 'generate,' or any variant, in any context." Dkt. 327 at 10. As
Qualcomm did in its 2019 summary judgment briefing, it again "abstracts" what the
claims at-issue here require in an attempt to inject a *generating* limitation where none
exists. *See generally id.* at 13-17.

As ParkerVision explained in its October 2019 opposition to Qualcomm's first
Collateral Estoppel Summary Judgment Motion (entirely consistent with the Federal
Circuit's explanation of the claims issued some five years later in October 2024):

> [T]he '907 claims require that the "energy provided to the load," which
> "forms a down-converted signal," come not only from an energy storage
> device but also from the electromagnetic signal itself. Allen Dec. ¶ 12.
> Thus, far from requiring that "the baseband signal" be "generated" by
> the charging and discharging of a capacitor, the claims require "a down-
> converted signal" be formed in a load using energy taken directly from
> the electromagnetic signal, without charging and discharging a capacitor.

*Id.* at 14-15. This is consistent with the supporting expert declaration which made clear

that in the asserted claims of the '907 patent:

> It is the "periodic coupling," mentioned in four of the five elements of
> claim 1, that performs the down-conversion at the switch. The down-
> converted energy is then provided to the load, where the claim explicitly
> describes forming the down-converted signal. The load doesn't down-
> convert anything, it can just shape the down-converted signal provided
> to it from the switch and the energy storage device.

Dkt. 327-1 at ¶ 12 (Declaration of Dr. Allen).[3] In other words, there is no *generating*

limitation in the claims of the '907 patent because the literal language of the claims as

written require: (i) a switch that "periodically couples" the input "electromagnetic

signal" to the load; (ii) "during the periodic couplings" (i.e. when the switch is closed)

energy from the already down-converted-by-the-switch signal goes to *both* the "energy

storage device" (like a capacitor) and "the load"; (iii) "between the periodic couplings"

(i.e. when the switch is open) energy from the already down-converted-by-the-switch

---

[3] The Federal Circuit favorably remarked on Dr. Allen's explanation, stating "it is evident
and indisputable that [ParkerVision's expert] repeatedly opined that there are material
differences in the scope of the claims involved in the two cases that would materially alter the
question of infringement. In particular, ParkerVision's expert opined that Qualcomm's
accused products infringe the asserted receiver claims of the '907 and '940 patents because the
'down converted signal exists at the output of the mixer,' [*i.e.* the switch] which is a point
before the capacitor." 116 F.4th at 1357.

A "mixer" is a collection of one or more "switches."

signal, previously stored in the "energy storage device," is then provided to the load;
and (iv) (both when the switch is open and when the switch is closed) the already
down-converted-by-the-switch "energy provided to the load" "forms a down-
converted signal." This is shown in the figure below.[4]



### 2.    The Federal Circuit Agreed with ParkerVision's Explanation

ParkerVision's October 2019 explanation of the claims, as summarized above,
is fully consistent with the Federal Circuit's October 2024 opinion:

> Neither of the illustrative receiver claims (claim 1 of the '907 patent and
> claim 24 of the '940 patent) contains an explicit requirement that the
> down-converted signal be generated from energy transferred to an energy
> storage device. That is, the receiver claims asserted in the 2014 Action[5]

---

[4] Figure VI.A-3, Initial Expert Report of Dr. Phillip Allen, Oct. 9, 2020, ¶¶44-46. This figure
has also been included in various other filings, including ParkerVision's Federal Circuit brief.
Corr. Brief for Appellant ParkerVision, Inc., at 11, Oct. 24, 2022.
[5] The Federal Circuit refers to this case as the "2014 Action," to distinguish it from
*ParkerVision I.*

do not appear, on their face, to require the "generating limitation" that
turned out to be fatal to ParkerVision's infringement case in the 2011
Action.

116 F.4th at 1352; *see also id*. at 1357 (Further determining that "[b]ecause the claims

in *ParkerVision I*, containing the generating limitation, could only be infringed if the

down-conversion occurred at a point at or after the capacitor, *see ParkerVision I*, 621 F.

App'x at 1013-16, the expert's infringement opinion was necessarily predicated on his

understanding that the claims asserted here do not contain the generating limitation.").

Even though the Federal Circuit determined that "on their face" the claims at-issue *do

not* include a *generating* limitation, Qualcomm nonetheless invites the Court to "read-

in" such a limitation in direct contravention to the Federal Circuit's determination.

