# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**PARKERVISION, INC.,**

**Plaintiff,**

**v.**                                          **Case No: 6:14-cv-687-PGB-LHP**

**QUALCOMM INCORPORATED
and QUALCOMM ATHEROS,
INC.,**

**Defendants.**

_____/

## ORDER

This cause is before the Court on the parties' Third Claim Construction briefing as directed by the Federal Circuit. (*See* Doc. 794). The parties dispute the construction to be given to "whereby the energy provided to the load forms a down-converted signal" ('907 patent) and "a storage device storing energy from said UFT module" ('940 patent). (*Id.*). Defendants have filed their claim construction brief (Doc. 798), and the Plaintiff has submitted a response. (Doc. 796).

## I.    BACKGROUND[1]

In February 2016, this Court granted the parties' joint motion to stay the proceedings in this case ("***ParkerVision II***"). (Doc. 250). In 2018, the Court lifted its stay of *ParkerVision II* and directed the parties to address whether any

---

[1] For a comprehensive discussion of the procedural history of this case and of *ParkerVision I*, see Docket Entry 348 and *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345 (Fed. Cir. 2024).

patents and claims brought in the instant litigation are affected by a prior patent case involving the parties ("***ParkerVision I***"). (Docs. 274, 297). On September 27, 2019, Defendants filed their motion for partial summary judgment of noninfringement based on collateral estoppel from *ParkerVision I*. (Docs. 318, 321).[2] Plaintiff filed a response in opposition (Doc. 327), and Defendants filed a reply. (Doc. 330). On January 16, 2020, the Court denied Defendants' motion, noting that issue preclusion extends to new products only if the defendant shows a close identity between the accused and adjudicated devices. (Doc. 348, p. 12). The Court found the unsworn testimony of Defendants' employee and citation to their arguments before the International Trade Commission ("**ITC**") was inadequate to establish a close identity, where the Defendants failed to conduct a side-by-side comparison of the relevant architecture of the accused devices. (*Id.* at p. 13).

The Court then turned to Defendants' contention that claim 1 of the '907 patent and claim 23 of the '551 patent, the latter being at issue in *ParkerVision I*, use "slightly different language to describe substantially the same invention." (*Id.* at p. 14). Plaintiff countered that their expert, Dr. Allen, opined that claim 1 describes "energy that is provided to the load (during periodic couplings) from the electromagnetic signal, without passing through the energy storage device," and therefore is not the same concept as claim 23 of the '551 patent in *ParkerVision I*.

---

[2] To protect proprietary information, the Court permitted the parties to file more comprehensive briefing under seal and has issued Orders wherein such information is discussed under seal.

(*Id.* at pp. 17–18). The Court found Dr. Allen's declaration created a material issue of fact that precluded summary judgment. (*Id.* at p. 18).

The Federal Circuit observed in its most recent opinion that this Court recognized the receiver claims at issue in *ParkerVision II* "might lack the generating limitation [dispositive in *ParkerVision I*] and, therefore, would not exclude down-converting occurring *before* the capacitor." *ParkerVision, Inc.*, 116 F.4th at 1353. That is, the Federal Circuit agreed with this Court's prior ruling that a material issue of fact exists which precludes summary judgment without affirmatively finding the claims in *ParkerVision II* lack the generating limitation.

On April 29, 2020, the Court issued a 58-page claim construction Order following extensive briefing and two *Markman* hearings. (Doc. 381). The Court construed numerous disputed terms, but neither party asked the Court to construe the two claims at issue here.[3] On March 4, 2021, Defendants moved for summary judgment on noninfringement and invalidity (Doc. 538), which the Court granted, (Doc. 685). On appeal, the Federal Circuit held that "the accused products at issue here operate, in all material respects, in the same manner as the products accused of infringement" in *ParkerVision I. ParkerVision, Inc.*, 116 F.4th at 1356. "Therefore, determining whether the infringement issue here is the same as the