Even more expressly showing harmony with ParkerVision's long held

explanation of the claims at-issue, the Federal Circuit favorably discussed the

declaration of Dr. Allen quoted in-part above:

> ParkerVision's first expert, Dr. Allen, submitted a declaration (more on
> that below) opining that claim 1 of the '907 patent "describes the energy
> that is provided to the load (during periodic couplings) from the
> electromagnetic signal, *without passing through the energy storage device*,"
> adding that "energy provided to the load, including the energy provided
> *directly from the electromagnetic signal*, forms a down-converted signal."
> J.A. 10091 (emphasis added). This opinion is plainly in conflict with the
> generating limitation's requirement that down-conversion occur "using
> energy that has been transferred . . . into a storage medium."

*Id*. at 1357-1358 (emphasis in original). As the Federal Circuit then explained,
in no uncertain terms:

> ***None of the asserted receiver claims of the '907 or '940 patents expressly
> includes the generating limitation or appears to otherwise include a
> requirement that the down-converted signal be generated from the energy
> transferred to an energy storage device, such as a capacitor***. That is, none of

8

the asserted receiver claims in this case appears to require that the down-conversion occur at or after the capacitor; ***instead, the claims involved here appear to permit the down-conversion to occur before the capacitor. In fact, ParkerVision's infringement contentions allege, with expert support, that the capacitor may not even be involved in the down-conversion***.

*Id*. at 1359 (emphasis added).[6]

ParkerVision's position has thus been fully consistent with—and expressly endorsed by—the Federal Circuit: ***there is no "generating" limitation present in any asserted claim of the '940 patent***. Qualcomm's assertion that the specification supports its proposed construction is meritless. Qualcomm cherry-picks that because *forms* is not discussed in the '907 patent's specification in conjunction with *shape, shapes* or *shaping,* that this is an indication that *forms* must be synonymous with *generates*; however, with

---

[6] The Federal Circuit went so far as to remark: "[a]bsent a claim construction finding a generating limitation or similar requirement to be part of the claims, the Qualcomm accused products might infringe the receiver claims in this action even if they are found to down-convert the signal before the capacitor." 116 F.4th at 1359. In light of this statement, Qualcomm desperately wants this Court to read-in a *generating* limitation to provide it with a potential non-infringement argument—notwithstanding the Federal Circuit's clear guidance to the contrary—because it recognizes that its "switch down converting" products at-issue here will likely be found to infringe absent such a "claim construction Hail Mary." *See also id.* at 1356 (The Federal Circuit explaining that "[t]he parties have stipulated that the accused products at issue here operate, in all material respects, in the same manner as the products accused of infringement in the 2011 Action."); *see also id.* at 1351 (Federal Circuit remarking that in *ParkerVision I* they determined that the "Qualcomm products obtained the [down-converted] baseband signal from 'somewhere other than' the energy stored in the capacitors, precluding a finding of infringement."). In its JMOL briefing and Federal Circuit briefing in *ParkerVision I*, Qualcomm was express in explaining that in its products the "double-balanced mixer"—i.e., the switches—that exist before the energy storage device did the down conversion. *ParkerVision I* Response and Principal Cross-Appeal Brief of Defendant-Cross-Appellant Qualcomm Inc. at 5, 11-19 (Fed. Cir. Nov. 20, 2014); *see also ParkerVision I* Dkt. 501, Qualcomm's Renewed Mot. for JMOL at 2, 10-12 (Dec. 20, 2013). ParkerVision's infringement theory in this case is fully consistent with how the claims at-issue here work (as explained herein) and how Qualcomm and the Federal Circuit (in *ParkerVision I*) explained how the accused products at-issue in both cases work: the switches (in the mixers and before the capacitors) in Qualcomm's products create the down-converted signal.

literally nothing in the intrinsic record, Qualcomm reverses course in its very logic and
insists that the '940 and '907 patents must read into the claims the *generating* limitation.
In order to find disclaimer/disavowal or lexicography, the Federal Circuit requires a
clear and express intention to limit the scope of a claim term (e.g. to avoid prior art)
or to provide a lexicographical definition of a term. *Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313, 1327 (Fed. Cir. 2002) (holding that disavowal of claim scope requires
"redefining the term" or "characterizing the invention in the intrinsic record using
words or expressions of manifest exclusion or restriction"): *Thorner v. Sony Computer
Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. Feb. 1, 2012) ("To act as its own
lexicographer, a patentee must 'clearly set forth a definition of the disputed claim' term
other than its plain and ordinary meaning."); *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d
1367, 1372 (Fed. Cir. June 27, 2014) (finding no "disclaimer or lexicography" because
there were "no words of manifest exclusion or restriction," and "[n]othing in the
specification or prosecution history makes clear that the invention [was] limited" to a
specific embodiment). Neither is present here, and Qualcomm has failed to carry its
burden to show otherwise.