---

[3] The Defendants request construction of claim 1 of the '907 patent, "whereby the energy provided to the load forms a down-converted signal" with "forms" construed to mean "generates." (Doc. 798, p. 2). Defendants also ask the Court to construe claims 24 and 331 of the '940 patent, "a storage device storing energy from said UFT module" as "a storage device storing energy from said UFT module and using that energy to generate a down-converted signal." (*Id.* at p. 15).

infringement issue in the 2011 Action [(*ParkerVision I*)] requires only an assessment of whether the receiver claims of the '907 and '940 patents . . . are materially the same as the claims that were the basis for the finding of non-infringement in the 2011 Action." *Id.* The Circuit Court ordered that on remand, this Court should undertake any necessary claim construction and then determine whether the receiver claims asserted in this case have the same generating limitation of the claims at issue in *ParkerVision I. Id.* at 1360. The undersigned, being mindful of the Federal Circuit's directive, instructed the parties to submit their respective claim construction briefs on claim 1 of the '907 patent and claims 24 and 331 of the '940 patent.

Defendants submitted a claim construction brief in which, as expected, counsel discussed the intrinsic evidence of record, *i.e.*, the patent, including the claims and the specification. Plaintiff, rather than submitting a claim construction brief, took a different, and somewhat confounding, approach. Plaintiff did not offer an interpretation of the intrinsic evidence and instead relied on the conclusions found in the declaration of its expert witness,[4] Dr. Allen, along with counsel's interpretation of the Federal Circuit's opinion in this matter, and this Court's

---

[4] The Federal Circuit, in remanding this case for further proceedings, observed that the trial court erred when it relied on Defendants' unrebutted expert report and "from [that] extrinsic evidence concluded that the "[r]eceiver [c]laims at issue here have the same requirements as the claims in *ParkerVision I*, including the 'generating limitation.'" *ParkerVision, Inc.*, 116 F.4th at 1356-57. The Federal Circuit criticized this Court because it "relied principally on extrinsic evidence, particularly Qualcomm's expert opinion. [Whereas t]he proper approach to determining claim scope is to 'look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Id.* at 1357.

denial of Defendant's motion for partial summary judgment on collateral estoppel from 2020. That is, instead of parsing the intrinsic evidence, Plaintiff relies on extrinsic evidence. Similarly, when discussing the '940 patent, ParkerVision relies on extrinsic evidence, including its Opening Appellate Brief, which is not part of the Court's record. In short, the Defendants submitted a claim construction brief, and the Plaintiff submitted a brief fashioned like a response to a motion for summary judgment.

## II. LEGAL STANDARD

The Court construes a patent claim as a matter of law. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1330 (Fed. Cir. 2005) (en banc). The Federal Circuit directs district courts construing claim terms to focus on the intrinsic evidence—that is, the claims, specification, and prosecution histories—because intrinsic evidence is "the most significant source of the legally operative meaning of disputed claim language." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Generally, the Court accords the words of a claim "their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312–13. Persons of ordinary skill in the art do not read the claim term in isolation, but in the context of the entire patent. *Id.* at 1313. If the ordinary meaning of claim language is "readily apparent even to lay judges," then claim construction requires "little more than the application of the

widely accepted meaning of commonly understood words." *Id.* at 1314. But because the meaning of a claim term as understood by a person skilled in the art is often not immediately apparent, the Court looks to both intrinsic evidence (the words of the claims themselves, the specification, and the prosecution history) and extrinsic evidence (sources such as dictionaries and expert testimony). *Id.*; *K-fee Sys. GmbH v. Nespresso USA, Inc.*, 89 F.4th 915, 919 (Fed. Cir. 2023); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008).