### 3. The Court Previously Agreed with ParkerVision's Explanation

Like the Federal Circuit, this Court also previously determined that the scope
of the asserted receiver claims are materially different from the claims at issue in
*ParkerVision I* when it denied Qualcomm's Motion for Partial Summary Judgment.
Dkt. 348 at 18-19. Qualcomm argued that the receiver claims of the '907 patent
included the "same concept" as the *generating* limitation of the claims asserted in

*ParkerVision I*. *Id*. at 14. In making its determination, the Court acknowledged
ParkerVision's submission "that claim 1 of the '907 patent requires that 'energy
provided to the load forms a down-converted signal,'" and thus does "not require a
baseband signal and [does] not require any signal to be 'generated' using an 'energy
storage device' to down-convert a high frequency signal." *Id*. at 17. Like the Federal
Circuit, the Court credited ParkerVision's arguments in holding that Qualcomm failed
"to show that there is no material difference between the patents-at-issue in
*ParkerVision I* and the claims now asserted by ParkerVision, that is, the identity of the
issues." *Id*. at 18. The Federal Circuit endorsed the Court's position in denying
Qualcomm's later attempts at collateral estoppel. 116 F. 4d at 1353, 1354, 1358-1359.

### 4. This Issue Has Been Conclusively Resolved Against Qualcomm as a Matter of Law

Collateral estoppel, like claim construction, is an issue of law. Whether
collateral estoppel applies is a question of law reviewed de novo. *Miccosukee Tribe of
Indians of Fla. v. United States Army Corps of Eng'rs*, 619 F.3d 1289, 1296 (11th Cir. 2010).
"Collateral estoppel applies when (1) the issue is identical to one decided in the first
action; (2) the issue was actually litigated in the first action; (3) resolution of the issue
was essential to a final judgment in the first action; and (4) plaintiff had a full and fair
opportunity to litigate the issue in the first action." Dkt. 348 at 12 (citing *In re Freeman*,
30 F.3d 1459, 1465 (Fed. Cir. 1994); *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354,
1359 (11th Cir. 1998)). The issues raised in Qualcomm's motion were expressly
resolved by the Court's denial of Qualcomm's Motion for Partial Summary Judgment

finding a "material difference between the patents-at-issue in *ParkerVision I* and the claims now asserted by ParkerVision," and the Federal Circuit's determination that summary judgment of non-infringement based on collateral estoppel was not warranted. Dkt. 348 at 18; 116 F. 4d at 1345, 1364.

Qualcomm argues that ParkerVision's reliance on certain figures—Figure 82A to describe *generating* a down-converted signal using transferred energy, and Figures 57E and 57F to describe examples of a *shaped* signal—is contrary to ParkerVision's characterization of the asserted claims and supportive of "reading-in" the *generating* limitation language. Mot. Ex. A at 8-10. Similar arguments were made with regard to Figure 126A. Mot. Ex. A at 10-12. However, the Federal Circuit rejected this line of inquiry, noting that although ParkerVision relied on the same figures to explain the receiver claims in *ParkerVision I* and the current action, "generalized acknowledgments of some overlap between the claims do not, however, constitute admissions that the patent claims themselves are materially the same in the two actions." 116 F.4th at 1360. And, of course, the Federal Circuit found that the claims at-issue here are *not* materially the same as those at-issue in *ParkerVision I* where the *generating* limitation was front and center.

Qualcomm also argues that claim construction is necessary because a *plain and ordinary meaning* instruction to the jury of the meaning and scope of *forms* in the phrase "whereby the energy provided to the load forms a down-converted signal" is inadequate (yet, it never explains how injecting *generates* would somehow be more

adequate). However, the court in *O2 Micro* recognized that "district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims," including when, as here, the disputed issue is the proper application of a claim term to an accused product rather than the scope of the term. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1362 (Fed. Cir. 2008) (emphasis in original) (citing *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001)). This Court has already determined that additional claim construction is improper. Dkt. 726 at 1. "[W]here a district court determines that a claim term does not require further construction, that term receives its plain and ordinary meaning as understood by a person of skill in the art." *Wherevertv, Inc. v. Comcast Cable Commc'ns, LLC*, 2023 U.S. Dist. LEXIS 97507, *11; *See also, Omnia Med., LLC*, 2023 U.S. Dist. LEXIS 113886, *6.