The patent's specification is "the single best guide to the meaning of a disputed term," as it may reveal that the patentee intended a special definition to apply to a claim term that differs from its ordinary meaning or that the patentee intentionally disclaimed or disavowed the claim's scope. *Phillips*, 415 F.3d at 1315–16 (internal quotation marks omitted). The Court also considers the prosecution history, which is created by the patentee to explain and obtain the patent. *Id.* at 1317. The prosecution history consists of the complete record of proceedings before the Patent and Trademark Office ("**PTO**") and the prior art cited during the examination of the patent. *Id.* Unlike the specification, which is a final product, the prosecution history is less useful in claim construction because it represents the ongoing negotiations between the PTO and the applicant. *Id.*

The Court also looks at the prosecution history "to determine whether the applicant clearly and unambiguously 'disclaimed or disavowed'" an interpretation of claim scope in order to obtain the patent grant. *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) (quoting *Standard Oil Co. v. Am.*

*Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)). A patentee disclaims an interpretation by "clearly characterizing the invention in a way to try to overcome rejections based on prior art," as opposed to simply describing features of the prior art without distinguishing the claimed invention based on those features. *Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374–75 (Fed. Cir. 2008). Thus, the Court protects the public's reliance on the definitive statements made during the prosecution by precluding the patentee from "recapturing" an interpretation disclaimed during prosecution through claim construction. *Id.* at 1374 (quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)).

Although "less significant than the intrinsic record," extrinsic evidence is helpful. *Phillips*, 415 F.3d at 1317 (internal quotation marks omitted). However, expert testimony about claim terms that is conclusory, unsupported, or "clearly at odds" with the intrinsic evidence is not useful. *Id.* at 1318 (internal quotation marks omitted). Moreover, while dictionaries and treatises are relevant, the Court must ensure that the dictionary definition does not contradict a definition "found in or ascertained by a reading of the patent documents." *Id.* at 1322–23 (quoting *Vitronics*, 90 F.3d at 1584 n.6). "In sum, extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

## III.   DISPUTED TERMS

### A.   whereby the energy provided to the load forms a down-converted signal

| Claim Term | ParkerVision's Proposal | Qualcomm's Proposal |
|---|---|---|
| whereby the energy provided to the load forms a down-converted signal | plain and ordinary meaning | whereby the energy provided to the load generates a down-converted signal |

Claim 1 of the '907 patent reads:

What is claimed is:

1. A method for down-converting an electromagnetic signal, comprising:

periodically coupling an electromagnetic signal that includes a carrier signal to an energy storage device and a load, wherein the periodic couplings occur at a rate less than twice the frequency of the carrier signal;

providing, during the periodic couplings, energy from the electromagnetic signal to the energy storage device, thereby changing an amount of energy stored by the energy storage device;

providing, during the periodic couplings, energy from the electromagnetic signal to the load; and

providing, between the periodic couplings, energy from the energy storage device to the load, thereby changing the amount of energy stored by the energy storage device;

whereby the energy provided to the load forms a down-converted signal.

'907 patent at 130:63–131:14.

The Court should not provide a construction "beyond a phrase's plain terms where the phrase 'convey[ed] a meaningful limitation to a person of ordinary skill' in the art." *Omnia Med., LLC v. Painteq, LLC*, No. 8:22-cv-145-VMC-TGW, 2023 WL 4305224, at *4 (M.D. Fla. June 30, 2023) (quoting *Pediatric Med. Devices, Inc. v. Indiana Mills & Mfg., Inc.*, No. 1:11-cv-2613-TCB, 2013 WL 2395994, at *13 (N.D. Ga. Apr. 26, 2013)). ParkerVision advocates for the plain and ordinary meaning of "forms." (Doc. 796, p. 3). ParkerVision argues that the claim requires "'a down-converted signal' be *formed* in a load using energy taken directly from the electromagnetic signal, without charging and discharging a capacitor."[5] (*Id.*). ParkerVision quotes its retained expert, Dr. Allen, for the premise that the "load doesn't down-convert anything, it can just *shape* the down-converted signal provided to if from the switch and the energy storage device." (*Id.* at p. 6 (citing Doc. 327-1, ¶ 12) (emphasis added)). Therefore, ParkerVision relies on extrinsic evidence of the sort rejected by the Federal Circuit in concluding that "forms" means "shapes."