Qualcomm's newly proposed claim construction related to the '907 patent is unsupported by the intrinsic and extrinsic evidence, and is inconsistent with the understanding of ParkerVision's experts. Further, this Court and the Federal Circuit resolved these issues in previous orders and decisions. The Court should reject Qualcomm's proposed construction and move forward with trial.

**B.    "a storage device storing energy from said UFT module" ('940 patent)**

| Claim Term | ParkerVision Proposal | Defendants' Proposal |
|---|---|---|
| a storage device storing energy from said UFT module | No construction proposed | a storage device storing energy from said UFT module and using that energy to generate a down-converted signal |

Defendants seek additional claim construction on claims 24 and 331 of the '940

patent, which recites:

> The apparatus of claim 22, wherein said receiving subsystem comprises:
>
> an aliasing module, further comprising:
>
> *a universal frequency translation (UFT) module, said UFT module aliasing an electromagnetic signal according to an aliasing signal having an aliasing rate to down-convert said electromagnetic signal, and transferring energy from said electromagnetic signal at said aliasing rate*;
>
> a signal generator generating said aliasing signal, said aliasing signal comprising a plurality of pulses having non-negligible apertures; and
>
> a storage device storing energy from said UFT module.

'940 patent, claim 24. As described in footnote 1, despite multiple opportunities to do

so previously, Defendants now seek construction of the term "a storage device storing

energy from said UFT module." Qualcomm argues that this term requires—despite all

of the foregoing discussion of the Federal Circuit's and this Court's prior opinions—

the wholesale addition of a claim phrase requiring that a storage device uses stored

energy to *generate* a down-converted signal. However, and as explained above, the

Federal Circuit (and this Court in its prior Order) have conclusively rejected reading

the claims to require that energy stored in an energy storage device is used to *generate*

14

the down-converted signal. *See supra* Arguments § I.A.2 and I.A.3.; *see also* 116 F.4th at 1359 (emphasis added) (Federal Circuit determining, in express contravention to Qualcomm's contrived proposed construction here, that "[n]one of the asserted receiver claims of the '907 or '940 patents expressly includes the generating limitation *or appears to otherwise include a requirement that the down-converted signal be generated from the energy transferred to an energy storage device, such as a capacitor*.").

In the face of the Federal Circuit's clear statements to the contrary, Qualcomm nonetheless asks this court to "read-in" its new claim phrase containing a *generating* requirement because, according to Qualcomm, ParkerVision allegedly proffered new claim construction of this term during summary judgment, and on appeal to the Federal Circuit. But, and as with the prior term Qualcomm unsurprisingly, fails to provide a citation to said supposed construction. Mot. Ex. A at 2, 15. And, in any event, as explained in detail above, ParkerVision's explanation of the claims, as endorsed by the Federal Circuit, has been consistent throughout. *See supra* Argument § I.A.1.

As with the '907 patent, the intrinsic record for the '940 patent remains unchanged, as it has for the past decade. No intrinsic evidence supports limiting the '940 patent claims in the manner proposed by Qualcomm. There is no support for reading a new phrase into claim 24 of the '940 patent, or even that such additional language is necessary. Qualcomm is not entitled to imagine new interpretations of the claim in order to manufacture a non-infringement argument. *See e.g. supra* FN 5. The *O2 Micro* analysis is applicable here as well – i.e., "district courts are not (and should

not be) required to construe *every* limitation present in a patents asserted claims." 521
F.3d 1351 at 1362.