Qualcomm correctly frames the issue before the Court, as follows: "[t]he parties dispute whether the energy provided to the load *generates* a down-converted signal or whether the energy provided to the load *shapes* an already existing down-converted signal." (Doc. 798, p. 3). Qualcomm equates "forms" with "generates," and invites the Court to so construe the claim. ParkerVision, while

---

[5]  ParkerVision supports this interpretation of claim 1 of the '907 patent by citing the argument it presented in response to Qualcomm's motion for summary judgment based on collateral estoppel. (*See* Doc. 327, pp. 14–15).

advocating for the plain and ordinary meaning of "forms," fails to explain why a person of ordinary skill would understand "forms" to mean "shapes" as opposed to "generates," except to say the claims of the '907 lack generating limitations. (Doc. 796, pp. 5–7 (citing Dr. Allen's expert report)). Since "forms" is subject to more than one meaning, the Court is compelled to construe the claim term "whereby the energy provided to the load forms a down-converted signal."

### 1. *Qualcomm's Proposed Construction*

Qualcomm contends that ParkerVision's assertion that claim 1 of the '907 patent recites a "down-converted electric current that flows directly to the load" is refuted by the claim language. (Doc. 798, p. 6). That is, while ParkerVision contends that a down-converted signal is somehow generated and exists in the "providing, during the periodic couplings" limitation,[6] Qualcomm avers that the claim language itself does not recite a "down-converted signal" in those limitations. (*Id.*). Qualcomm argues the claim language never references a down-converted signal prior to the energy being provided to the load.[7] (*Id.*). Qualcomm submits

---

[6]   Stated differently, ParkerVision contends that when "a down-converted signal" is first recited in claim 1 in conjunction with "forms," the down-converted signal already exists and is merely shaped. (Doc. 796, pp. 6-7).

[7]   Claim 1 provides that "during periodic couplings, energy from the electromagnetic signal to the energy storage device, thereby changing an *amount* of energy stored by the energy storage device" and that "during the periodic couplings, energy from the electromagnetic signal to the load" and further that "between the periodic couplings, energy from the energy storage device to the load, thereby *changing* the *amount* of energy stored by the energy storage device." '907 patent at 131:3–12 (emphasis added). However, as Qualcomm notes, the claim language does not specify that this energy is already a down-converted signal. (Doc. 798, p. 7). That is, the claim language does not provide that a change in the *amount* of energy equates with a down-conversion of the signal.

that the only logical interpretation of "the energy provided to the load forms a down-converted signal" is that the signal is being generated. (*Id.* at p. 7).

Qualcomm notes that "forms" is not discussed in the '907 patent in conjunction with "shape" or "shaping." (*Id.* at p. 8). Qualcomm also avers that the specification supports its construction of "forms" as "generates" (*Id.*). Qualcomm argues that Figure 83D "illustrates a down-converted signal **8310** that is formed by energy transferred from the input EM signal **8302**." (*Id.*; '907 patent at 69:21–23). Qualcomm avers that "FIG. 83D illustrates the transferred energy stored in the storage module **6506**. The storage module **6506** outputs the transferred energy as the down-converted signal **1308**B. (Doc. 798, pp. 8–9; '907 patent at 100:4–7). Qualcomm points to Figure 82A as evidence of a down-converted signal using transferred energy. (Doc. 798, p. 9). Qualcomm also observes that in *ParkerVision I,* the Plaintiff in its Corrected Nonconfidential Brief, No. 3:11-cv-00719-RBD-JRK, 2014 WL 4802308, at *16–19, 30–31 (Fed. Cir. Sept. 15, 2014), relied on FIG. 82A of the '551 patent to describe a "generating" down-converted signal using energy stored in a capacitor.[8] (*Id.* at p. 9). While ParkerVision's appellate brief in *ParkerVision I* constitutes extrinsic evidence, ParkerVision's prior interpretation of Figure 82A corroborates Qualcomm's interpretation. Moreover, Figure 82A contradicts ParkerVision's assertion that "literally nothing"