Further, the Federal Circuit instructs that "[i]t is highly disfavored to construe
terms in a way that renders them void, meaningless, or superfluous." *Intel Corp. v.
Qualcomm Inc.*, 21 F.4th 801 at 810, (Fed. Cir. 2021). (quoting *Wasica Finance GmbH v.
Continental Automotive Systems, Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017). Claim
24 explains that the UFT module down-converts the signal: "***said UFT module aliasing
an electromagnetic signal*** according to an aliasing signal having an aliasing rate ***to down-
convert said electromagnetic signal. . . .***"

Qualcomm's analysis of Claim 24 and the Universal Frequency Module
("UFT") is inadequate. As described in ParkerVision's Opening Appellate Brief,
Claim 22 of the '940 patent recites an "apparatus for communicating" that includes
both a "transmitting subsystem" and a "receiving subsystem." Corr. Brief for
Appellant ParkerVision, Inc., at 30 Oct. 24, 2022. Claim 24 then further describes the
"receiving subsystem as including "an aliasing module" which further includes, in
relevant part, "a universal frequency translation (UFT) module" that "down-
convert[s]" an "electromagnetic signal." The intrinsic evidence shows that the UFT
includes nothing more than a switch, and clearly that there is no energy storage device
in the UFT. Furthermore, the claim is clear with *"said UFT module aliasing an
electromagnetic signal according to an aliasing signal having an aliasing rate to down-convert
said electromagnetic signal"* describing that it is the UFT (containing only a switch) that

down converts. In addition to the down-converting UFT module, claim 24 also includes "a storage device storing energy from said UFT module," clearly storing what has already been down converted. *Id.* at 30 (citations omitted). The Federal Court noted that neither claim 1 of the '907 patent nor claim 24 of the '940 patent "contains an explicit requirement that the down-converted signal be generated from energy transferred to an energy storage device. That is, the receiver claims asserted in the 2014 Action do not appear, on their face, to require the 'generating limitation' that turned out to be fatal to ParkerVision's infringement case in the 2011 Action." 116 F.4th at 1352.

Relying on the extrinsic record rather than the Federal Circuit directed focus on the intrinsic record, Qualcomm cherry-picks from the Federal Circuit's decision when maintaining that "ParkerVision's experts … testified in deposition that the receiver claims of the '907 and '940 patents 'require that you produce a lower-frequency signal ***using energy that's been transferred from a higher-frequency signal into a storage medium***.'" Mot. Ex. A at 18 (citing *ParkerVision*, 116 F.4th at 1359; emphasis in original). However, Qualcomm fails to include the entire Federal Circuit discussion:

> "In defending the grant of summary judgment of collateral estoppel, Qualcomm relies heavily on ParkerVision's experts in this case, who testified in deposition that the receiver claims of the '907 and '940 patents 'require that you produce a lower-frequency signal using energy that's been transferred from a higher-frequency signal into a storage medium.' We agree that this testimony might be understood as an admission that the claims asserted in this case include a generating limitation or similar requirement. However, ***this is not the sum total of opinions ParkerVision's experts provide***; ***they also both opined, as already noted, that the receiver claims at issue here do not require that the down-conversion occur at or after the capacitor***."

17

116 F.4th at 1359 (emphasis added and in original). ParkerVision's expert testimony does not support Qualcomm's claim construction.

Qualcomm's newly proposed construction related to the '940 patent is unsupported by the intrinsic and extrinsic evidence. Further, this Court and the Federal Circuit resolved these issues in previous orders and decisions. The Court should reject Qualcomm's proposed construction and move forward with trial.

## III.    CONCLUSION

ParkerVision respectfully requests that the Court reject Qualcomm's proposed constructions of the disputed claims.

January 13, 2025

Respectfully submitted,

**ALLEN, DYER, DOPPELT, & GILCHRIST, PA**
Ava K. Doppelt
Fla. Bar No. 393738
255 S. Orange Ave – Ste. 1401
Orlando, FL 320801
Telephone: (407) 841-2330
Facsimile: (407) 481-2343
adoppelt@allendyer.com

**MCKOOL SMITH, P.C.**
By: */s/ Joshua W. Budwin*
Joshua W. Budwin
Texas State Bar No. 24050347
John B. Campbell, Jr. (*pro hac vice*)
Texas State Bar No. 24036314
Kyle N. Ryman (*pro hac vice*)
Texas State Bar No. 24125394
303 Colorado Street, Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 592-8744
jbudwin@McKoolSmith.com
jcampbell@McKoolSmith.com
kryman@McKoolSmith.com

Kevin L. Burgess (*pro hac vice*)
Texas State Bar No. 24006927
Jennifer Truelove
Texas State Bar No. 24012906
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099
kburgess@McKoolSmith.com

Ayana M. Rivers (*pro hac vice*)
New York State Bar No. 2956209
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444
arivers@McKoolSmith.com

*Attorneys for Plaintiff ParkerVision, Inc.*

19