---

[8]  Qualcomm correctly identifies the '907 patent as a continuation-in-part of the '551 patent which incorporates by reference the '551 patent. (Doc. 798, p. 9; '907 patent at 1:6–18). Figure 82A in the '907 patent and '551 patent is identical. ParkerVision does not dispute this contention.

in the intrinsic record supports Qualcomm's interpretation of "forms" to mean "generates." (Doc. 796, pp. 9–10). That is, if Figure 82A describes a "generated" down-converted signal using energy stored in a capacitor, the signal is not already down-converted during the periodic couplings and thereafter merely shaped.

Similarly, the specification describes the signal in Figure 57E as a "generated" signal: "FIG. 57E illustrates a demodulated baseband signal S712, which is generated by the down-conversion process." ('907 patent at 87:9–10). And Qualcomm contends that Figure 57E "illustrates a demodulated baseband signal S712, which is generated by the down-conversion process." (Doc. 798, p. 9; '907 patent at 87:9–10). The intrinsic evidence, thus, supports Qualcomm's construction of "forms" as "generates."

### 2. *ParkerVision's Proposed Construction*

ParkerVision asserts that "the '907 claims require that the 'energy provided to the load,' which 'forms a down-converted signal,' comes not only from an energy storage device but also from the electromagnetic signal itself." (Doc. 796, p. 6). As previously noted, the Plaintiff cites as support its own Memorandum in Opposition to Qualcomm's first Collateral Estoppel Summary Judgment Motion and its retained expert's report. (*Id.*; Doc. 327). The Federal Circuit found this Court erred by relying principally on "extrinsic evidence, particularly Qualcomm's expert opinion," and instructed the Court to "look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specifications and, if in evidence, the prosecution history." *ParkerVision, Inc.*, 116 F.4th at 1357.

ParkerVision relies on its expert's interpretation of claim 1 wherein the expert opined that "during the periodic couplings (i.e. *when the switch is closed*) energy from the *already down-converted-by-the-switch signal* goes to *both* the 'energy storage device' (like a capacitor) and 'the load.'" (Doc. 796, p. 6). The claim language does not include the highlighted text, and ParkerVision fails to explain how its expert's interpretation of the claim's limitations is supported by intrinsic evidence. ParkerVision, again relying on its expert's interpretation of the claim language, states that "between the periodic couplings' (i.e. *when the switch is open*) energy from the *already down-converted-by-the-switch signal*, *previously stored* in the 'energy storage device,' is then provided to the load' 'forms a down-converted signal.'" (*Id.* at p. 7). Again, the italicized language is not found in the claim language. To demonstrate this concept, the Plaintiff inserts a diagram that does not originate from the specification but was created by its retained expert. (*Id.*).

ParkerVision is forced to construe the claim language to teach that the energy is "already down-converted-by-the-switch signal" for the word "forms" to mean "shapes" as opposed to "generates." The problem is that the claim language does not state this, and ParkerVision does not point to the specification to support its construction. ParkerVision, however, concedes that the energy must be down-converted at some point, and if the energy is not "*already down-converted-by-the-switch signal*" before it reaches the capacitor, then the last limitation of claim 1 teaches the energy generates, *i.e.*, "*forms*," a down-converted signal after the load.

ParkerVision next submits that this Court and the Federal Circuit have determined that the claims at issue here are different from the claims at issue in *ParkerVision I*. (*Id.* at pp. 2, 9). However, the issue before this Court and the Federal Circuit was whether a material issue of fact is present that precludes summary judgment, and neither court was engaged in claim construction. ParkerVision further claims that the Federal Circuit held that a "generating" limitation is not present in claim 1 of the '907 patent. (*Id.* at p. 9). ParkerVision reads too much into the Federal Circuit's opinion remanding the case back to this Court. The Federal Circuit rejected Qualcomm's suggestion that ParkerVision invited the district court's error in failing to construe the claims, finding that Qualcomm was obligated to request claim construction where it sought to read into the receiver claims the generating limitation that is not expressly recited in the claims. *ParkerVision, Inc.*, 116 F.4th at 1364 n.4. The Federal Circuit did not, however, construe claim 1 of the '907 patent and exclude a generating limitation; rather, it merely noted that the limitation is not *expressly* recited. The Federal Circuit then directed the instant Court to conduct any necessary claim construction, which makes no sense if the Federal Circuit already constructed the limitations of claim 1. The Court again emphasizes that the Federal Circuit was reviewing whether this Court erred by granting summary judgment; the Federal Circuit was not reviewing this Court's claim construction Order.

ParkerVision's next argument, like the previous one, departs from an analysis of the intrinsic evidence and focuses on the Court's ruling on Qualcomm's

motion for summary judgment on collateral estoppel. (Doc. 796, pp. 10–11).
Plaintiff submits that this Court previously agreed with its explanation that claim
1 of the '907 patent does "not require a baseband signal and [does] not require any
signal to be 'generated' using an 'energy storage device' to down-convert a high
frequency signal." (*Id.* at p. 11). ParkerVision highlights that this Court credited its
arguments in holding the Defendants failed "to show that there is no material
difference between the patents-at-issue in *ParkerVision I* and the claims now
asserted by ParkerVision, that is, the identity of the issues." (*Id.*).

The Plaintiff's reliance on arguments advanced in relation to Defendants'
motion for partial summary judgment based on collateral estoppel is not helpful in
construing the limitations found in claim 1 of the '907 patent. ParkerVision argued
in response to Qualcomm's motion for partial summary judgment that the asserted
claims of the '907 patent differ from the claims at issue in *ParkerVision I.* (Doc.
327, p. 11). This Court denied Qualcomm's motion for summary judgment because
it failed to present sufficient evidence that the accused product here and in
*ParkerVision I* are essentially the same. (Doc. 348, p. 13). ParkerVision also argued
in opposition to Qualcomm's motion for partial summary judgment that the '907
claims teach that the "energy provided to the load," which "forms a down-
converted signal," come from an energy storage device and "also from the
electromagnetic signal itself." (Doc. 327, p. 17). ParkerVision's response to
Defendants' motion for partial summary judgment relied on the sworn declaration
of Dr. Allen who opined that claim 1 of the '907 patent describes "energy that is

provided to the load (during periodic couplings) from the electromagnetic signal, without passing through the energy storage device." (Doc. 327-1, ¶ 12). While Dr. Allen's declaration constitutes extrinsic evidence in a claim construction proceeding, this Court found it was sufficient to create a material issue of fact precluding summary judgment. (Doc. 348, p. 18).

ParkerVision's reliance on its brief in response to a motion for summary judgment and its citation to its retained expert's conclusions do not inform whether the intrinsic evidence supports ParkerVision's position that "forms" means "shape/shapes." The Federal Circuit made clear in its recent opinion that reliance on an expert's declaration without first consulting intrinsic evidence is error. Moreover, this Court did not "agree" with ParkerVision's explanation of whether a generating limitation exists in claim 1 of the '907 patent. This Court merely found that in the context of a motion for summary judgment, a material issue of fact exists.[9]

Finally, ParkerVision contends that the Court should reject Qualcomm's argument that ParkerVision's reliance on "Figure 82A to describe *generating* a down-converted signal using transferred energy, and Figures 57E and 57F to describe examples of a *shaped* signal—is contrary to ParkerVision's characterization of the asserted claims and [therefore is] supportive of 'reading-in'

---

[9] The Federal Circuit was not construing the claim limitations at issue when it found that "*[a]bsent a claim construction* finding a generating limitation or similar requirement to be part of the claims, the Qualcomm accused products might infringe the receiver claims in this action even if they are found to down-convert the signal before the capacitor." *ParkerVision, Inc.*, 116 F.4th at 1359 (emphasis added).

the *generating* limitation language." (Doc. 796, p. 12). ParkerVision submits that the Federal Circuit rejected this argument when it found that ParkerVision's "generalized acknowledgements of some overlap between the claims [in *ParkerVision I* and *ParkerVision II*] do not, however, constitute admission that the patent claims themselves are materially the same in the two actions." (*Id.* (quoting *ParkerVision, Inc.*, 116 F.4th at 1360)).

Again, ParkerVision imports into its claim construction motion a ruling made in the context of a motion for summary judgment. The Federal Circuit did not hold that Qualcomm's reliance on the '907 patent specification does not support its construction of claim 1 as teaching a generating limitation. The Federal Circuit merely found that the overlap between the two patents is not enough to support collateral estoppel. Here, Qualcomm cites Figures 82A, 57E, and 57F as intrinsic evidence supporting its contention of a generating limitation, while noting that ParkerVision previously relied on the same Figures to teach generating, which is inconsistent with its current position.

Accordingly, the Court adopts the following construction:

| **whereby the energy provided to the load forms a down-converted signal** |
|---|
| whereby the energy provided to the load generates a down-converted signal |

**B.    a storage device storing energy from said UFT module ('940 patent)**

| Claim Term | ParkerVision's Proposal | Qualcomm's Proposal |
|---|---|---|
| a storage device storing energy from said UFT module | No construction proposed | a storage device storing energy from said UFT module and using that energy to generate a down-converted signal |

*1.    Qualcomm's Proposed Construction*

Qualcomm submits, correctly, that the issue is whether the claimed storage device ("**UFT module**") uses stored energy to generate a down-converted signal, or, as ParkerVision claims, the storage device merely stores energy from the UFT module, without any requirement that the stored energy be used for any purpose. (Doc. 798, p. 15). Qualcomm contends, and ParkerVision does not dispute, that both asserted claims 24 and 331 require "a storage device storing energy from said UFT module." '940 patent at 69:66–67. Qualcomm avers that the intrinsic and extrinsic records refute ParkerVision's contention that the claimed storage device merely stores energy from the UFT module without requiring the stored energy to be used for a specified purpose. (Doc. 798, p. 15). Qualcomm asserts that the storage device uses stored energy to generate a down-converted signal. (*Id.*).

Qualcomm begins where it should, with the intrinsic record. Qualcomm notes that claim 24 recites an approach to down-converting using a UFT module that requires "'aliasing' the signal and 'transferring energy' from the signal to a storage device." '940 patent, claim 24. And Qualcomm observes that the

specification instructs that the claimed form of down-conversion uses energy stored in the storage device to generate the down-converted signal, directing the Court to 57:27–58:19. (Doc. 798, p. 16). Section 6.3 of the specification is titled "Summary Description of Down-conversion Using a Universal Frequency Translation Module." (*Id.*). Qualcomm highlights two extracts from the specification that teach a "stored charge is used to generate down-converted signal" (*Id.* (citing '940 patent at 58:9-19)). The specification states that "[t]he train of pulses 6418 as shown in FIG. 64D controls the switch 6408 to alias the input signal 6404 with the control signal 6406 *to generate a down-converted output signal* 6412." (*Id.* (citing '940 patent at 58:9-19) (emphasis added)). Thus, Qualcomm argues, the claimed storage device does not merely store energy from the UFT module; rather, the stored energy is used to generate the down-converted signal. (*Id.*).

As if the specification was not sufficient to support Qualcomm's proposed construction, ParkerVision's inventors admit in deposition that the invention teaches using energy stored in the storage device to generate the down-converted signal. (*Id.* at p. 17 (first citing Doc. 499-29, 199:9–200:16; and then citing Doc. 499-31, 178:19–179:4)).[10] Moreover, Qualcomm's expert, Dr. Razavi, and ParkerVision's experts, Drs. Allen and Steer, agree that the receiver claims operate

---

[10]  The deposition of Michael Bultman is filed under seal, and so the Court will not quote his testimony more precisely. The deposition of Robert Cook is not sealed, and he testified that on the "receiver side of things," the aperture to "transfer energy to the capacitor" and "then the down-converted signal was generated from the capacitor." (Doc. 499-11, 179:19–180:4).

in this manner. (*Id.* at pp. 17–18 (citing Doc. 527-2, ¶¶ 823–829; then citing Doc. 499-27, 216:21–219:25; and then citing 499-43, 74:18-24)).[11] Qualcomm is correct that "[a]n inventor is entitled to claim in a patent what he has invented, but no more . . . . Therefore, in construing a claim, there are two limiting factors—what was invented, and what exactly was claimed." (*Id.* at p. 17 (quoting *MySpace v. GraphOn*, 672 F.3d 1250, 1256 (Fed. Cir. 2012))). Here, the claims and specification teach that energy stored in the storage device is used to generate the down-converted signal, and ParkerVision's inventors and experts have confirmed this limitation was intended.

### 2.    *ParkerVision's Proposed Construction*

ParkerVision submits that the Federal Circuit foreclosed Qualcomm's argument that the receiver claims of the '907 and '940 patents include a generating limitation. (Doc. 796, p. 15). As this Court noted while discussing the '907 patent, the Federal Circuit was analyzing whether summary judgment should have been granted and did not engage in claim construction.[12] Therefore, the Federal Circuit's observation does not foreclose Qualcomm's contention that the intrinsic record, supported by the extrinsic record, supports the inclusion of a generating limitation.

---

[11]    The depositions of Drs. Allen and Steer are filed under seal, and as such, the Court will not quote from either deposition.

[12]    The Federal Circuit specifically stated that "[t]he parties have not provided us with claim construction briefing" and "[t]hus, on remand, the district court should undertake any necessary claim construction and then determine whether the receiver claims asserted in this case have the same requirement as the generating limitation of the claims at issue in *ParkerVision I*." *ParkerVision Inc.*, 116 F.4th at 1360.

ParkerVision next argues that no intrinsic evidence supports Qualcomm's proposed construction. (*Id.*). ParkerVision cites its Opening Appellate Brief for the following assertion:

> Claim 22 of the '940 patent recites an 'apparatus for communicating' that includes both a 'transmitting subsystem' and a 'receiving subsystem'. . . . Claim 24 then further describes the 'receiving subsystem as including 'an aliasing module' which further includes, in relevant part, 'a universal frequency translation (UFT) module' that 'down-convert[s]' and 'electromagnetic signal.'

(*Id.* at p. 16). ParkerVision's reliance on extrinsic evidence, *i.e.*, its Opening Appellate Brief, without citing the patent, violates the Federal Circuit's admonition that, first and foremost, claim construction starts with the claim language. Absent citation to the patent, the Court cannot discern whether ParkerVision's "construction" is mere argument. For example, without citation to specific claim language and without regard to the specification, ParkerVision proclaims that "[t]he intrinsic evidence shows that the UFT includes nothing more than a switch, and clearly that there is no energy storage device in the UFT." (*Id.*). ParkerVision's argument boils down to citing its appellate brief and the conclusory assertion that the intrinsic evidence supports its preferred construction. ParkerVision conveniently ignores the specification cited by Qualcomm and disregards the testimony of its inventors and experts, all of which teach that the energy stored in the storage device is used to generate the down-converted signal.

Accordingly, the Court adopts the following construction:

| **a storage device storing energy from said UFT module ('940 patent)** |
| --- |
| a storage device storing energy from said UFT module and using that energy to generate a down-converted signal |

## IV.    CONCLUSION

For these reasons, the disputed claims are construed as set forth in this Order. Consistent with the scope of the remand, the Court will allow the parties to resubmit briefing on summary judgment with a separate scheduling order to follow.

**DONE AND ORDERED** in Orlando, Florida on May 29, 2025.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties